UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X

SYMBIONT SCIENCE ENGINEERING AND
CONSTRUCTION, INC.; ZURICH COMPANY
a/s/o Symbiont Science, Engineering and Construction, Inc.;
AMERICAN GUARANTY AND LIABILITY
 INSURANCE COMPANY a/s/o Symbiont Science
Engineering and Construction, Inc.; and STEADFAST
INSURANCE COMPANY a/s/o Symbiont
Science Engineering and Construction, Inc.,

             Plaintiffs,

    vs.

GROUND IMPROVEMENT SERVICES, INC.;
JOHN DOES 1-10, (fictitious parties) and ABC C
OMPANIES 1-10 (fictitious parties); GEO-
STRUCTURES OF VIRGINIA, INC., Defendants,
GROUND IMPROVEMENT SERVICES, INC.
and GEOSTRUCTURES OF VIRGINIA, INC.,

            Third-Party Plaintiffs,

    vs.

GEOPIER FOUNDATION COMPANY, Inc. and
GZA GEOENVIRONMENTAL, INC.

            Third-Party Defendants.

-------------------------------------------------------------------X

Case No.:
3:22-cv-04905-MAS-LHG


**THIRD-PARTY DEFENDANT GZA GEOENVIRONMENTAL, INC's.,
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

                  **DONOVAN HATEM LLP**
                  *Attorneys for Third-Party Defendant*
                  *GZA GeoEnvironmental, Inc.*
                  112 West 34th Street, 18th Floor
                  New York, New York 10120
                  (212) 244-3333

**OF COUNSEL:**
**Stephen F. Willig, Esq.**

4891-1318-0235, v. 1

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES................................................................................iii

PRELIMINARY STATEMENT....................................................................... 1

FACTS...................................................................................................................4

   A. Complaint...............................................................................................4

   B. The Third-Party Complaint..................................................................8

   C. Plaintiffs' Rule 14(A)(3) Complaint .................................................11

ARGUMENT .....................................................................................................11

    POINT I- THE STANDARD ON A MOTION TO DISMISS...............11

    POINT II- THIRD-PARTY PLAINTIFFS DO NOT POSSESS A
           VIABLE PROFESSIONAL NEGLIGENCE CLAIM
           AGAINST GZA ................................................................13

      A. GZA did not owe a duty to GIS or GEO, let alone Breach
         such a Duty .............................................................................. 13

      B. Third-Party Defendants' Claim against GZA is Barred by
         the Economic Loss Doctrine ...................................................16

    POINT III- THIRD-PARTY PLAINTIFFS HAVE NOT STATED
           A CAUSE OF ACTION FOR NEGLIGENT
           MISREPRESENTATION ...................................................19

POINT IV- THIRD-PARTY PLAINTIFFS HAVE NOT STATED A
CAUSE OF ACTION FOR CONTRIBUTION OR
INDEMNITY ...................................................................... 21


A. The Third-Party Complaint does not Sufficiently State a

Common Law Claim for Contribution ..................................... 21

B. The Third-Party Complaint does not Sufficiently State a
Common Law Claim for Indemnity ........................................ 23

POINT V- THE RULE 14(a)(3) COMPLAINT FAILS TO STATE
ANY CLAIM ...................................................................... 24

CONCLUSION ............................................................................. 25-26

## TABLE OF AUTHORITIES

Page

**Cases**

Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32, N.J. 55 (1960)................................................ 23

Ashcroft v. Iqbal, 556 U.S. 662 (2009)............................................................................... 11, 12, 13

Bedwell v. Camden Cty. 2014 WL 3499581 (D.N.J. 2014) ................................................................ 18

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).............................................. 12, 13, 25

Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548 (1980) ........................................ 23, 24

Central Motor v E.I. DuPont de Nemours, 251 N.J.Super. 5 (App.Div. 1991) ................... 23, 24

Chao v. New Jersey Licensed Bev. Ass'n, 461 F. Supp. 2d 303 (D.N.J. 2006) ........................... 21

Cherry Hill Manor Assocs v. Faugno, 182 N.J. 64 (N.J. 2004) .................................................... 22

Cioni v. Globe Specialty Metals, Inc., 2014 WL 2965707 (D.N.J. 2014) ................................... 16

Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496 (1997) .............................................. 14

Commercial Insurance Company, v. Mary Steiger, 395 N.J.Super. 109 (App. Div. 2009) ........ 14

Conley v. Gibson, 355 U.S. 41 (1957).................................................................................... 13, 25

Daily v. Somberg, 28 N.J. 372 (1958) ............................................................................................ 23

DeAngelo v Exxon, 1999 WL 34014043 (App. Div. 1999) ...................................................... 14, 20

DiCosala v. Kay, 91 N.J. 159 (1982)............................................................................................... 14

Dynalectric Co. v. Westinghouse Elec. Corp., 803 F. Supp. 985 (D.N.J. 1992) .................... 16, 19

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ........................................................... 12

H. Rosenblum, Inc. v. Adler, 93 N.J. 324 (N.J. 1983)................................................................... 19

Harley Davidson Motor Co. v. Advance Die Casting, Inc., 150 N.J. 489, 497–98 (1997) .......... 23

Horizon Group of New England, Inc. v. New Jersey School Const. Corp., 2011 WL 3687451
(N.J. Super. Ct. App. Div. Aug. 24, 2011) .......................................................... 16, 18, 18, 22

