JOSEPH A. PETRILLO, ESQ.
HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
40 Paterson Street, PO Box 480
New Brunswick, NJ 08903
(732) 545-4717
Attorneys for Third Party Defendant, Geopier Foundation Company, Inc.

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### TRENTON, NEW JERSEY

| | |
|---|---|
| Plaintiffs,<br><br>SYMBOINT SCIENCE, ENGINEERING AND CONSTRUCTION, INC.; ZURICH AMERICAN INSURANCE COMPANY a/s/o Symboint Science, Engineering and Construction, Inc.; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a/s/o Symboint Science, Engineering and Construction, Inc.; and STEADFAST INSURANCE COMPANY a/s/o Symboint Science, Engineering and Construction, Inc.<br><br>       vs.<br><br>Defendants,<br><br>GROUND IMPROVEMENT SERVICES, INC.; JOHN DOES 1-10 (fictitious parties) and ABC COMPANIES 1-10 (fictitious parties); GEOSTRUCTURES OF VIRGINIA, INC.<br><br>AND<br><br>Defendant/Third Party Plaintiffs,<br><br>GROUND IMPROVEMENT SERVICES, INC. and GEOSTRUCTURES, INC.<br><br>    vs.<br><br>Third Party Defendants,<br><br>GEOPIER FOUNDATION COMPANY, INC., and GZA GEOENVIRONMENTAL, INC. | Honorable Michael A. Shipp<br><br>CIVIL ACTION NO. 3:22-cv-04905-MAS-LHG<br><br>**NOTICE OF CROSS MOTION TO DISMISS PLAINTIFF'S RULE 14(A)(3) COMPLAINT AGAINST**<br><br><br>__ELECTRONICALLY FILED__ |

TO: **ALL COUNSEL OF RECORD IN THE MATTER**

COUNSEL:

PLEASE TAKE NOTICE that the undersigned attorneys for Third Party Defendant, Geopier Foundation Company, Inc., will apply by Cross Motion to the above-named Court at the United States District Courthouse, Trenton, New Jersey, on March 20, 2023 at 9:00 a.m., or as soon thereafter as counsel may be heard, for an Order Dismissing Plaintiff's Rule 14(a)(3) pursuant to the Economic Loss Doctrine.

PLEASE TAKE FURTHER NOTICE that in support of this motion, the undersigned will rely upon the enclosed Certification of Joseph A. Petrillo and Legal Brief filed herewith.

PLEASE TAKE FURTHER NOTICE that in accordance with Rule 6(d) of the General Rules of this court, a proposed Order is annexed hereto.

Oral argument is requested on the within motion.

At the present time there is no trial or settlement conference scheduled for this matter.

HOAGLAND, LONGO, MORAN,
  DUNST & DOUKAS, LLP
Attorneys for Third Party Defendant,
Geopier Foundation Company, Inc.

*Joseph A. Petrillo*

By: _____
          JOSEPH A. PETRILLO

Dated:  February 16, 2023

## <u>CERTIFICATE OF MAILING</u>

I, the undersigned, certify that on this date, I forwarded a copy of the within pleading to

the following persons by first-class mail:

Magistrate Lois H. Goodman
District Judge Michael A. Shipp
Clarkson S. Fisher Building
& U.S. Courthouse
402 East State Street
Room 2020
Trenton, NJ 08608

Clerk, United States District Court
Court Clerk
Clarkson S. Fisher Building
& U.S. Courthouse
402 East State Street
Room 2020
Trenton, NJ 08608

Daniel C. Theveny, Esq.
Cozen & O'Connor
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Attorney(s) for Plaintiff
Symboint Science, Engineering and Construction, Inc.

Michael T. Sweeney, Esq.
O'Hagan Meyer PLLC
Three Logan Square
1717 Arch Street, Suite 3910
Philadelphia, PA 19103
Attorney(s) for Defendant
Ground Improvement Services, Inc.

Stephen F. Willig, Esq.
Donovan Hatem, LLP
112 West 34th Street
18th Floor
New York, NY 10120
Attorney for Third-Party Defendant,
GZA GeoEnvironmental, Inc.

Ryan Milun, Esq.

The Milun Law Firm, LLC
Cranford Business Park
20 Commerce Drive
Suite 135
Cranford, NJ 07016

I certify that the foregoing statements made by me are true.  I am aware that if any of the

statements made by me are willfully false, I am subject to punishment.

HOAGLAND, LONGO, MORAN,
  DUNST & DOUKAS, LLP
Attorneys for Third Party Defendant,
Geopier Foundation Company, Inc.


*Joseph A. Petrillo*

By: _____
        JOSEPH A. PETRILLO


Dated:  February 16, 2023

## <u>CERTIFICATION</u>

I, Joseph A. Petrillo, Esq., do hereby certify as follows:

1.     I am an attorney-at-law of the State of New Jersey, a Partner in the law firm of Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys for Third Party Defendant, Geopier Foundation Company, Inc., and am fully familiar with, and responsible for, the handling of the within matter.

