# Exhibit 1



**User Name:** Joseph Petrillo
**Date and Time:** Tuesday, February 7, 2023 7:13:00PM EST
**Job Number:** 189780287

## Document (1)

1. *Horizon Group of New Eng., Inc. v. New Jersey Sch. Constr. Corp., 2011 N.J. Super. Unpub. LEXIS 2271*
   **Client/Matter:** PSA
   **Search Terms:** Horizon Group of New Eng., Inc. v. New Jersey Sch. Constr. Corp., 2011 N.J. Super. Unpub. LEXIS 2271
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Cases | -None- |

⚠ Caution
As of: February 8, 2023 12:13 AM Z

# *Horizon Group of New Eng., Inc. v. New Jersey Sch. Constr. Corp.*

Superior Court of New Jersey, Appellate Division

March 9, 2011, Argued; August 24, 2011, Decided

DOCKET NO. A-5934-09T1

**Reporter**
2011 N.J. Super. Unpub. LEXIS 2271 *; 2011 WL 3687451

HORIZON GROUP OF NEW ENGLAND, INC., Plaintiff-Appellant, vs. NEW JERSEY SCHOOLS CONSTRUCTION CORPORATION n/k/a NEW JERSEY SCHOOLS DEVELOPMENT AUTHORITY, IMPERIAL CONSTRUCTION GROUP, INC., BOVIS LEND LEASE, INC., IMPERIAL CONSTRUCTION GROUP, INC./BOVIS LEND LEASE, INC., Defendants, and EI ASSOCIATES and GZA GEOENVIRONMENTAL, INC., Defendants-Respondents.NEW JERSEY SCHOOLS DEVELOPMENT AUTHORITY, Third-Party Plaintiff, vs. ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Third-Party Defendant.ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Third-Party Defendant/Fourth-Party Plaintiff, vs. MICHAEL DAWSON, GAIL DAWSON, DEAN V. ROBBINS, III, and CAMILLE ROBBINS, Fourth-Party Defendants.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY *RULE 1:36-3* FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4537-07.

## Core Terms

contractual, indemnity claim, contractual relationship, grant summary judgment, design professional, indemnification, third-party, contractor, settlement, Documents, assigned, cause of action, crossclaims, remedies, orders, joint tort feasor, negligence claim, imposed by law, tort claim, specifications, damages, parties

**Counsel:** Robert J. MacPherson argued the cause for appellant (Gibbons P.C., attorneys; Mr. MacPherson, Elyssa Kay and Damian V. Santomauro, on the brief).

Michael F. O'Neill argued the cause for respondent EI Associates (Purcell, Mulcahy, O'Neill & Hawkins, LLC, attorneys; Mr. O'Neill, of counsel and on the brief).

Eric S. Cohen argued the cause for respondent GZA GeoEnvironmental, Inc. (Donovan Hatem LLP, attorneys; Mr. Cohen, on the brief).

**Judges:** Before Judges Cuff, Sapp-Peterson and Simonelli.

## Opinion

PER CURIAM

This appeal arises from a school construction project in Harrison, Hudson County, funded by defendant New Jersey Schools Construction Corporation, n/k/a New Jersey Schools Development Authority (NJSDA). We review an order granting summary judgment to defendants EI Associates (EIA) and GZA GeoEnvironmental, Inc. (GZA) dismissing the negligence claim filed by plaintiff Horizon Group of New England, Inc. (Horizon), and an order granting summary judgment to defendant EIA dismissing the indemnification claim filed by NJSDA and assigned by settlement to Horizon. We affirm the order granting summary judgment [*2] and dismissing the negligence claim but reverse the order granting summary judgment and dismissing the indemnification claim assigned to Horizon.

On March 4, 2003, EIA entered a contract with NJSDA for design and construction administrative services for the new Harrison High School (the project). The contract states that EIA is to "provide complete design and construction administrator services" for the project. The contract defines "Design Consultant" as "the Architect or Engineer or other Professional Services Consultant selected by [NJSDA] to provide design services and Construction Administration Services in connection with

Case 3:22-cv-04905-MAS-LHG   Document 63-1   Filed 02/16/23   Page 4 of 9 PageID: 918

Page 2 of 7

2011 N.J. Super. Unpub. LEXIS 2271, *2

the [project]." Construction Administration Services is defined as "the services required to be performed by [EIA] pursuant to the Contractual Documents necessary for the administration and oversight of the construction of [the project] so as to ensure that the construction is being conducted as is required by the Construction Contract Documents."