Kaufman v. i-Stat Corp., 165 N.J. 94 (2000) ............................................................................. 19

Linder v. McKesson, 2014 WL 2587501 (D.N.J. 2014) ............................................................. 13

Malleus v. George, 641 F.3d 560 (3d Cir. 2011) ....................................................................... 11

McMahon v. Alexander Furs, Inc., 24 N.J. Misc. 208 (1946) .................................................... 15

MJF Electrical v Toms River Board of Ed, 2021 WL 1168962 (D.N.J. 2021) ............... 14, 17, 19

Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997) .............................................. 12

Petrillo v. Bachenberg, 139 N.J. 472 (1995) ............................................................................ 14

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008) ................................................... 12

Polidori v Kordys, 217 N.J.Super. 424 (App.Div. 1987) ........................................................... 22

Port Auth. of New York & New Jersey v. Honeywell Protective Servs., Honeywell, Inc., 222
    N.J. Super. 11 (App. Div. 1987) ....................................................................................... 23

Public Service Enterprise Group, Inc. v. Philadelphia Electric Co., 722 F. Supp. 184 (D.N.J.
    1989) ............................................................................................................................ 16, 17

Rosenblum v. Adler,  93 N.J. 324 (1983) .................................................................................. 19

Saltiel v. GSI Consultants, Inc., 170 N.J. 297 (2002) ............................................................... 16

Shtutman v. Carr, 2017 WL 4402045 (N.J. Super. Ct. App. Div. Oct. 4, 2017) ................... 14, 19

Spectraserv, Inc. v. Middlesex County Utils. Auth., 2013 WL 4764514 (N.J. Super 2013).. 15, 18

Sykes v. Propane Power Corp., 224 N.J.Super. 686 (App.Div.1988) ........................................ 14

Wengui Guo v Biao Teng, 2018 WL 3801255 (D.N.J., Shipp, DJ, 2018) ...................... 12, 13, 25

Wilhelm Reuss GmbH & Co KG, Lebensmittel Werk v. East Coast Warehouse & Distribution
    Corp., 2017 WL 6055775 (D.N.J. Dec. 6, 2017) .................................................................. 22

Williams v. State Farm, 2017 WL 1217147 (D.N.J. 2017) ........................................................ 13

**<u>Statutes</u>**

FRCP Rule 8(a) ................................................................................................................. 24

FRCP Rule 8(a)(2) .................................................................................................... 12, 13

FRCP Rule 12(b)(6) .............................................................................................. 1, 3, 11

FRCP Rule 14(a)(3) ....................................................................... 1, 3, 11, 19, 24, 25

N.J.S.A. 2A:15-5.1 ........................................................................................................ 10

N.J.S.A. 2A:53A-1 ................................................................................................. 10, 21

N.J.S.A. 2A:53A-3 ........................................................................................................ 21

## PRELIMINARY STATEMENT

Third-Party Defendant GZA GEOENVIRONMENTAL, INC. ("GZA") respectfully submits this Brief in support of its Motion, pursuant to FRCP 12(b)(6), to dismiss the Third-Party Complaint and Plaintiff's FRCP Rule 14(a)(3) Complaint on the basis that these pleadings fail to state a cause of action against GZA.

As discussed in greater detail below, this lawsuit concerns a project to build certain above ground storage tanks at a food waste processing facility located at 1600 Lamberton Road, Trenton, New Jersey owned by non-party Trenton Biogas ("TB"). TB contracted with GZA to undertake certain geotechnical evaluations and issue reports. GZA issued Reports in 2013 and 2018, which Reports contain specific limitations on use. These Reports expressly provide that they are intended solely for TB's use, and parties other than TB rely upon the Reports at their own risk.

TB separately contracted with Plaintiff Symbiont Science Engineering and Construction ("Symbiont") to provide certain engineering, procurement, and construction management services in connection with the construction of the Facility (the "Project"). Symbiont, in. turn hired Defendants/Third-Party Plaintiff Ground Improvement Services Inc. ("GIS") to provide soil design services, and GIS hired Defendant/Third-Party Plaintiff GeoStructures, Inc. ("Geo") to effectuate its design. In its Complaint, Symbiont alleges that the work of both GIS and Geo (collectively

1

the "Third-Party Plaintiffs") were negligent in that, among other things, the foundation under the tanks experienced excessive settlement.

Neither GIS nor Geo has any contractual relationship with GZA, nor did GIS or GEO have a right to rely on GZA's Reports. Notwithstanding the lack of a contractual relationship with GZA, GIS and Geo have asserted four separate causes of action against GZA. These are (1) professional negligence (Count One of the Third-Party Complaint); (2) negligent misrepresentation (Count Two of the Third-Party Complaint); (3) contribution (Count Three of the Third-Party Complaint); and (4) indemnification (Count Four of the Third-Party Complaint). Each of these claims purport to arise from services that GZA performed on behalf of TB, and specifically a 2018 geotechnical Report issued by GZA to TB. Notably, it is undisputed that there was no contractual relationship between GZA and the Third-Party Defendants in connection with the Project.