2.     I make this Certification in Support of Third-Party Defendant's Cross Motion for Dismissal of the Plaintiffs' *Fed. R. Civ. P.* 14(a)(3) Complaint as against Third-Party Defendant, Geopier.

3.     The relief sought in the subject Cross Motion is limited to the Plaintiffs' Claims as articulated in Plaintiffs' *Fed. R. Civ. P.* 14(a)(3) Complaint.  No relief is sought in this Cross Motion as to Ground Improvement Services, Inc. and GeoStructures' Third-Party Complaint against this Third-Party Defendant.

4.     By Motion filed January 20, 2023, Third-Party Defendant, GZA GeoEnvironmental, Inc. (GZA) moved to dismiss all claims against GZA, including the claims advanced by the Third-Party Plaintiff and the Plaintiff's *Fed. R. Civ. P.* 14(a)(3) Complaint.

5.     One of the theories advanced in the underlying Motion is the Economic Loss Doctrine.

6.     Since the Economic Loss Doctrine also applies to bar the Plaintiff's direct claims against Third-Party Defendant Geopier, Geopier's Cross Motion is made at this time.

7.     This Third-Party Defendant relies upon the procedural history as outlined on pages 4 – 7 of the GZA Legal Brief as well as the recitation of law concerning the Economic Loss Doctrine as outlined on pages 16 – 19 of the GZA Legal Brief.

8.      The within Certification is made in support of this Third-Party Defendant's Cross Motion for Leave Dismiss Plaintiff's *Rule 14(a)(3)* Complaint, in the form annexed hereto.

9.      There is presently no pretrial conference, arbitration, calendar call, or trial set for this matter.

10.      I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


*Joseph A. Petrillo*

_____

JOSEPH A. PETRILLO

Dated:  February 16, 2023

JOSEPH A. PETRILLO, ESQ.
HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
40 Paterson Street, PO Box 480
New Brunswick, NJ 08903
(732) 545-4717
Attorneys for Third Party Defendant, Geopier Foundation Company, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON, NEW JERSEY

| | |
|---|---|
| Plaintiffs, | Honorable Michael A. Shipp |
| SYMBOINT SCIENCE, ENGINEERING AND CONSTRUCTION, INC.; ZURICH AMERICAN INSURANCE COMPANY a/s/o Symboint Science, Engineering and Construction, Inc.; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a/s/o Symboint Science, Engineering and Construction, Inc.; and STEADFAST INSURANCE COMPANY a/s/o Symboint Science, Engineering and Construction, Inc. | CIVIL ACTION NO. 3:22-cv-04905-MAS-LHG |
| vs. | **PROPOSED ORDER** |
| Defendants, | <u>**ELECTRONICALLY FILED**</u> |
| GROUND IMPROVEMENT SERVICES, INC.; JOHN DOES 1-10 (fictitious parties) and ABC COMPANIES 1-10 (fictitious parties); GEOSTRUCTURES OF VIRGINIA, INC. | |
| AND | |
| Defendant/Third Party Plaintiffs, | |
| GROUND IMPROVEMENT SERVICES, INC. and GEOSTRUCTURES, INC. | |
| vs. | |
| Third Party Defendants, | |
| GEOPIER FOUNDATION COMPANY, INC., and GZA GEOENVIRONMENTAL, INC. | |

THIS MATTER having been brought before the Court by Cross Motion of Hoagland, Longo, Moran, Dunst & Doukas, LLP, attorneys for Third Party Defendant, Geopier Foundation Company, Inc., for an Order dismissing Plaintiff's *Rule* 14(a)(3) Complaint, and the Court having reviewed the moving papers and for good cause shown;

IT IS ON THIS _____ day of _____, 0003,

ORDERED that Third-Party Defendant's Cross Motion is hereby GRANTED; and, it is further,

ORDRED that the Plaintiffs' *Fed. R. Civ. P.* 14(a)(3) Complaint against Third-Party Defendant Geopier Foundation Company, Inc. is dismissed with prejudice; and

IT IS FURTHER ORDERED that a copy of the within Order shall be served upon all counsel of record within seven (7) days of the date hereof.

_____
U.S.D.J.

Papers filed with the Court:
(    ) Answering Papers
(    ) Reply Papers

The within Notice of Motion was:
(    ) Opposed
(    ) Unopposed

JOSEPH A. PETRILLO, ESQ.
HOAGLAND, LONGO, MORAN, DUNST & DOUKAS, LLP
40 Paterson Street, PO Box 480
New Brunswick, NJ 08903
(732) 545-4717
Attorneys for Third Party Defendant,  Geopier Foundation Company, Inc.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON, NEW JERSEY

| | |
|---|---|
| Plaintiffs, | Honorable Michael A. Shipp |
| SYMBOINT SCIENCE, ENGINEERING AND CONSTRUCTION, INC.; ZURICH AMERICAN INSURANCE COMPANY a/s/o Symboint Science, Engineering and Construction, Inc.; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a/s/o Symboint Science, Engineering and Construction, Inc.; and STEADFAST INSURANCE COMPANY a/s/o Symboint Science, Engineering and Construction, Inc. | CIVIL ACTION NO. 3:22-cv-04905-MAS-LHG |
| vs. | |
| Defendants, | **ELECTRONICALLY FILED** |
| GROUND IMPROVEMENT SERVICES, INC.; JOHN DOES 1-10 (fictitious parties) and ABC COMPANIES 1-10 (fictitious parties); GEOSTRUCTURES OF VIRGINIA, INC. | |
| AND | |
| Defendant/Third Party Plaintiffs, | |
| GROUND IMPROVEMENT SERVICES, INC. and GEOSTRUCTURES, INC. | |
| vs. | |
| Third Party Defendants, | |
| GEOPIER FOUNDATION COMPANY, INC., and GZA GEOENVIRONMENTAL, INC. | |