As the Design Consultant, EIA was required to prepare detailed plans and specifications, initial and final cost estimates, schematic design documents, and construction documents; to redesign or offer alternative designs [*3] if the bids received exceed the final cost estimate; and to oversee the work "to determine in general if the Construction Work is proceeding in accordance with the Construction Contract Documents." During the schematic design phase, EIA was required to "review site boundary and topographic surveys, subsurface data, and foundation engineering recommendations, and any other [NJSDA]-furnished data or information related to each . . . site. [EIA] shall advise the [overall construction management firm] in writing whether such data and information is adequate for its intended use or whether additional data is necessary" to allow it to perform its design services.

EIA could suspend work if previously undetected hazardous materials were detected during the work. If the suspension or any other development would cause a delay in the work, EIA was required to promptly notify NJSDA in writing.

EIA was authorized to retain subcontractors, but the contract expressly provided that the subcontractor had no contractual relationship with the NJSDA. The EIA contract also contains a third-party beneficiary clause, which provides:

> Nothing contained in this Agreement or the Contractual Documents shall create [*4] a contractual relationship with a third party or create a cause of action in favor of a third party against [EIA] or [NJSDA].

The contract also addresses indemnification as follows:
> To the fullest extent permitted by law, [EIA] shall indemnify, protect, defend and save harmless . . . [NJSDA] . . . from and against any loss, damage, injury, cost or expense; and from and against any Claim, demand, liability, lawsuit, judgment, action or other proceeding arising, to arise from, in connection with, or as a result of any of the following:
> . . . .
> [T]he negligent acts or omissions of [EIA], its agents, servants, officers, employees, Subconsultants or any other person acting at [EIA's] request, subject to its direction, or on its behalf . . . .

The NJSDA-EIA contract requires that any dispute regarding any provision of the contract will be submitted to a Claims Adjustment Committee. Upon submission of a claim to the committee, EIA had two options: act in accordance with the committee's determination or reserve the right to assert a claim pursuant to the New Jersey Contractual Liability Act, N.J.S.A. 59:13-1 to -10.

On April 2, 2003, EIA entered a subcontract with GZA to perform environmental and [*5] engineering services for the project. The GZA contract expressly incorporated EIA's contract with NJSDA by reference. Thus, the third-party beneficiary clause in the EIA-NJSDA contract was incorporated by reference into GZA's contract with EIA. Moreover, GZA expressly limited the use of the reports prepared by it to EIA only.

On November 15, 2004, Horizon entered a contract with NJSDA to construct an athletic field with bleachers, lighting, and paving for the project. St. Paul Fire and Marine Insurance Company (St. Paul) supplied a surety bond for the work on October 7, 2004. The Horizon-NJSDA contract provided:
> The [NJSDA] is responsible for the administration of the Contract. The [NJSDA] will decide all questions regarding the quality, acceptability and the rate of progress of the Work; all questions regarding interpretation of the Contract Documents; all questions regarding the acceptable fulfillment of the Contract on the part of the Contractor; and all questions as to compensation.

Article 7 of the Horizon-NJSDA contract addressed changes in the work. A change order would issue "(a) to modify the scope of the Work; (b) to revise the Contract Time; (c) to modify the sequence, method [*6] or manner of performance of the Work; (d) to adjust the Contract Price; or (e) to revise other terms and conditions of the Contract Documents." If Horizon encountered subsurface or other latent conditions materially different from what was indicated in the plans before the commencement of the work, Horizon was allowed to apply for an adjustment under Article 7. The Horizon-NJSDA contract, Article 17, also provides an administrative process for disputes that arose in the course of the work.