The claims for professional negligence against GZA should be dismissed because GZA owed no duty to either GIS or GEO, let alone breached any such duty. GZA was retained by TB to perform limited geotechnical services in connection with the Project and owed no duty to either GIS or GEO. Indeed, TB, the party that retained GZA, has asserted no claims against GZA. In addition, the claims by GIS and/or GEO against GZA are barred by New Jersey's economic loss doctrine

because Third-Party Plaintiffs' damages are purely economic in nature and could be recovered from Symbiont, the party with which the Third-Party Plaintiffs contracted.

Moreover, dismissal of the negligent misrepresentation claim is appropriate since neither GIS nor GEO have identified any actual misrepresentations made by GZA. Furthermore, GZA's 2018 Report was issued for the sole benefit of TB, and neither GIS nor GEO had a right to rely on that Report (as was expressly stated in the Reports).

The claim for contribution also may not stand under the Joint Tortfeasor Contribution Law ("JTCL"). First, under the JTCL, GZA and the Third-Party Plaintiffs are not joint tortfeasors since they do not share a "common liability" to Symbiont; thus, the "same injury" requirement of the JTCL is not satisfied.

Lastly, no basis exists, nor is one alleged, for indemnity, which also requires a judgment against Third-Party Plaintiffs.

Plaintiffs' FRCP Rule 14(a)(3) Complaint alleges nothing more than if Third-Party Plaintiffs can recover against GZA, then they should as well.  GZA is not afforded the required notice of the nature and basis of the claim against it.

Thus, both the Third-Party Complaint and Plaintiff's FRCP Rule 14(a)(3) Complaint should be dismissed as against GZA pursuant to FRCP Rule 12(b)(6).

# FACTS

## A. Complaint

Symbiont and several insurers (suing in subrogation, the "Subrogees") initially commenced suit against GIS, GEO, John Does and ABC Companies in August 2022.   The Second Amended Complaint ("SAC") was filed on October 12. 2022 (See Docket Number 23, which is Exhibit F to the Third-Party Complaint, **Exhibit A**)[1].

The SAC asserts TB is the owner of a Biogas Production Facility located in Trenton, New Jersey (the "Facility"). Symbiont is an engineering, consulting, and design-build firm focused on  environmental and process projects that entered into an Engineering, Procurement and  Construction Contract ("EPC Contract") with TB on December 19, 2018, pursuant to which Symbiont provided to TB certain engineering, procurement, and construction management services in  connection with the construction of the Facility. The Facility was designed to process food products, pharmaceutical grade  alcohols, and glycerin to produce methane, compost and fertilizer.  The Facility construction included four tanks (three digester tanks and one buffer tank) (the "Project") (SAC, Exhibit F to **Exhibit A**, ¶¶ 13-19).

---

[1] All Exhibit references are to those attached to the accompanying affirmation of Stephen F. Willig.

On January 5, 2018, GZA issued a Geotechnical Engineering Evaluation Report to TB with regard to the Facility property. The 2018 Report indicated that the ground would need to be stabilized and reinforced for construction (Id. ¶¶ 20-21).

On February 8, 2018, Symbiont hired GIS to provide soil improvement design services. Pursuant to that Contract, GIS was to design the soil improvement system with a maximum Long Term Settlement under the digester and buffer tanks of up to 2 inches and a maximum differential settlement of 1/2 inch. GIS, in turn, engaged the services of GeoStructures to effectuate the necessary design of the soil improvement system (Id., ¶¶ 22-25). On May 30, 2018, Symbiont and GIS entered into a change order for the "Grouted impact pier foundation system construction." (Id. ¶ 31).

The SAC alleges further that GIS implemented soil improvements at the property. The ground improvement pier construction occurred through July 2018 and was completed in mid-August 2018 (Id. ¶ 33). Following construction of the four tank concrete floor slabs by another contractor (under contract with Symbiont), a separate contractor under contract with TB erected bolted steel-based tanks supplied by Schumann Tanks. From March 2019 through May 2019 the tanks were subject to a water test (i.e., each tank was filled with water to its operating capacity) (Id. ¶¶ 34-36). Upon the initial filling of the tanks, indications of foundation settlement were observed through buckling of the elevated steel walkways spanning between the

tanks.  On May 2, 2019, Symbiont notified GIS of the settlement of the tanks and the observed damages (Id. ¶¶ 37-38).

Through the winter of 2019-2020, TB began operations by slowly bringing the tanks into service.  When the tanks reached full operating capacity in April 2020, the settlement resumed (Id. ¶¶ 41-42).  As a result, recommendations from the tank and mixer suppliers were to operate the Digesters at 70% tank level and the  mixers at 30% of normal operating speed (Id. ¶¶ 43-44).  Foundation settlement continued even with reduced tank levels and slower operating speed (Id. ¶ 45).

From approximately June 2020 through November 2021, Symbiont provided GIS with survey data collected approximately every two weeks documenting the continued settlement.  As of June 2020, Digesters 1 and 2 had each settled 5 ½ inches, exceeding the ultimate allowable settlement by almost 200 percent (Id. ¶¶ 47-48).

On November 10, 2020, TB informed Symbiont that due to continued  tank settlement, the mixer in Digester 1 was out of level tolerance and required re-leveling to  prevent further damage.  Symbiont contacted Schumann, who furnished and installed the mixer,  to obtain the recommended procedure for re-leveling the mixer.  GIS has failed to take responsibility for their contractual obligations and has not levelled the mixer.  The differential settlement to date is in the range of 6 to 7 inches.  Further differential settlement in Digesters 1 and 2 subsided as a result of  reducing tank levels to 70% but likely still continues (Id. ¶¶50-53).