**BRIEF IN SUPPORT OF THIRD-PARTY DEFENDANT,
GEOPIER FOUNDATION COMPANY, INC.'S CROSS MOTION TO DISMISS
PLAINTIFFS' FED. R. CIV. P. 14(A)(3) COMPLAINT**

HOAGLAND, LONGO, MORAN,
  DUNST & DOUKAS, LLP
Attorneys for Third Party Defendant,
Geopier Foundation Company, Inc.
40 Paterson Street
P.O. Box 480
New Brunswick, NJ 08903
(732) 545-4717

JOSEPH A. PETRILLO, ESQ.
On the Brief

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

LEGAL ARGUMENT

POINT I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

<u>Alloway v. General Marine Industries</u>, 149 N.J. 620 (1997)....................................................... 4, 5, 9

<u>Bedwell v. Camden County Improvement Authority</u>,
  2014 U.S.  Dist. LEXIS 95510 (DCNJ 2014)................................................... 12

<u>BRW, Inc., v. Duffy & Sons, Inc.</u>, 99 P.3d 66 (Colo. 2004) ........................................................ 11

<u>Conforti & Eisele, Inc., v. John C. Morris Associates</u>, 175 N.J. Super. 314
  (Law Div 1980), *aff'd* 199 N.J. Super. 498 (App. Div. 1985)..................................... 9, 12

<u>Crystallex Int'l Corp. v. Petreoleos De Venezuela, S.A.</u>,
  870 F.3d 79, 84 (3d Cir. 2018)............................................................................. 2

<u>Dammann & Co.</u>, 594 F.3d 238 (3d Cir. 2010) ............................................................ 13

<u>Dean v. Barrett Homes Inc.</u>, 204 N.J. 286 (2010) .................................................. 7, 8, 9

<u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938) ..................................................... 2

<u>Horizon Group of New England v. New Jersey Schools Construction Corporation</u>,
  2011 *N.J. Super. Unpub. LEXIS* 2271 (App. Div. 2011).........................................8-12, 14

<u>International Minerals & Mining Corp. v. Citicorp. North America Inc.</u>,
  736 F. Supp. 587 (D.N.J. 1990) ..................................................................... 7

<u>LongeneckerWells v. Benecard Servs.</u>, 658 F.App'x 659 (3d Cir. 2016) ................................... 13

<u>MJF Elec. Contr., Inc. v. Toms River Bd. Of Educ.</u>, *unpublished,* (D.N.J. 2021) ...................... 13

<u>New Mea Construction Corporation v. Harper</u>, 203 N.J. Super. 486 (App. Div. 1985) .... 3, 4, 7, 9

<u>Saltiel v. GSI Consultants Inc.</u>, 170 N.J. 297 (2002).................................................5-7, 9, 11, 12

<u>Schenker, Inc. v. Expeditors Int'l of Wash., Inc.</u>, *unpublished* (App. Div. 2016)................. 13, 14

<u>Scotts African Union Methodist Protestant Church v. Conference of African Union
  First Colored Methodist Protestant Church</u>, 98 F.3d 78 (3d Cir. 1996) ........................... 2

<u>Spectraserv, Inc., v. Middlesex County Utilities Authority</u>,
  2013 N.J. Super. Unpub. LEXIS 2173 (Law Div. 2013)........................................... 10-14

<u>Spring Motors Distribution v. Ford Motor Company</u>, 98 N.J. 555 (1985)...................... 2, 3, 8, 12

SRC Construction Corp. v. Atlantic City Housing Authority,
    935 F. Supp. 2d 796 (D.N.J. 2013) .............................................................................. 12, 14

**Rules**

*Fed. R. Civ. P. 14(a)(3)*............................................................................................................ 1, 14

## **INTRODUCTORY STATEMENT**

Third-Party Defendant, Geopier Foundation Company, Inc. hereby cross moves to dismiss Plaintiff's *Fed. R. Civ. P. 14(a)(3)* Complaint against Third-Party Defendant pursuant to the Economic Loss Doctrine.  Plaintiffs may not bring a tort action when they have an available remedy pursuant to a contract. The sole factual underpinning to this straightforward legal analysis is the Plaintiffs' right to recover any/all sums through the direct defendant. Therefore, a tort or derivative claim against Geopier is not permitted. Geopier is only involved in this project through a contractual arrangement with Third Party Plaintiff.  Thus, Plaintiff, a stranger to that agreement with alternate avenues for recourse, may not bring a direct cause of action against this Third-Party Defendant.