The Horizon-NJSDA contract contained a provision analogous to the EIA-NJSDA contract regarding third-

Case 3:22-cv-04905-MAS-LHG   Document 63-1   Filed 02/16/23   Page 5 of 9 PageID: 919

Page 3 of 7

2011 N.J. Super. Unpub. LEXIS 2271, *6

party beneficiaries. Specifically, the contract provided that "no provision of the Contract is intended to make the public or any member thereof a third party beneficiary hereunder, or to authorize anyone not a party to the contract to maintain a suit for personal injuries or property damage pursuant to the terms or provisions of the Contract." In addition, the contract provided that "no individual, firm, corporation, or any combination thereof, that supplies, materials, labor, services, or equipment to the Contractor for the performance of the Work becomes thereby a third party beneficiary of the [*7] Contract."

The underlying dispute in this matter arose from a series of alleged delays in the construction of the project including the refusal of NJSDA to issue change orders, discovery of "white stuff" and other contaminants that required removal from the premises, and failure of the NJSDA to properly manage the project. Horizon alleged that it incurred damages in excess of $7,775,000. It filed a nine count complaint on September 11, 2007, against NJSDA, EIA, GZA, Bovis Lend Lease, Inc. (Bovis), Imperial Construction Group (Imperial), and a joint venture of Imperial and Bovis. GZA filed an answer in which it asserted crossclaims for contractual and common-law indemnification. In its answer, NJSDA asserted two counterclaims against Horizon and crossclaims for contribution and contractual and common law indemnification. It also asserted a third-party claim against St. Paul as surety for Horizon.

Counts One through Five alleged causes of action for breach of contract, quantum meruit, fraud, and negligent misrepresentation against NJSDA. Count Six alleged negligence against NJSDA, Imperial, Bovis, the Imperial Bovis joint venture, EIA, and GZA. Horizon alleged that the bid and contract [*8] documents were negligently prepared and the work was negligently managed and administered. Count Seven alleged that Imperial, Bovis, and the Imperial Bovis joint venture breached the contract. In Counts Eight and Nine, Horizon alleged it was a third-party beneficiary of the EIA-NJSDA contract and alleged breach of that contract against EIA and GZA.

Counts Two through Six against NJSDA were dismissed by Horizon by order dated March 28, 2008. The court granted summary judgment in favor of Imperial and Bovis on June 12, 2009. This order was accompanied by findings of fact and conclusions of law. The judge found that the contract between NJSDA and Bovis contained a third-party beneficiary clause that contained the same language as the EIA-NJSDA contract. In addition, the Imperial Bovis joint venture contract incorporated by reference the third-party beneficiary clause of the NJSDA-Bovis contract. Therefore, he held that Horizon did not have a viable third-party beneficiary claim against Bovis. For the same reasons, Horizon's claim against Imperial also failed. As to the Horizon negligence claim asserted in Count Six, the judge relied on *Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 788 A.2d 268 (2002)*, [*9] and held that a tort remedy was not available for a breach of contract unless the breaching party owes an independent duty imposed by law. Finding no independent duty, the judge granted summary judgment in favor of Bovis and Imperial.

Soon thereafter, on August 31, 2009, Horizon, NJSDA, St. Paul, Imperial, and Bovis entered a "Stipulation of Settlement, and Consent Order, Release and Stipulation of Dismissal." (Stipulation). Horizon had filed a voluntary petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code, *11 U.S.C.A. §§ 1101 to 1174*; therefore, the settlement was subject to approval of the bankruptcy court, which was obtained on October 28, 2009.

The Stipulation provided that NJSDA would pay $2,500,000 and Imperial and Bovis would jointly pay $137,000 to settle Horizon's claims. Upon receipt of the money, Horizon would dismiss all of its claims against these defendants who would also dismiss their respective third-party complaint, counterclaims, and crossclaims. In addition, NJSDA agreed to "assign[] to [Horizon] and St. Paul any and all claims, rights and causes of action the [NJSDA] has or may have against the Co-Defendants." NJSDA also agreed to [*10] "cooperate with [Horizon] and St. Paul in the prosecution of any such claim, right or cause of action . . . . ."