The SAC continues, alleging TB placed Symbiont on notice of a dispute relating to the settlement of the tanks. Pursuant to their contract, TB and Symbiont engaged in mediation to resolve TB's claims, and a settlement was reached on February 23, 2022, whereby Symbiont agreed to pay to TB $11,715,000.00 in exchange for a full release of all of TB's claims relating to the settlement of the tanks (Id. ¶¶ 54-56). The Subrogees paid the settlement pursuant to the policies and are subrogated to all the rights and remedies that Symbiont has against GIS to the extent of the payments made by the Subrogees (Id. ¶¶ 57-59).

Symbiont allegedly sustained and incurred additional losses in terms of cost and expenses in excess of $3,285,000.00 beyond what the Subrogees paid and faces additional claims by TB totaling in excess of $4,000,000.00 for other alleged damages that were also allegedly caused by the Defendants (Id. ¶¶ 60-61).

The following causes of action are asserted in the SAC:

- Negligence/Professional Malpractice against GIS
- Breach of Contract/Contractual Indemnification against GIS
- Breach of Express Warranty against GIS
- Breach of Implied Warranty against GIS
- Breach of Contract, Procurement of Insurance against GIS
- Common Law Indemnification against GIS
- Negligence/Professional Malpractice against Geo
- Common Law Indemnification against Geo
- Negligence/Professional Malpractice against John Does and ABC Companies
- Common Law Indemnification against John Does and ABC Companies

(Id. ¶¶ 62-103).

### B. The Third-Party Complaint

On November 4, 2022, GIS and Geo filed a Third-Party Complaint ("TPC") against GZA (Docket Number 31, **Exhibit A**). The Third-Party Summons also names Geopier Foundation Company, but a separate Third-Party Complaint has been filed as to it (generally asserting that Geopier owned rights to certain foundation improvement technology and processes, sublicensed such to GIS, and breached the contract and is liable for contribution and indemnity – See Docket Numbers 30 and 33).

GZA, it is alleged, provides geotechnical, environmental, water, ecological, and construction management services for private and public clients, and provided two geotechnical Reports (June 28, 2013, and January 5, 2018) to TB for foundation design and related earthwork recommendations for the Project (TPC, **Exhibit A**, ¶¶ 12, 15-16).  Those Reports are annexed to the TPC as Exhibits A and B thereto.

On or about January 30, 2018, GIS submitted Quotation/Contract No. 1 (the "Quotation") to Symbiont, for design and construction services for the installation of elements for foundation support for tanks at the TB facility.  The Quotation allegedly refers to the January 5, 2018, GZA Report as among the Bid Documents. Thereafter, on or about February 8, 2018, Symbiont and GIS entered a Subconsultant Professional Services Agreement ("Subconsultant Agreement") where GIS agreed to perform certain soil improvement design services.  The Quotation was

8

incorporated into the Subconsultant Agreement. A "Symbiont/Subcontractor Change Order" ("Change Order") followed and was fully executed in early June 2018 (TPC, **Exhibit A**, ¶¶ 19-24).

Third-Party Plaintiffs allegedly relied upon the professional testing and recommendations included by GZA in its Reports. Moreover, Third-Party Plaintiffs were not contracted to perform any additional soil testing on the job site (Id., ¶¶ 26-27).

The first claim against GZA is for alleged professional negligence. It is asserted GZA: provided engineering, testing, and other professional services; owed a duty (to whom is not indicated) to exercise reasonable care, technical skill, ability, and diligence ordinarily exercised by engineers and engineering firms in similar circumstances; its Reports contained material defects and deficiencies (which are not identified); was aware TB would hire a contractor to perform services in detrimental reliance upon its Reports; such was foreseeable; and "breached its duties of care that it owed to all contractors and subconsultants working on the Trenton Biogas facility in reliance on GZA's Reports." If damages are awarded against Third-Party Plaintiffs, they are due solely to the alleged negligence of GZA (Id., ¶¶ 31-41).

Next, the TPC alleges a claim for negligent misrepresentation. Here it is alleged GZA's Reports contained (unidentified) material misrepresentation of facts and material omissions, which it knew upon which contractors hired by TB would rely to

their detriment, and any damages awarded against Third-Party Plaintiffs would be due solely to the misrepresentations of GZA. (Id., ¶¶ 42-49).

Contribution is the next claim. Third-Party Plaintiffs assert the damages allegedly sustained by the Plaintiffs resulted from the acts or omissions of GZA, and pursuant to the JTCL, N.J.S.A 2A:53A-1 and under the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, Third-Party Plaintiffs demand contribution against "Geopier." (Id., ¶¶ 50-53).

Lastly, Third-Party Plaintiffs claim entitlement to indemnification, as "Third-Party Plaintiffs' liability, if any, was not morally culpable but was merely constructive, technical, imputed, or vicarious," as a result of GZA's primary liability (Id., ¶¶ 54-56).