The Plaintiff's *Fed. R. Civ. P. 14(a)(3)* Complaint is under-plead and does not provide a sufficient description for anyone to tell what the specific cause of action is being asserted. Nevertheless, we know that the Plaintiff's intent was to pursue a direct cause of action against Third-Party Defendant. Presumably, that cause of action would sound in negligence since Plaintiff has no contract with Third-Party Defendant. The Economic Loss Doctrine bars Plaintiff's negligence claim.

Simply stated, as outlined below, the Economic Loss Doctrine is black letter law, clearly applicable here and undoubtedly bars the Plaintiff's claims.  There is no independent cause of action or basis for any direct claim, nor is one plead by the Plaintiff's *Fed. R. Civ. P. 14(a)(3)* Complaint.  Moreover, the Third-Party Complaint rests on the contract between Geopier and GIS to which Symboint is not a party.

## STATEMENT OF MATERIAL FACTS

1.      Third-Party Defendant incorporates and relies upon the Certification of Joseph A. Petrillo, Esq.

## LEGAL ARGUMENT

## POINT I

It is well settled that the Economic Loss Doctrine bars recovery of a tort remedy where the action arises from a contractual relationship. As will be demonstrated below, this Doctrine also applies if Plaintiff and Defendant are not in contract privity <u>if</u> the Plaintiff has an alternate route of redress.  Here, Plaintiff does have alternate routes of redress.  Specifically, Plaintiff has filed a Complaint against Ground Improvement Service, Inc. and GeoStructures of Virginia, Inc. For the reasons that follow, where, as here, the alleged damages are purely economic and Plaintiff has a remedy, the Economic Loss Doctrine bars this tort claim against Geopier.

The "<u>Erie</u> Doctrine" applies the matter before the Court.  In essence, in cases involving diversity jurisdiction, federal courts must apply state substantive law. <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938). Clearly, that applies in this case.  When applying state law, federal courts mostly look to the state supreme court and then to intermediate courts. <u>Crystallex Int'l Corp. v. Petroleos De Venezuela, S.A.</u>, 870 F.3d 79, 84 (3d Cir. 2018).  Where state law is unclear, federal courts must predict how the state's highest court would rule.  <u>Scotts African Union Methodist Protestant Church v. Conference of African Union First Colored Methodist Protestant Church</u>, 98 F.3d 78, 92 (3d Cir. 1996).  Here, the thrust of the case law in this state is clear.  The claims at issue should be barred.

The Economic Loss Doctrine was expressly recognized in New Jersey in the seminal case of <u>Spring Motors Distribution v. Ford Motor Company</u>, 98 N.J. 555 (1985).  There, the Court

addressed whether a commercial buyer should be restricted to its cause of action under the Uniform Commercial Code, or should instead be allowed to pursue a cause of action predicated on principals of negligence and strict liability[1] solely for economic loss caused by the purchase of defective goods. See id. at 560. The Supreme Court in that instance held that "a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for breach of warranty under the UCC, but not in strict liability or negligence. See id. at 561. The Supreme Court recognized:

> "The purpose of a tort duty of care is to protect society's interest in freedom from harm, *i.e.,* the duty arises from policy considerations formed without reference to any agreement between the parties. A contractual duty, by comparison, arises from society's interest in the performance of promises. Generally speaking, *tort principals, such as negligence, are better suited for resolving claims involving unanticipated physical injury, particularly those arising out of an accident.* Contract principals, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement." *See* Spring Motors at 579-580 (emphasis added).

In New Jersey, the Economic Loss Doctrine has since been specifically applied in multiple cases involving a construction project. The New Mea Construction Corporation v. Harper, 203 N.J. Super. 486 (App. Div. 1985) case involved a dispute between a builder and homeowner arising from the construction of a single-family residence. Following construction, the builder brought suit against the homeowner seeking the balance of its contract, and defendants answered with a counterclaim seeking, *inter-alia*, damages for "negligent" workmanship. *See* id. The crux of the counterclaim arose from the assertion that the builder's

---

[1] In the case, the distinction between whether or not the buyer could recover under a negligence theory verses a contract governed by the UCC was important because of statute of limitation concerns. The negligence action would have permitted a 6-year statute of limitations where the contract action would have only permitted a 4-year statute of limitations under the UCC. The complaint was filed beyond the 4-year statute of limitation but within the 6 year statute of limitation.

principal *negligently* supervised the project allowing materials that were not of the equal quality required by the contract. *See* id. at 494. The New Mea Court recognized, however, that the homeowner's allegations, despite casting the cause of action as one for negligent supervision, sounded in contract as the obligation to use certain material is "clearly not an obligation imposed by law." *See* id. Additionally, the Court noted:

> "[t]he injury suffered in this case is the type not ordinarily alleged in a tort case. Here there was no personal injury or consequential property damage arising from a traumatic event. Rather the loss is of a nature more normally associated with a contract action. Given these factors and the understanding that the relationship between the parties is governed by a lengthy and comprehensive contractual arrangement, defendants' counterclaim is more soundly based on contract then on tort." See Id. (*emphasis added*).