EIA and GZA filed summary judgment motions. The judge held that the same legal principles that governed Horizon's claims against Bovis and Imperial applied to the claims asserted by Horizon against EIA and GZA. The judge stated that neither the EIA nor the GZA contracts permit "a reading where Horizon would be a third party beneficiary, that neither of those contracts indicates any intention [Horizon] would be a third party beneficiary or have the right to performance under those contracts." He also held that a "tort duty" was not appropriate. On November 5, 2009, the judge entered two orders granting summary judgment in favor of EIA and GZA dismissing the complaint in its entirety as to them.

Case 3:22-cv-04905-MAS-LHG   Document 63-1   Filed 02/16/23   Page 6 of 9 PageID: 920

Page 4 of 7

2011 N.J. Super. Unpub. LEXIS 2271, *10

These orders were amended on January 28, 2010. The orders clarified that the November 5, 2009 orders were not intended to dismiss NJSDA's crossclaims against EIA and GZA. The January 28, 2010 GZA summary judgment order provided:

> The 11/5/2009 order was not intended to dismiss affirmative crossclaims against GZA (whether asserted by [NJSDA], or by [Horizon] as assignee of [NJSDA] and to [*11] that extent the dismissal language contained in paragraphs 2 and 3 of that order should not have been included in that order. The case management conference held immediately after the motions were heard, in fact, recognized that [NJSDA's] claim against GZA survived and established the discovery schedule relating to that claim.

The January 28, 2010 order granting summary judgment to EIA stated:

> As is the case with respect to GZA, the prior order granting summary judgment does not include dismissal of the affirmative crossclaims of [NJSDA] (regardless of whether the assignment of that claim is void) and did not address the enforceability of the assignment or the effect of the Bankruptcy Court's approval of the settlement.

NJSDA's crossclaims against EIA and GZA were dismissed by orders dated April 1, 2010 and April 16, 2010, respectively. The EIA order contains no explanation for the dismissal. The GZA April 16 order provides: "Because of its settlement with Horizon, [NJSDA]'s claims for indemnification and contribution were extinguished as a matter of law. The settlement agreement/consent order is not a judgment which would preserve those claims."

I

This appeal presents two issues. First, [*12] whether Horizon can maintain an action in negligence against EIA and GZA. Second, whether Horizon can seek contractual indemnification from EIA as NJSDA's assignee.

Horizon argues that the motion judge erred as a matter of law in dismissing the negligence claims against EIA and GZA because a contractor may recover pure economic damages as a result of negligence by a design professional. Horizon also argues that the motion judge erred as a matter of law in dismissing the contractual indemnification claims against EIA because the judge erroneously concluded that the effect of a settlement agreement on contribution and indemnification claims is identical. We address dismissal of the negligence claims first.

The motion judge invoked the economic loss rule or doctrine to dismiss the negligence claim asserted by Horizon against EIA and GZA in Count Six of its complaint. The doctrine bars resort to tort theories of liability when the relationship between the parties is based on a contractual relationship. *Dean v. Barrett Homes, Inc.*, 204 N.J. 286, 295, 8 A.3d 766 (2010). The doctrine seeks to establish a boundary line between contract and tort remedies even though that boundary line is not always readily [*13] discernible. *Saltiel, supra*, 170 N.J. at 309-10; *New Mea Constr. Corp. v. Harper*, 203 N.J. Super. 486, 493, 497 A.2d 534 (App. Div. 1985). Application of the rule requires a determination whether the relationship formed by contract gives rise to affirmative duties imposed by law. *Saltiel, supra*, 170 N.J. at 311.

In *Saltiel*, the plaintiff had been retained to provide landscape architectural services for the reconstruction of the soccer and softball fields at a state college. *Id. at 300*. Plaintiff engaged the defendant corporation to prepare specifications for the drainage system and a turf rootzone system, select new sod, and monitor the actual reconstruction. *Ibid*. No problems were encountered in the softball fields, but the soccer field developed problems with standing water and inadequate drainage. *Id. at 301*. Another consultant informed the plaintiff that the specifications for the soccer field had been negligently prepared; the plaintiff was required by its contract with the college to reconstruct the soccer field. *Ibid*. In its complaint against the corporate defendant and the individual officers of the corporate defendant, the plaintiff asserted claims for negligent design, negligent misrepresentation, [*14] breach of contract, breach of warranty, promissory estoppel, and agency liability. *Ibid*.