Exhibit A to the TPC contains the June 28, 2013 GZA Report to which the pleading refers, and Exhibit B to that pleading contains the January 5, 2018 Report. Each Report contains the following limitation:

> GZA [] prepared this report on behalf of, and for the exclusive use of our Client [TB] for the stated purpose(s) and location(s) identified in the Proposal for Services and/or Report. Use of this report, in whole or in part, at other locations, or for other purposes, may lead to inappropriate conclusions; and we do not accept any responsibility for the consequences of such use(s). Further, **reliance by any party not expressly identified in the agreement, for any use, without our prior written permission, shall be at that party's sole risk, and without any liability to GZA.**

(Appendix A, ¶1 to each Report)(emphasis added).

C. **Plaintiffs' Rule 14(a)(3) Complaint**

Plaintiffs have filed a Complaint against GZA and Geopier pursuant to FRCP
Rule 14(a)(3) of the Federal Rules of Civil Procedure.  The Complaint simply asserts
to the extent the Third-Party Plaintiffs establish liability of GZA or Geopier then
Plaintiffs assert a direct claim (Docket Number 36, **Exhibit B**).


## ARGUMENT

### POINT I

### THE STANDARD ON A MOTION TO DISMISS

FRCP Rule 12(b)(6) allows for dismissal of a pleading, pre-answer, where
such fails to "state a claim upon which relief can be granted."  FRCP Rule 8 requires
that a claim for relief must contain a "statement of the claim showing that the pleader
is entitled to relief."

This Court has aptly set forth the criteria on a motion to dismiss for failure to
state a claim, including the Supreme Court's and the Third Circuit's precedent.

> First, the court must 'tak[e] note of the elements a plaintiff must
> plead to state a claim.' " [*Malleus v. George,* 641 F.3d 560, 563
> (3d Cir. 2011)] (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675
> (2009) ). Second, the court must "[review] the complaint to strike
> conclusory allegations." *Id.* The court must accept as true all of
> the plaintiff's well-pleaded factual allegations and "construe the
> complaint in the light most favorable to the plaintiff." *Fowler v.*

11

*UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. [544]at 555 [2007]). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' " *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Wengui Guo v Biao Teng, 2018 WL 3801255, *1 (D.N.J., Shipp, DJ, 2018). There, this Court granted a motion to dismiss counterclaims because they contained only conclusory allegations. Ibid.

The standard and criteria to be considered have been enumerated often in this District.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also [FRCP]8(a)(2). While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. Phillips, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

<u>Williams v. State Farm</u>, 2017 WL 1217147, *1 (D.N.J. 2017).

Moreover:

> [A] motion to dismiss should be granted unless the plaintiff's
> factual allegations are "enough to raise a right to relief above the
> speculative level on the assumption that all of the complaint's
> allegations are true (even if doubtful in fact)." *Twombly*, 550 U.S.
> at 556 (internal citations omitted). "[W]here the well-pleaded
> facts do not permit the court to infer more than the mere
> possibility of misconduct, the complaint has alleged-but it has
> not 'shown'-'that the pleader is entitled to relief.' " *Iqbal*, 556
> U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

<u>Linder v. McKesson</u>, 2014 WL 2587501, *2 (D.N.J. 2014).

What is required in a pleading is "'a short and plain statement of the claim

showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the ... claim is and the grounds upon which it rests.' []<u>Twombly</u>, 550

U.S. [] at 555 [] (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)." <u>Wengui Guo</u>,

2018 WL 3801255, *1.

## POINT II

### THIRD-PARTY PLAINTIFFS DO NOT POSSESS A VIABLE PROFESSIONAL NEGLIGENCE CLAIM AGAINST GZA

#### A. <u>GZA did not owe a Duty to GIS or GEO, let alone Breach such a Duty.</u>

In the First Count of the TPC, the Third-Party Plaintiffs allege professional

negligence against GZA.  "Negligence 'has four elements: (1) [a] duty of care, (2)

[a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]' <u>Shtutman</u>

v. Carr, No. A-1093-15T, 2017 WL 4402045, at *10 (N.J. Super. Ct. App. Div. Oct. 4, 2017) (quoting *Polzo v. Cnty. of Essex*, 196 N.J. 569, 960 A.2d 375. 584 (2008)) (alterations in original)." MJF Electrical v Toms River Board of Ed, 2021 WL 1168962, *3 (D.N.J. 2021).

Further, as to the malpractice claim alleged, "a professional…'only owes a duty to those persons who fall normally and generally within a zone of risk created by the tortious conduct and are therefore foreseeable.' …Sykes v. Propane Power Corp., 224 N.J.Super. 686, 691–92, 541 A.2d 271 (App.Div.1988) (quoting DiCosala v. Kay, 91 N.J. 159, 175, 450 A.2d 508 (1982))." Commercial Insurance Company, v. Mary Steiger, 395 N.J.Super. 109, 119 (App. Div. 2009).