Although distinguishable from the scenario before this court, in 1997 the New Jersey Supreme Court issued another decision which further embedded the Economic Loss Doctrine into its common law. Alloway v. General Marine Industries, 149 N.J. 620 (1997). In the case, the primary issue was whether or not the plaintiff could recover damages from the defendant in negligence and as strict liability solely for economic losses caused by a defect in a power boat purchased by plaintiff. Alloway at 622-623. Although this involved the sale of goods, thereby making it distinguishable from the instant matter, the New Jersey Supreme Court barred the tort claims based upon principles that are directly on point herein. Alloway at 623. Specifically, the court ruled that "tort principles are better suited to resolve claims for personal injuries or damage to other property…. contract principles more readily respond to claims for economic loss…" Alloway at 627. The court went on to write: "Various considerations support the distinction. Tort principles more adequately address the creation of an unreasonable risk of harm when a person or other property sustains accidental or unexpected injury…When, however, a product

4

fails to fulfill a purchaser's economic expectations, contract principles, particularly as implemented by the U.C.C, provide a more appropriate analytical framework." Alloway at 628.

In 2002, the New Jersey Supreme Court decided Saltiel v. GSI Consultants Inc., 170 N.J. 297 (2002). The factual underpinning in Salteil is very similar to the present matter. Plaintiff was retained by William Paterson University to provide landscape architectural services for the reconstruction of its athletic fields. *See* id. at 300. Plaintiff in turn retained defendant, GSI Consultants, to prepare the specifications for the athletic fields. *See* id. The services provided by GSI Consultants included preparation of specifications for the design of a new drainage system, testing of a root zone mixture, preparation of specifications and selection of new sod, and monitoring of the actual reconstruction, which was to be completed by a contractor ultimately selected by the owner William Paterson University. *See* id.

Following completion of the athletic fields, instances of standing water and inadequate drainage were discovered. *See* id. at 301. In response to these complaints Plaintiff hired another consultant to determine the cause of the conditions of the athletic fields. *See* id. The second consultant determined that the construction had been completed in accordance with GSI's specifications, however, the field specifications had been improperly prepared because the root zone designed by GSI formed a nearly impermeable barrier that did not allow for proper water drainage. *See* id. As a result, William Paterson University required (pursuant to its contract with plaintiff) that plaintiff prepare new specifications for the field and hire a contractor to reconstruct the athletic field at a cost of $351,000. *See* id.

In its subsequent complaint against GSI[2] and its principals to recover these costs, plaintiff alleged negligent design, negligent misrepresentation, breach of contract, breach of warranty, promissory estoppel and agency liability. The <u>Saltiel</u> Court considered whether the plaintiff, a landscape architect, could maintain an action in negligence against its turf grass consultant where the alleged negligent conduct of the consultant arose from a contract between the landscape architect and the consultant. *See* <u>id.</u> at 299.

In distinguishing the principals of contract and tort, the <u>Saltiel</u> Court explained that "at common law a Plaintiff who had a contractual relationship with the defendant was able to sue in tort <u>if</u> the plaintiff could establish that the alleged breach of duty constituted a 'separate and independent tort'." *See* <u>id.</u>  The <u>Saltiel</u> Court recognized that the boundary line between tort and contract actions, as between parties to a contract, had become increasingly difficult to distinguish. *See* <u>id.</u> The Supreme Court was also cognizant of the fact that in limited circumstances, relationships created by contract can also give arise to affirmative duties imposed by law. *See* <u>id.</u> at 311. By way of example, a relationship between a physician and patient may conceivably sound in tort and contract. *See* <u>id.</u>

However, the <u>Saltiel</u> Court also recognized that recent federal cases had held "that under New Jersey law a party <u>cannot</u> maintain a negligence action in addition to a contract action unless the plaintiff can establish an independent duty of care." *See* <u>Saltiel</u> at 314 (<u>emphasis added</u>). Such decisions have announced that "[i]t has long been the law that remedies in tort relating to a breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty owed by the breaching party to the

---

[2] For reasons not explained by the Court, nor important to the legal principles at issue herein, plaintiff ultimately dismissed its complaint against the GSI entity and proceeded only against its principals.

Plaintiff." *See* International Minerals & Mining Corp. v. Citicorp. North America Inc., 736 F.

Supp. 587, 597 (D.N.J. 1990), *cited* by Saltiel at 314.   Thus, by relying on the previous decision

in New Mea, *supra*, and the federal decision in International Minerals, the New Jersey Supreme

Court in Saltiel held that "*under New Jersey law, a tort remedy does not arise from a contractual*

*relationship unless the breaching party owes an independent duty imposed by law.*"   *See* Saltiel

at 316.  (Emphasis added).  New Jersey's Supreme Court announced:

> "[W]e are unable to discern any duty owed to the Plaintiff that is independent of
> the duties that arose out of the contract.   Defendant GSI possessed a specific
> technical skill that it was obligated to apply under the contract.   Its failure to do so
> was not a violation of an obligation imposed by law, but rather a breach of its
> contractual duties." *See* Saltiel at 316-317.