Although the Court was primarily concerned with whether the corporate officers could be personally liable for tortious conduct under the participation theory of liability, the Court reviewed the economic loss rule and emphasized that when a complaint sounds in tort, but the relationship between the parties is defined by the contract between them, contract principles will generally apply. *Id. at 309*. The Court, however, offered several principles that "reliably serve to distinguish contract and tort claims." *Ibid*.

Referring to *Prosser & Keeton on the Law of Torts*, § 92 (5th Ed. 1984), the Court identified seven guidelines to

Case 3:22-cv-04905-MAS-LHG   Document 63-1   Filed 02/16/23   Page 7 of 9 PageID: 921

Page 5 of 7

2011 N.J. Super. Unpub. LEXIS 2271, *14

distinguish between tort and contract claims. Id. at 310. Claims that are founded on an obligation imposed by law are tort obligations. Ibid. A tort obligation cannot be the subject of a disclaimer. Ibid. Misfeasance or affirmative negligent conduct in the performance of a promise generally gives rise to liability in tort and contract. Ibid. On the other hand, "'[r]ecovery of intangible economic loss is generally determined by contract . . . .'" Ibid. (quoting Prosser & Keeton, supra). [*15] Tort liability does not arise for claims based on failing to do what a person has agreed to do. Ibid. A duty to take affirmative action imposed by law gives rise to liability in tort, as does damages for a loss based on reliance on a promise to discharge undertakings. Ibid.

Applying these guidelines, the Court in Saltiel held that the dispute between the plaintiff landscape architect and the turf expert retained did not support a cause of action sounding in tort. Id. at 315. The Court observed that the complaint was founded on allegations of negligent design and negligent misrepresentation but the case was "a basic breach of contract case . . . ." Ibid. Moreover, unless the plaintiff can demonstrate an independent duty imposed by law, a tort remedy is not available from a contractual relationship. Id. at 316. The Court explained its decision as follows:

> In this case the scope of the parties' obligations was defined by the contract, and the contract imposed responsibilities on defendant GSI . . . . The expectation was that the defendant corporation would design and prepare the requisite specifications for the athletic fields and that plaintiff would compensate the corporation for the [*16] work . . . .
>
> . . . .
>
> . . . . Defendant GSI possessed specific technical skills that it was obligated to apply under the contract. Its failure to do so was not a violation of an obligation imposed by law, but rather a breach of its contractual duties.
>
> [Id. at 316-17.]

See also New Mea, supra, 203 N.J. Super. at 494 (obligation to use a specific grade material imposed by contract not law).

Here, Horizon argues that Conforti & Eisele, Inc. v. John C. Morris Associates, 175 N.J. Super. 341, 418 A.2d 1290 (Law Div. 1980), aff'd, 199 N.J. Super. 498, 500, 489 A.2d 1233 (App. Div. 1985), supports the conclusion that a contractor who suffers economic damages as a result of a design professional's negligence can recover these economic damages. It also relies on Totten v. Gruzen, 52 N.J. 202, 245 A.2d 1 (1968) and Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 207 A.2d 314 (1965) to support its position. Although Conforti involved a claim against a design professional who prepared plans and specifications designed to be relied on by contractors who bid on a project, and the court allowed a cause of action in tort, it did so in the context of a contract scheme in which the contractor that relied on the plans and specifications had no contractual relationship [*17] with the design professional. Conforti, supra, 175 N.J. Super. at 342-43. Conforti is distinguishable due to the comprehensive contract scheme in place in this case. Unlike Conforti, the EIA-NJSDA and Horizon-NJSDA contracts had a sophisticated contractual method to address delays, unanticipated setbacks, and scope of work and price adjustments. In Conforti, dismissal of the tort claim against the design professional would have left the contractor without a remedy. Id. at 344. Here, Horizon could invoke contractual remedies to request change orders and obtain other accommodations and, if necessary, could sue NJSDA directly for breach of contract, which it did.