Existence of a duty is for the Court to decide and is ultimately a question of fairness. DeAngelo v Exxon, 1999 WL 34014043, *10 (App. Div. 1999). "[C]ourts have focused on the course of dealings between the parties and the express contractual undertaking in deciding whether a tort duty should be imposed. [citations omitted]" Ibid. It is incumbent upon the Third-Party Defendants to show that GZA owed an actual duty to the third-party defendants. Whether a legal duty exists is a matter of law for the court. Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995); Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, (1997). Notably, the Third-Party Plaintiffs do not allege any actual duty that GZA owed to them in the TPC. To the contrary, GZA was retained by TB to perform certain geotechnical

services and TB has not asserted any claim against GZA.  The Third-Party Plaintiffs did not enter into a contract with GZA and was not a party to GZA's contract with TB. As an engineer, GZA owed no duty to third-parties outside of its contractual responsibilities to TB.  Indeed, it is not alleged, nor does GZA owe the Third-Party Plaintiffs an independent duty of care.  <u>Spectraserv, Inc. v. Middlesex County Utils. Auth.</u>, 2013 WL 4764514, *9, 10 (N.J. Super. 2013).  As such, there is no privity between GZA and the Third-Party Plaintiffs and no duty was owed by GZA to establish a prima facie case of negligence to survive a motion to dismiss.  "The obligations arising out of a contract are not enforceable by a person who is not a party to it or in privity with it." <u>McMahon v. Alexander Furs, Inc.</u>, 24 N.J. Misc. 208, 209 (1946).

The pleadings that GZA seeks to have dismissed sets forth no allegations to suggest any dealings between Plaintiffs or Third-Party Plaintiffs and GZA that would allow for imposition of a duty upon GZA toward those parties.  Moreover, these parties could not be within the zone of danger.  GZA specifically excluded parties other than its client TB from the zone when it expressly set forth the following limitation in its Reports:

> reliance by any party not expressly identified in the agreement, for any use, without our prior written permission, shall be at that party's sole risk, and without any liability to GZA."

(Exhibit A to TPC, Appendix A, ¶1 to each Report – **Exhibit A** hereto).

**B. Third-Party Defendants' Claim against GZA is Barred by the Economic Loss Doctrine**

Assuming, *arguendo*, that the Court finds that GZA owed a duty to Plaintiff and/or Third-Party Plaintiffs, and that GZA somehow is adequately alleged to have breached that duty, which GZA denies, Plaintiffs and/or Third-Party Plaintiffs' allegations of professional negligence still fail because claims against GZA are barred in their entirety by New Jersey's economic loss doctrine.  The economic loss doctrine bars tort remedies when (1) the plaintiff's claim is for purely economic losses (i.e. not personal injury or damage to other property), (2) the damages result from the defendant's alleged negligent or tortious conduct, and (3) the plaintiff has other available means of redress to recover for these economic losses.  Public Service Enterprise Group, Inc. v. Philadelphia Electric Co., 722 F. Supp. 184, 193 (D.N.J. 1989); Cioni v. Globe Specialty Metals, Inc., 2014 WL 2965707 (D.N.J. 2014).  A contractor not in privity with a design professional may recover for economic loss only if the contractor is without another available channel of redress. Dynalectric Co. v. Westinghouse Elec. Corp., 803 F. Supp. 985 (D.N.J. 1992); Horizon Group of New England, Inc. v. New Jersey School Const. Corp., 2011 WL 3687451 (N.J. Super. Ct. App. Div. Aug. 24, 2011). Further, economic loss may not be recovered in tort when no legal or independent duty exists to prevent economic harm. Spectraserv, supra; Saltiel v. GSI Consultants, Inc., 170 N.J. 297 (2002).   Both the New Jersey Appellate Division in Horizon Group of New England, Inc. and the

16

Federal District Court of New Jersey in <u>Dynalectric Co</u>. have applied the economic loss doctrine to bar a plaintiff's tort actions against a party with whom it is not in privity, when an alternative avenue of redress is available.

When the facts of the instant matter are applied to the three prong requirement outlined in <u>Public Service</u>, it is clear that the Third-Party Defendants (and Plaintiffs) cannot succeed in their allegation of negligence. First, it is undisputed that the damages at issue in this matter are purely economic in nature, (i.e. not arising out of personal injury or damage to other property).

Furthermore, the Third-Party Plaintiffs clearly have other available channels of redress for their recovery of monies– most obvious, is from Symbiont itself. The Third-Party Plaintiffs' services were provided to Symbiont in accordance with a written contract between the parties, and that contract is the optimal avenue for recovery for Third-Party Plaintiffs. Accordingly, the Third-Party Plaintiffs' claims can, and must, be asserted along the lines of privity of contract rather than in a Third-Party Complaint against a party with whom they have no contract.

While there has been inconsistent application of the doctrine in New Jersey, this Court recently reiterated this State's current and binding criteria in a case with a very similar fact pattern. <u>MJF Electrical</u> concerned a contractor (MJF) alleged to have relied, to its detriment, upon designs in a bid package prepared by a defendant engineer (Maser). <u>Id.</u> at *1. The sole claim brought against Maser was for negligent

misrepresentation, and it moved to dismiss. 2021 WL 1168962 at *2. After finding a negligent misrepresentation claim had been properly plead, Id. at *3, 4, the Court moved on to determine if the economic loss doctrine barred the claim and noted the conflicted history of application in New Jersey. "Courts interpreting New Jersey's economic loss doctrine appear to disagree on whether the economic loss doctrine bars tort claims between plaintiffs and defendants who lack privity of contract." Id. at *4.

After careful analysis of the case law applicable to the doctrine, this Court held the claim against the engineer was barred.