Subsequent to Saltiel, the New Jersey Supreme Court in Dean v. Barrett Homes Inc., 204 N.J.

286 (2010) discussed the history of the Economic Loss Doctrine and its application to the

determination of whether a claim sounds in tort or contract.   In Dean, Plaintiff had purchased a

home from its original owners which had been constructed by defendant with EIFS designed and

manufactured by Sto Corporation.  *See* Id. at 289-291.  After plaintiffs had moved into the home,

they discovered moisture penetration through the EIFS causing mold. *See* Id. at 290.[3]  Plaintiffs

filed a complaint against defendants in which claims sounding in negligence, breach of express

and implied warranties, breach of contract, violation of the Consumer Fraud Act, common law

fraud and strict products liability were alleged.  *See* Id. at 291.

Defendant, Sto ultimately moved for dismissal of tort claims based on the argument that

plaintiffs were seeking damages for purely economic loss. *See* id. The trial court granted Sto's

motion concluding that there was no basis to support any tort theory of recovery since neither

plaintiffs nor anyone else had sustained personal injuries as a result of the alleged defect in the

---

[3] Plaintiff's never claimed that they had sustained personal injuries caused by the mold because
they had all of the EIFS removed and replaced.  *See* id. at 291

product. *See* Id. at 291. The New Jersey Appellate Division affirmed concluding that "the Economic Loss Rule precluded recovery because plaintiff's claim for damages was focused on the cost of replacing the defective product itself." *See* id. at 292. In addressing the issues raised on appeal, the Supreme Court in Dean revisited its earlier decision in Spring Motors. The Dean Court noted:

> "The Economic Loss Rule, which bars tort remedies in strict liability or negligence when the only claim is for damage to the product itself, evolved as part of the common law, **largely as an effort to establish the boundary line between contract and tort remedies.** As this Court long ago noted, the Economic Loss Rule was developed in conjunction with strict liability theories that were a judicial response to inadequacies in sales law with respect to consumers who sustained physical injuries from defective goods made or distributed by remote parties in the marketing chain". *See* Dean at 295 *citing* Spring Motors, *supra* at 576. (**Emphasis added**).

The Dean Court also noted that it had previously determined in Spring Motors that "when addressing economic losses in commercial transactions, contract theories were better suited than were tort-based principals of strict liability." *See* Dean at 296.

The Economic Loss Doctrine applies even if the defendant does not have a contract with the plaintiff. In Horizon Group of New England v. New Jersey Schools Construction Corporation, 2011 *N.J. Super. Unpub. LEXIS* 2271 (App. Div. 2011) [**Exhibit 1**], the Appellate Division upheld dismissal of negligence claims directly filed by a contractor, Horizon, against various design consultants contractually retained by the owner, NJSDA, including various architects and engineers based on the Economic Loss Doctrine. *This well-reasoned decision is expressly based on the binding precedent cited above.*

The contractor, Horizon had entered into a contract with the public owner, NJSDA to construct an athletic field with bleachers, lighting and paving for the project. NJSDA separately entered into a contract with its architect, EIA to provide design and construction administration

8

services for the project. EIA in turn retained various engineering subconsultants for the project. The underlying dispute in the matter arose from a series of alleged delays in the construction of the project.  As a result, Horizon alleged that it had incurred damages in excess of $7,000,000. As part of its allegations against the design consultants, Horizon alleged that the bidding contract documents were negligently prepared and the work was negligently managed and administered.

Of the issues presented on appeal, the New Jersey Appellate Division considered whether Horizon could maintain an action in negligence against the architect and its subconsultant engineer. The Appellate Division recognized that the Economic Loss Doctrine "bars resort to tort theories of liability when the relationship between the parties is based on a contractual relationship".  See Horizon at 10, *quoting* Dean v. Barret Homes, *supra*, at 295.

The Court also noted that "[a]pplication of the rule requires a determination whether the relationship formed by contract gives rise to affirmative duties imposed by law."  *See* Horizon at 10, *citing* Saltiel v. GSI Consultants, Inc., *supra*, at 309-310; New Mea Construction v. Harper, *supra*, at 493.  Horizon unsuccessfully argued that a contractor who suffers economic damages as a result of a design professional's negligence can recover those economic damages from the design professional despite relying on Conforti & Eisele, Inc., v. John C. Morris Associates, 175 N.J. Super. 314 (Law Div 1980), *aff'd* 199 N.J. Super. 498 (App. Div. 1985).  In response to that reliance, the Appellate Division clearly distinguished Conforti based on the contractual scheme set in place for the project at issue. The Appellate Division also explained that Horizon could invoke contractual remedies *and could sue NJSDA directly for breach of contract, which it did.* As explained by the Appellate Division:

> Horizon did have a direct contractual relationship with NJSDA and possessed contractual remedies to address the situation it encountered in the performance of its work.  Furthermore, Horizon entered into a contract in which it was clearly informed of the nature of the relationship, or lack thereof, among the various

contractors and professionals.  The contractual scheme was specifically designed with NJSDA functioning as the hub and requiring all contracting parties to deal with it, not each other.  *See* <u>Horizon</u> at 20.