Totten and Schipper present analogous situations to Conforti. Schipper sought relief against the manufacturer of a product used in a new home. The Court allowed a claim of strict liability in tort against the builder because the homeowner plaintiff had no contractual relationship with the manufacturer of the faulty water heater. Schipper, supra, 44 N.J. at 95-96. In Totten, the Court discussed whether the architects and contractors, who constructed an apartment house, could be liable for the injuries that resulted when an exposed [*18] radiator pipe burned the plaintiff, although "their work had been completed and accepted by the owner" several years earlier. Totten, supra, 52 N.J. at 204-05. Relying on Schipper, the Court held the defendants could be liable "on the basis of improper design as well as . . . for defective materials, equipment and workmanship." Id. at 210.

Horizon's argument that design professionals, such as EIA and GZA, are held to a higher standard of care, which translates into a duty of care, ignores the holding in Saltiel. In the context of a remarkably similar fact situation with similar undertakings by design professionals, the Court in Saltiel found no more than "a basic breach of contract case" in a dispute between design professionals. 170 N.J. at 315.

Case 3:22-cv-04905-MAS-LHG   Document 63-1   Filed 02/16/23   Page 8 of 9 PageID: 922

Page 6 of 7

2011 N.J. Super. Unpub. LEXIS 2271, *18

Horizon's reliance on People Express Airlines, Inc. v. Consolidated Rail Corp., 100 N.J. 246, 495 A.2d 107 (1985), is also misplaced. In People Express, the Court permitted the plaintiff to pursue claims sounding in tort to recover economic damages caused by a leaking rail tank car, which, in turn, required evacuation of the plaintiff's business premises. Id. at 248-49. The Court held that there are various exceptions to the economic loss rule, and recognized [*19] an exception when there is a special relationship between the tortfeasor and the plaintiff. Id. at 256. According to the Court, this exception does not involve a breach of contract claim, but rather "involve[s] tort claims by innocent third parties who suffered purely economic losses at the hands of negligent defendants with whom no direct relationship existed." Ibid. Thus, liability is premised on "a special relationship between the negligent tortfeasors and the foreseeable plaintiffs who relied on the quality of defendants' work or services, to their detriment." Id. at 256-57.

People Express does not, however, impose a higher standard of care on design professionals simply because they are design professionals. Having specialized skills can assist in a determination whether a particular plaintiff is foreseeable and would be harmed economically by negligent conduct. Id. at 258. The case does not, however, allow a plaintiff with a direct contractual relationship with contractual remedies to address changes in the scope of work or unexpected conditions to jettison these remedies and procedures and proceed on a tort theory of recovery. Finally, as in Conforti and Schipper, the plaintiff [*20] in People Express would have been left without any remedy if it was not allowed to proceed in tort because it had no contractual relationship with the defendant owner of the faulty rail car.

Finally, we recognize that Horizon did not have a contractual relationship with either EIA or GZA. Unlike Conforti and People Express, however, Horizon did have a direct contractual relationship with NJSDA and possessed contractual remedies to address the situation it encountered in the performance of its work. Furthermore, Horizon entered a contract in which it was clearly informed of the nature of the relationship, or lack thereof, among the various contractors and professionals. The contractual scheme was specifically designed with NJSDA functioning as the hub and requiring all contracting parties to deal with it, not each other. Finally, Horizon stood in the place of NJSDA following the assignment of NJSDA's claims for indemnification against EIA. Therefore, Horizon had clear remedies based on the contract between it and NJSDA as well as NJSDA and EIA. Under these circumstances, the contractual remedies are sufficient to address its claims.