> After carefully reviewing the applicable caselaw, the Court believes that the New Jersey Supreme Court would invoke the economic loss doctrine to bar Plaintiff's negligent misrepresentation claim.
>
> * * *
>
> Ultimately, the Court agrees with Maser that the New Jersey Supreme Court is more likely to follow the Appellate Division's decisions in *Schenker, Spectraserv,* and *Horizon* rather than Judge Irenas's opinion in *SRC* that "the potential availability of an additional route to relief for [a plaintiff] ... is not a persuasive reason to bar its negligence claim." *SRC,* 935 F. Supp. at 801; *see also Bedwell,* 2014 WL 3499581. At *3. The Complaint alleges that MJF has pursued change orders and other contractual remedies from TRBOE in order to receive compensation for the Additional Work.... While MJF seeks negligence remedies against Maser for the Additional Work, these remedies can plainly be characterized as contractual remedies against TRBOE. Once again, "if a party is able to pursue remedies in another way, for instance, if the claims can be characterized as contract claims ... it may not supplement its claims with allegations of negligence." *Dynalectric,* 803 F. Supp. at 991. Under these facts,

it is entirely consistent with the economic loss doctrine to bar MJF's claims against Maser.

Id. at *5, 6.

The same bar holds true for Plaintiffs' claim against GZA by way of the Rule 14 (a)(3) Complaint. Plaintiffs have full access to its contracting partner, GIS, to recover completely its alleged economic loss, so the economic loss doctrine bars that claim against GZA as well.

## POINT III

### THIRD-PARTY PLAINTIFFS HAVE NOT STATED A CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION

Here again, this Court's holding in MJF Electrical applies:

> Where the alleged negligence also involves misrepresentation, the plaintiff must plead "an incorrect statement, negligently made and justifiably relied on ...[which] may be the basis for recovery of damages for economic loss ... sustained as a consequence of that reliance." *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 109, 754 A.2d 1188 (2000) (citing *H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138, 142-43 (N.J. 1983)); *Shtutman*, 2017 WL 4402045, at *10.

2021 WL 1168962, *3.

The TPC does not allege anything more than the allegation, "GZA's Reports contained material misrepresentations of facts and material omissions." (**Exhibit A**, ¶45). There is no statement as to what was misrepresented or omitted. Thus, GZA

19

has been denied the opportunity of notice of what it is alleged it did incorrectly.

With regard to reliance, it is alleged both Third-Party Plaintiffs "reasonably relied upon the material misrepresentations and material omissions in GZA's Reports," (**Exhibit A, ¶47**).  However, the TPC alleges that only GIS saw the 2018 Report.  Even that allegation is unclear.  It is alleged GIS submitted a Quotation for services, and the Quotation noted Bid Documents included the 2108 Report (**Exhibit A, ¶¶19-21**).  Therefore, it is not stated, but perhaps inferred, that GIS even saw and read the 2108 Report.  There is no allegation whatsoever that GIS or Geo ever saw the 2103 Report, nor is there any allegation Geo ever saw the 2018 Report.

Also, any reliance by Third-Party Plaintiffs cannot have been reasonable. Both Reports alert all readers (other than GZA's client TB) that reliance is at their own risk (Exhibit A to TPC, Appendix A, ¶1 to each Report – **Exhibit A** hereto).  In DeAngelo, 1999 WL 34014043, *5, plaintiff alleged to have relied on reports prepared by an environmental remediation company.  Exxon passed on the reports to plaintiff in connection with plaintiff's purchase of land from Exxon.  Exxon had asserted it made no representation related to the reports and advised plaintiff to conduct its own investigation.  The Court there found, "plaintiffs cannot prove the essential element of justifiable reliance. In fact, both the contract for sale and the deed expressly precludes a finding that plaintiffs might have justifiably relied on Exxon's representations about the condition of the property. Both documents are

laden with express disclaimers on Exxon's behalf and knowing waivers by plaintiffs." Ibid.  Thus, disclaimers, such as GZA's, deny the ability to claim justifiable reliance.

## POINT IV

### THIRD-PARTY PLAINTIFFS HAVE NOT STATED A CAUSE OF ACTION FOR CONTRIBUTION OR INDEMNITY

#### A. The Third-Party Complaint does not Sufficiently State a Common Law Claim for Contribution

The Third-Party Complaint fails to define the basis for a contribution claim against GZA.  The JTCL, N.J.S.A. 2A:53A-1 *et seq.*, established a right of contribution among joint tortfeasors when the "injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors . . . ." N.J.S.A. 2A:53A-3.

Third-party claims are generally limited to cases where the third-party's liability depends on the outcome of the main action or the third-party plaintiff's liability to plaintiff is vicarious or derivative, as in contribution or indemnity.  The claim cannot be that plaintiff should have sued the third-party defendant. Chao v. New Jersey Licensed Bev. Ass'n, 461 F. Supp. 2d 303, 307 (D.N.J. 2006) ("Through these allegations, the Midlantic defendants appear to be doing exactly what is not permitted under Rule 14, namely, claiming 'it was him, not me.'"); Wilhelm Reuss

GmbH & Co KG, Lebensmittel Werk v. East Coast Warehouse & Distribution Corp., 2017 WL 6055775, at *2 (D.N.J. Dec. 6, 2017).

"[T]he true test [for joint tortfeasor contribution] is joint liability and *not* joint, common or concurrent negligence [citations and internal quote marks omitted]…. It is common liability at the time of the accrual of plaintiff's cause of action which is the Sine qua non of defendant's contribution right [citations and internal quote marks omitted]." Cherry Hill Manor Assocs v. Faugno, 182 N.J. 64, 72 (N.J. 2004).  In addition to joint liability, it must be shown the third-party defendant's negligence contributed to the same injury as that of third-party plaintiff's negligence. Cherry Hill, 182 N.J. at 75.