The contracts set forth a contractual hierarchy on the project at issue.  More recently, in

<u>Spectraserv, Inc., v. Middlesex County Utilities Authority</u>, 2013 N.J. Super. Unpub. LEXIS 2173

(Law Div. 2013) [**Exhibit 2**], the Court was required to decide "[w]hether the economic loss

doctrine bars a plaintiff's claim for purely economic losses resulting from negligence, *against a*

*defendant with whom the plaintiff has no contractual privy <u>and</u>* where the plaintiff's contract

with a mutual contracting party includes a remedy for economic losses." *See* <u>Id.</u> at 1.  (Emphasis

added).

The litigation arose from a contract between Spectraserv and the Middlesex County

Utilities Authority involving the construction of improvements to a sludge pasteurizing process

at a sludge processing facility.  There were numerous delays and set-backs reported on the

project ultimately leading to the termination of the plaintiff. As a result, Spectraserv filed a

Complaint which alleged, among other things, negligence against the project engineer, R3M

Engineering, with whom the MCUA had contracts for design and construction management.

R3M did not have a contract with Spectraserv.

> "Whether the absence of privity of contract between plaintiff and defendants renders the Economic Loss Doctrine inapplicable presents an issue of first impression in New Jersey." <u>Spectraserv</u> at  24.

> "Here there is a large construction project, with multiple parties.  There are a series of inter-related contracts… The parties relied on these contracts to allocate their risks, duties, and remedies. Given the nature of the relationships among the parties, the absence of a direct contractual relationship does not preclude the application of the Economic Loss Doctrine. Applying the Doctrine in such cases will serve its purpose of limiting the expansion of tort liability where contractual remedies exist." <u>Spectraserv</u> at 30.

The Court addressed various factors which relate to the application of the Economic Loss

Doctrine.  First and foremost, the Court decided whether the absence of a contract between the plaintiff and the engineer/defendant rendered the Economic Loss Doctrine inapplicable. The <u>Spectraserv</u> Court relied on the <u>Horizon</u> Court which recognized that the contractor in that case had other remedies available to address its loss.

The <u>Horizon</u> Court had recognized that the contractor entered into a contract that clearly described the nature of its relationship, or lack thereof, among the various contractors and professionals, which in the <u>Spectraserv</u> Court's opinion evidenced a belief that privity of contract is <u>not</u> required for the Economic Loss Doctrine to apply.  Furthermore, Court further recognized:

> "Construction projects are multiparty transactions, but it is rarely the case that all or most of the parties involved in the project will be parties to the same document or documents.  In fact, most construction transactions are documented in a series of two-party contracts, such as owner/architect, owner/contractor, and contractor/subcontractor.  Nevertheless, the conduct of most construction projects contemplates a complex set of interrelationships, and respective rights and obligations."  *See* <u>Spectraserv</u> at 26-27 *quoting* <u>BRW, Inc., v. Duffy & Sons, Inc.</u>, 99 P.3d 66, 72 (Colo. 2004).

Such was the case for the project involved in <u>Spectraserv</u>, as well as, the project at issue. Thus, the Court explained "[g]iven the nature of the relationships among the parties, the absence of a direct contractual relationship does not preclude the application of the economic loss of doctrine." *See* <u>Spectraserv</u> at 29-30.

The Court also considered the issue of whether a design professional even owes an independent duty to the contractor. The <u>Spectraserv</u> Court explained, quoting the Supreme Court's holding in <u>Saltiel</u>, "[u]nder New Jersey Law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *See* <u>Spectraserv</u> at 30-31, *quoting* <u>Saltiel</u>, *supra*, at 316. The <u>Spectraserv</u> Court recognized that in <u>Saltiel</u>, the New Jersey Supreme Court was "unable to discern any duty owed to the plaintiff that was independent of the duties that arose under the terms of the contract." *See* <u>Spectraserv</u> at 31,

quoting Saltiel, *supra*, at 316.  Furthermore, Spectraserv noted that possessing "specific technical skills that [the professional] was obligated to apply under the contract [and its] failure to do so was not a violation of an obligation imposed by law, but rather a breach of its contractual duties." *See* Spectraserv at 31 *quoting* Saltiel, *supra*, at 316-317.

In relying on the past precedent established by the Supreme Court in Saltiel, the Court in Spectraserv correctly observed that a failure on the part of the engineer to apply the technical skills that were required by the contract is not a violation of any obligation imposed by law. Similarly, like the damages in Saltiel, which included the cost of preparing new specifications and hiring a new contractor for the purposes of reconstruction, the damages claimed by plaintiff in the Spectraserv case were economic damages. Thus, in reliance upon the New Jersey Supreme Court decision in Saltiel, the Spectraserv decision held that engineers do not owe an independent duty to contractors under the law.