II

NJSDA assigned to Horizon its contractual indemnification [*21] claim against EIA as part of the settlement among NJSDA, Horizon and St. Paul. The motion judge held that the settlement agreement extinguished the indemnification and contribution claims. Although we are without benefit of the reasons for the dismissal of the indemnification claim, we decline to remand the issue because it is purely an issue of law and we can discern the reason for the dismissal from the order dismissing the indemnification and contribution claims asserted against GZA.[1]

The New Jersey Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5, provides:

> Where injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors, and the person so suffering injury or damage recovers a money judgment or judgments for such injury or damage against one or more of the joint tortfeasors, either in one action or in separate actions, and any one of the joint tortfeasors pays such judgment in whole or in part, he shall be entitled to recover contribution from the other joint tortfeasor or joint tortfeasors for the excess so paid over his pro rata share; but no person shall be entitled [*22] to recover contribution under this act from any person entitled to be indemnified by him in respect to the liability for which the contribution is sought.
>
> [N.J.S.A. 2A:53A-3.]

Thus, "[b]y the terms of this statute, a 'judgment' is required in order to trigger the right to contribution." Polidori v. Kordys, Puzio & Di Tomasso, 217 N.J. Super. 424, 432, 526 A.2d 230 (App. Div. 1987). This is because "[t]he allowance of contribution is founded upon principles of equity to insure a fair and just division of losses between responsible tortfeasors." Id. at 429.

On the other hand, "[i]ndemnity arises from contract, express or implied." George M. Brewster & Son, Inc. v. Catalytic Constr. Co., 17 N.J. 20, 28, 109 A.2d 805

---

[1] This GZA order is not subject to the appeal.

Case 3:22-cv-04905-MAS-LHG   Document 63-1   Filed 02/16/23   Page 9 of 9 PageID: 923

Page 7 of 7

2011 N.J. Super. Unpub. LEXIS 2271, *22

(1954). Moreover, "[i]n the absence of an express agreement between them, allocation of the risk of loss between the parties in the chain of distribution is achieved through common-law indemnity, an equitable doctrine that allows a court to shift the cost from one tortfeasor to another." Promaulayko v. Johns Manville Sales Corp., 116 N.J. 505, 511, 562 A.2d 202 (1989).

In addition, an indemnification claim founded on a contract is assignable. Kimball Int'l, Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 615, 760 A.2d 794 (App. Div. 2000), [*23] certif. denied, 167 N.J. 88, 769 A.2d 1051 (2001). In Kimball, the plaintiff was a manufacturer of office chairs who was sued by a person who was injured after one of the plaintiff's chairs collapsed. Id. at 601-02. The injured party's engineer determined that the collapse was due in part to a defective part manufactured by the defendant. Id. at 602. The plaintiff settled with the injured party, and then assigned to him "the first $15,000 of any recovery against [the defendant] plus 50% of the balance." Ibid. The injured party was also given "the right to control the prosecution of the action." Ibid. The defendant argued that the assignment was not valid because it is impermissible to assign a tort claim, and the assignment was against public policy. Id. at 611.

The court noted: "Except for this prohibition against the assignment of tort claims, a party is generally allowed to assign a claim for money damages." Id. at 612. In so ruling, the court cited N.J.S.A. 2A:25-1, which provides:

> All contracts for the sale and conveyance of real estate, all judgments and decrees recovered in any of the courts of this State or of the United States or in any of the courts of any other state of the United States [*24] and all choses in action arising on contract shall be assignable, and the assignee may sue thereon in his own name.

We concluded: "[H]owever the right to indemnity may be characterized, the foundation of [the plaintiff's] indemnification claim in this case is the contract under which it purchased [the defendant's] component part for its office chair." Kimball, supra, 334 N.J. Super. at 613. Thus, this court concluded that the plaintiff's indemnification claim against the defendant "should be viewed as a 'chose[] in action arising on contract' within the intent of N.J.S.A. 2A:25-1." Ibid. Thus, we held that the assignment was valid. Id. at 615.

NJSDA properly assigned plaintiff its claim for indemnification. The indemnification claim arose out of a contract between EIA and NJSDA, and these types of claims are assignable.

In sum, we affirm the dismissal of Count Six of the Horizon complaint which asserted a cause of action sounding in tort, specifically negligence, because tort claims are barred by the economic loss rule in this case. We reverse, however, the dismissal of the indemnification claim against EIA assigned to Horizon by NJSDA. The indemnification claim is found in the contract [*25] between NJSDA and EIA and is assignable as a matter of law.

Affirmed in part; reversed in part.

---

End of Document