No contribution claim can stand against GZA in favor of either GIS or Geo, as GZA is not an alleged joint tortfeasor with those entities.  Each party's actions are alleged to be successive (i.e., GZA is alleged to have prepared a Report which GIS then allegedly made use of - **Exhibit A, ¶¶15-16, 19-21**).  Therefore, the liability could not be concurrent.  Neither GIS nor Geo is vicariously liable for GZA.

In addition, the JCTL requires that there first be a judgment entered against the party seeking contribution. N.J.S.A 2A:53A-3; Horizon, 2011 WL 3687451, *8; Polidori v Kordys, 217 N.J.Super. 424, 429 (App.Div. 1987).  No judgment has been entered here (**Exhibit A**).

## B. The Third-Party Complaint does not Sufficiently State a Common Law Claim for Indemnity

"[C]ommon law indemnification shifts the cost of liability from one who is constructively or vicariously liable to the tortfeasor who is primarily liable." Harley Davidson Motor Co. v. Advance Die Casting, Inc., 150 N.J. 489, 497–98 (1997). "[I]ndemnity may not ordinarily be obtained by a party who has been at fault." Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566 (1980); Central Motor v E.I. DuPont de Nemours, 251 N.J.Super. 5, 13 (App.Div. 1991). Indemnity is a remedy for a defendant who is without fault for a plaintiff's injury. Ibid. The New Jersey Supreme Court, in Adler's Quality Bakery, Inc. v. Gaseteria, Inc., stated the following:

> [I]ndemnity amongst tortfeasors has generally been confined to those whose negligence 'is not morally culpable but is merely constructive, technical, imputed or vicarious,'" an implied recognition of the rule stated above. It is clearly but an application of this well-established rule to hold that should Gaseteria be able to prove itself or its agents free from any fault contributing to the accident, then it is entitled to indemnity from a person whose fault in fact caused it.

Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32, N.J. 55, 80 (1960), *quoting* Daily v. Somberg, 28 N.J. 372, 385 (1958). *See* Port Auth. of New York & New Jersey v. Honeywell Protective Servs., Honeywell, Inc., 222 N.J. Super. 11, 20, 535 A.2d 974, 978 (App. Div. 1987)(The indemnitee "must have been without fault and his liability must be merely constructive, secondary or vicarious in order to make

23

a claim for indemnification."); <u>Cartel Capital Corp.</u>, 81 N.J. at 566; <u>Central Motor</u>,

251 N.J.Super. at 13.

If GIS or Geo is found liable to Plaintiffs, it will be for their own liability (see

SAC, ¶¶63-95, Exhibit F to **Exhibit A**).  Moreover, there are no allegations as to

vicarious liability.  Consequently, there can be no contribution claim.


## POINT V

### THE RULE 14(a)(3) COMPLAINT
### FAILS TO STATE ANY CLAIM

Plaintiffs have filed a Complaint pursuant to FRCP Rule 14(a)(3).  The Rule

provides:

> **(3) *Plaintiff's Claims Against a Third-Party Defendant.*** The
> plaintiff may assert against the third-party defendant any claim
> arising out of the transaction or occurrence that is the subject
> matter of the plaintiff's claim against the third-party plaintiff.
> The third-party defendant must then assert any defense under
> Rule 12 and any counterclaim under Rule 13(a), and may assert
> any counterclaim under Rule 13(b) or any crossclaim under Rule
> 13(g).

However, this does not relieve Plaintiffs of the application of FRCP Rule 8

which requires that GZA be put on notice of facts supporting why Plaintiffs are

entitled to relief from GZA.  The Complaint merely states, "[t]o the extent that the

Defendants established the liability of the Third-Party Defendants, Plaintiffs hereby

assert direct claims against these Third-Party Defendants…" (**Exhibit B**, ¶ 5).  Thus,

GZA has not been given, "fair notice of what the ... claim is and the grounds upon which it rests.' []*Twombly,* 550 U.S. [] at 555 [] (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)." Wengui Guo, 2018 WL 3801255, *1. Plaintiff does not identify any cause of action let alone the elements of such.

To the extent that Symbiont intends to assert a claim for negligence or negligent misrepresentation against GZA such claims should be dismissed for the same reasons set forth above, including lack of duty, failure to plead what comprised the alleged misconduct and application of the economic loss doctrine. Without any notice within the pleading of what theory Symbiont seeks to apply to recover against GZA, it is impossible for GZA to attack the claim itself.

## CONCLUSION

For the foregoing reasons, GZA respectfully requests that this Court grant in full its Motion to Dismiss the Third-Party Complaint and the FRCP Rule 14 (a)(3)

Complaint, together with such other relief as this Court deems just.

Dated:  New York, New York
        January 20, 2023

                              **DONOVAN HATEM LLP**

                       By: _____
                              Stephen F. Willig
                              112 W. 34th Street, 18th Floor
                              New York, New York 10120
                              (212) 502-7016
                              *swillig@donovanhatem.com*
                              Attorneys for Third-Party Defendant
                              GZA GeoEnvironmental, Inc.

4855-5117-3451, v. 1