Significantly, in Spectraserv the court noted that Conforti is distinguishable because the plaintiff otherwise would have been left without a remedy. Spectraserv at 40. The Court also perceptively observed that the Conforti case never even mentions the Economic Loss Doctrine, and it predates the New Jersey Supreme Court decision in Spring Motors.  Spectraserv at 42. While it is true that two written decisions[4] reach a different conclusion than the Appellate Division decision in Horizon and the Law Division decision in Spectraserv, those cases were both decided by the same Judge who relied upon a pre-Spring Motors decision.

Finally, the Spectraserv Court allowed that "[w]here a dismissal of the negligence count would render plaintiff, Spectraserv, without an avenue to seek redress for its economic losses,

---

[4] SRC Construction Corp. v. Atlantic City Housing Authority, 935 F. Supp. 2d 796 (D.N.J. 2013), and Bedwell v. Camden County Improvement Authority, 2014 U.S.  Dist. LEXIS 95510 (DCNJ 2014).

the economic loss doctrine will not be applied." *See* <u>Spectraserv</u> at 39.  As a matter of public policy, the <u>Spectraserv</u> Court espoused that "[o]ur Courts have consistently held that contract law is better suited to resolve disputes where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities [and] that could have been the subject of their negotiations." *See* <u>Spectraserv</u> at 44, quoting <u>Dammann & Co.</u>, 594 F.3d 238, 244 (3d Cir. 2010).

Other subsequent decisions support the application of the Economic Loss Doctrine and the findings of <u>Spectraserv</u>.  That is, so long as the Plaintiff has a remedy, the doctrine should be applied.  In <u>Schenker, Inc. v. Expeditors Int'l of Wash., Inc.</u>, *unpublished* (App. Div. 2016) [**Exhibit 3**], a manufacturer entered into a contract with a shipping company and another contract with a company handling customs issues.  After a shipment was delayed in customs, the shipper sued the customs company in tort, not the manufacturer.  The Appellate Division applied the Economic Loss Doctrine but would not have done so if it was left with a remedy.  It would have had a remedy viz a viz the manufacturer and therefore the Economic Loss Doctrine applied. In <u>LongeneckerWells v. Benecard Servs.</u>, 658 F.App'x 659 (3d Cir. 2016), the Third Circuit Court of Appeals barred tort claims against a defendant even though Plaintiff had no contractual remedies against any party.  There, the theories were tort and implied contract and the Court affirmed the dismissal of the tort claims.

In <u>MJF Elec. Contr., Inc. v. Toms River Bd. Of Educ.</u>, *unpublished,* (D.N.J. 2021) [**Exhibit 4**], this Court analyzed whether to dismiss a tort claim for negligent misrepresentation against design professional, Maser.  The Court contrasted the case law above which shows a conflict between some New Jersey Appellate Division decisions and those of a federal district judge as to the applicability of the Economic Loss Doctrine.  Ultimately, the Court held,

"[u]ltimately, the Court agrees with Maser that the New Jersey Supreme Court is more likely to follow the Appellate Division's decisions in <u>Schenker</u>, <u>Spectraserv</u>, and <u>Horizon</u> rather than Judge Irena's opinion in <u>SRC</u> that "the potential availability of an additional route to relief for [a plaintiff] … is not a persuasive reason to bar a negligence claim." <u>Id.</u> at 18 *citing* <u>SRC</u>, supra, at 801.  The Court barred the claim under the Economic Loss Doctrine.  The exact same reasoning is applicable here.

*Application To the Claims Against Geopier*

Plaintiff's Complaint against Geopier is certainly under-pled. However, the logical conclusion that the cause of action properly sounds in tort and thus would be subject to the Economic Loss Doctrine.  It is expected that in response to this Motion, Plaintiffs may try to minimize their 14(a)(3) Complaint as simply entitling them to recover if and only if the Third-Party Plaintiff proves its Third-Party claim.  Such an argument would make no sense. Geopier was joined to this action as a Third-Party Defendant.  Thus, the only way to ever recover from Geopier would be for Plaintiffs to prove their case against Defendant/Third-Party Plaintiff who in turn would have to prove a case against Geopier.  *If* that happened, Plaintiffs would recover from Defendant/Third-Party Plaintiff. Defendant Third-Party Plaintiff would be able to recover from Geopier.  Plaintiff's 14(a)(3) Complaint is something different.  That Complaint brings a direct cause of action against Geopier.  Although they may try to couch it as derivative, it is, in fact, a direct action.  The Economic Loss Doctrine bars such a direct action and Plaintiffs should have no cognizable direct claim against Geopier.  Plaintiffs sole right to recover would be against Defendant/Third-Party Plaintiff.

## **CONCLUSION**

Based on the foregoing, it is respectfully submitted that the Plaintiff's 14(a)(3) Complaint

be DISMISSED with prejudice.

Respectfully submitted,

HOAGLAND, LONGO, MORAN,
 DUNST & DOUKAS, LLP
Attorneys for Third Party Defendant,
Geopier Foundation Company, Inc.

*Joseph A. Petrillo*

By: _____
JOSEPH A. PETRILLO

Dated: February 16, 2023

15