# Exhibit 2



**User Name:** Joseph Petrillo
**Date and Time:** Tuesday, February 7, 2023 7:17:00PM EST
**Job Number:** 189780499

## Document (1)

1. *Spectraserv, Inc. v. Middlesex County Utils. Auth., 2013 N.J. Super. Unpub. LEXIS 2173*
   **Client/Matter:** PSA
   **Search Terms:** spectraserv
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Cases | -None- |

LexisNexis | About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2023 LexisNexis

Joseph Petrillo

 Positive

As of: February 8, 2023 12:17 AM Z

# *Spectraserv, Inc. v. Middlesex County Utils. Auth.*

Superior Court of New Jersey, Law Division, Civil, Middlesex County

November 15, 2012, Argued; February 11, 2013, Decided; July 25, 2013, Filed

DOCKET NO.: L-2577-07

**Reporter**
2013 N.J. Super. Unpub. LEXIS 2173 *

**SPECTRASERV**, INC., Plaintiff, v. THE MIDDLESEX COUNTY UTILITIES AUTHORITY; R3M ENGINEERING, INC.; MICHAEL SAMUEL, P.E.; FREDERICK H. KURTZ; PARCOR, INC.; HOLLY ANTISELL, P.E.; RICHARD MOLKE; ROBIN MILLARD; R3 MANAGEMENT, LTD.; BIOPHAST TECHNOLOGIES, LTD., an Assignee of R3 MANAGEMENT, LTD.; and MOREHOUSE ENGINEERING, INC., Defendants,THE MIDDLESEX COUNTY UTILITIES AUTHORITY, Third-Party Plaintiff, v. LIBERTY MUTUAL INSURANCE COMPANY, Third-Party Defendant,**SPECTRASERV**, INC., Fourth-Party Plaintiff, v. ROBIN MILLARD; R3 MANAGEMENT, LTD.; BIOPHAST TECHNOLOGIES, LTD., an Assignee of R3 MANAGEMENT, LTD.; MOREHOUSE ENGINEERING, INC.; CUSTOM CONVEYOR CORP.; WOLF MATERIAL HANDLING SYSTEMS; LODIGE PROCESS TECHNOLOGY, INC.; PORTASILO, LTD.; SAXLUND INTERNATIONAL, CORP.; GTS ENERGY, INC.; FM SYLVAN, INC.; and BUSS-SMS-GmbH, Fourth-Party Defendants.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE COMMITTEE ON OPINIONS.

PLEASE CONSULT NEW JERSEY RULE 1:36-3 FOR CITATION OF UNPUBLISHED OPINIONS.

**Subsequent History:** [*1] Corrected July 25, 2013

## Core Terms

economic loss doctrine, contractor, economic loss, parties, contracts, negligence claim, design professional, contractual, damages, imposed by law, independent duty, cause of action, duty of care, contractual relationship, interrelated, remedies, redress, absence of privity, contract law, tort law, construction project, tort claim, defendants', allocate, contends, alleges, courts, plans and specifications, privity of contract, motion to dismiss

**Counsel:** Marc D'Angiolillo argued the cause for *Spectraserv*, Inc. (Riker, Danzig, Scherer, Hyland & Perretti LLP, attorneys; Mr. D'Angiolillo, Ronald Z. Ahrens, and Stephanie D. Edelson, on the brief).

Thaddeus J. Hubert argued the cause for R3M Engineering, Inc., Michael Samuel, and Richard Molke (Hoagland, Longo, Moran, Dunst & Doukas LLP, attorneys; Mr. Hubert, on the brief).

Kathleen M. DalCortivo appeared for Holly Antisell, P.E. (DalCortivo Law Offices, LLC, attorneys; Ms. DalCortivo, on the brief).

Michael N. Pedicini appeared for Frederick H. Kurtz and Parcor, Inc. (Mr. Pedicini, on the brief).

Joseph M. Suarez appeared for Robin Millard (Suarez and Suarez, attorneys; Mr. Suarez and David C. Rosciszewski, on the brief).

Robert C. Neff appeared for Morehouse Engineering, Inc. (Wilson, Elser, Moskowitz, Edelman & Dicker LLP, attorneys; Mr. Neff, on the brief).

**Judges:** HONORABLE TRAVIS L. FRANCIS, A.J.S.C.

**Opinion by:** TRAVIS L. FRANCIS

## Opinion

MOTION TO DISMISS COUNTS SIX, SEVEN, AND EIGHT OF THE SECOND AMENDED COMPLAINT PURSUANT TO THE ECONOMIC LOSS DOCTRINE

OPINION

*I. Syllabus*

This motion to dismiss presents a question of first impression, wherein the Court must decide whether the

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 4 of 15 PageID: 927

Page 2 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *1

economic loss doctrine [*2] bars a plaintiff's claim for purely economic losses resulting from negligence, against a defendant with whom the plaintiff has no contractual privity and where the plaintiff's contract with a mutual contracting party includes a remedy for economic losses.

## II. Introduction

This complex construction litigation arises from a contract between *Spectraserv*, Inc. ("*Spectraserv*" or "plaintiff") and the Middlesex County Utilities Authority ("MCUA") involving the construction of improvements or modifications ("Modifications") to a sludge pasteurization process at a sewage sludge processing facility in Sayreville, New Jersey ("Facility"). The construction project ("Project") experienced numerous delays and setbacks and was ultimately terminated. As a result, this action was commenced on March 2, 2007 and *Spectraserv*'s Second Amended Complaint, which was filed on November 30, 2007, alleges, among other things, negligence against the Project's engineering and design professionals: R3M Engineering, Inc. ("R3M"); Michael Samuel, P.E. ("Samuel"); Richard Molke ("Molke"); Fredrick Kurtz ("Kurtz"), Parcor, Inc. ("Parcor"); Robin Millard ("Millard"); Holly Antisell, P.E. ("Antisell"); and Morehouse Engineering, [*3] Inc. ("Morehouse") (collectively "defendants").[1] In Counts Six, Seven, and Eight of the Second Amended Complaint ("Counts"), *Spectraserv* alleges that it suffered economic losses as a result of defendants' negligence. Defendants assert that these Counts must be dismissed pursuant to the economic loss doctrine.

## III. Statement of Facts

### A. The Primary Contract

On or about May 16, 2003, as the successful bidder, *Spectraserv*, a general contractor with twenty years of experience in construction and rehabilitation of sewage treatment facilities, entered into a $34,441,200.00 contract with the MCUA for the construction of Modifications at the Facility ("Contract").

### B. The Engineering and Design Professionals' Contracts

The MCUA had two pre-existing contracts with R3M. The first governing design and construction engineering services ("Design Contract") and the second requiring R3M, among other things, to provide construction management services ("Construction Management Contract") for the Project were entered in 1999 and 2002, respectively. Samuel, the President and a principal of R3M, was the engineer of record on the project. [*4] Molke, a principal of R3M, was a member of the firm's design team. Antisell was a principal and former President of R3M.[2] Kurtz, who is related to Antisell, was a principal of Parcor.[3] He has served as a consultant to R3M and the MCUA since 2004, and he introduced the MCUA to Millard.

Millard is a licensed engineer from the United Kingdom, President of BiopHast Technologies, Ltd. ("BiopHast") and a former principal of R3 Management, Ltd ("R3 Management").[4] Millard holds the patent and license for the Meadowlife® process technology and served as a consultant to R3M. The MCUA retained Millard to evaluate the feasibility of incorporating his patented process improvements into their sludge treatment Facility. The MCUA did not have a written contract with Millard or R3 Management with respect to the design of the Modifications.

The MCUA also entered into a contract with Morehouse for the installation and programming of the computerized SCADA control system ("SCADA Engineering Contract").

### C. Problems with the Modifications

Following installation of the Meadowlife® System, problems arose with several components. The SCADA system also did not function properly after being installed and programmed by Morehouse.

Delays in the Project's scheduled completion resulted in the MCUA claiming default and terminating the Contract

---

[1] The MCUA is also a defendant in this matter but not a party to this motion.

[2] Antisell contends that she never participated in the design or preparation of the Project's plans and specifications; thus, individually, she never owed *Spectraserv* a duty.

[3] Kurtz and Parcor, Inc. contend that they never reviewed, signed or sealed the Project's plans and specifications and did not design anything. Hence, they did not owe *Spectraserv* a duty.

[4] BiopHast [*5] and R3 Management are corporations based in the United Kingdom.

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 5 of 15 PageID: 928

Page 3 of 13
2013 N.J. Super. Unpub. LEXIS 2173, *5

with *Spectraserv*, citing a failure to meet contract specifications. Plaintiff seeks economic damages resulting from the aforementioned problems, and contract termination.

IV. The Parties' Arguments

A. Defendants' Argument

In support of their motion to dismiss the negligence Counts of the Second Amended Complaint, defendants assert that economic loss may not be recovered in tort because no duty exists to prevent economic harm. See Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 310, 788 A.2d 268 (2002). Defendants aver that this general rule applies because, as the *Saltiel* Court explained, design professionals, unlike other professionals, do not owe an [*6] independent duty of care. In short, defendants contend that *Spectraserv* can recover any economic loss by way of its breach of contract and breach of implied warranty claims against the MCUA. Regarding the warranty claims, defendants posit that the MCUA impliedly warranted to *Spectraserv* that the plans would be sufficient to complete the Project, and therefore *Spectraserv* may argue that it cannot be held responsible for defects in those plans. See U.S. v. Spearin, 248 U.S. 132, 136, 39 S. Ct. 59, 63 L. Ed. 166, 54 Ct. Cl. 187 (1918).

Defendants distinguish the case at bar from *Conforti & Eisele, Inc. v. John C. Morris Assocs.* asserting that the *Conforti* court permitted negligence claims by the contractor against the design professionals, notwithstanding the absence of privity of contract, because the plaintiff would otherwise have been left without a remedy. 175 N.J. Super. 341, 344, 418 A.2d 1290 (Law Div. 1980), aff'd, 199 N.J. Super. 498, 489 A.2d 1233 (App. Div. 1985); see also Dynalectric Co. v. Westinghouse Elec. Corp., 803 F. Supp. 985, 991 (D.N.J. 1992) ("[A] party [that] has another means of redress against the alleged tortfeasor . . . may not assert the identical claims for identical damages under tort theories.").

In light of defendants' contention [*7] that the *Conforti* court assumed that the design professionals owed a duty to the plaintiff and never addressed the economic loss doctrine squarely, see Conforti, supra, 175 N.J. Super. at 342, defendants aver that *Conforti* has no precedential value regarding the application of the doctrine to *Spectraserv*'s negligence claims.

Defendants posit that our Supreme Court in *People Express Airlines, Inc. v. Consol. Rail Corp.* permitted the plaintiff's negligence claims, absent privity of contract, because the plaintiff also would have been left without a remedy. 100 N.J. 246, 248, 264, 495 A.2d 107 (1985).

Defendants further contend that parties need not be in privity of contract for the economic loss doctrine to apply. See Horizon Group of New England, Inc. v. N.J. Sch. Constr. Corp., 2011 N.J. Super. Unpub. LEXIS 2271, at *20 (App. Div. Aug. 24, 2011); Dynalectric, supra, 803 F. Supp. at 985, 990-91; see also Elizabethtown Water Co. v. Watchung Square Assocs., LLC, Docket No. MRS-L-3027-01, Order Granting Mot. Summ. J. in Part (Law Div. June 22, 2012). Defendants also cite authority from our sister States as additional support for this proposition. See, e.g., BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004) [*8] ("The economic loss rule applies between and among commercial parties for [several] reasons, none of which depends upon or is limited by the existence of a two-party contract."); Fireman's Fund Ins. Co., v. SEC Donohue, Inc., 176 Ill. 2d 160, 679 N.E.2d 1197, 1198, 1201, 223 Ill. Dec. 424 (Ill. 1997) (applying economic loss doctrine to parties lacking privity of contract); Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd., 929 P.2d 1228, 1231, 1235 (Wyo. 1996) (same); Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wn.2d 816, 881 P.2d 986, 988, 993 (Wash. 1994) (same); Blake Constr. Co., Inc. v. Alley, 233 Va. 31, 353 S.E.2d 724, 725, 727, 3 Va. Law Rep. 1868 (Va. 1987) (same); Bates & Rogers Constr. Corp. v. Greeley & Hansen, 109 Ill. 2d 225, 486 N.E.2d 902, 903-06, 93 Ill. Dec. 369 (Ill. 1985) (same).

Defendants also assert that the *Saltiel* Court never applied a foreseeability analysis and the *People Express* Court expressly rejected such an analysis. See People Express, supra, 100 N.J. at 264 ("In these cases, the courts will be required to draw upon notions of fairness, common sense and morality to fix the line limiting liability as a matter of public policy, rather than an uncritical application of the principle of particular foreseeability."). Defendants aver [*9] that, because construction projects involve interrelated contracts where a design professional and a contractor are not in privity of contract yet share a mutual contracting party, the specific analysis becomes whether the design professional owed a duty that was outside the scope of any of the interrelated contracts. In light of this, defendants contend that even if they owed a duty of care to *Spectraserv* that duty was delineated in their respective contracts with the MCUA, and hence no

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 6 of 15 PageID: 929

Page 4 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *9

"independent" duty exists.

Regarding public policy, defendants posit that a primary purpose of the economic loss doctrine is to maintain the boundary between tort and contract law, and that allowing **Spectraserv** to recover for purely economic loss would give contracting parties less incentive to bargain effectively. For example, in a public bid context, defendants opine that a contractor, who knows it may recover damages in tort, has less incentive to review the bid documents thoroughly, and therefore may negligently (or purposefully) fail to alert the public entity about problems with the plans and specifications at the bid stage, resulting in delays, disruptions and extra costs to be borne by the public.

B. [*10] Plaintiff's Argument

**Spectraserv** contends that the Court, consistent with Rule 4:6-2(e), must examine the Second Amended Complaint to determine whether a cause of action may be gleaned from the pleadings. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989). Plaintiff cites Conforti, supra, for the proposition that design professionals are answerable in tort to a contractor who sustains economic damages as a result of the negligence of the design professional notwithstanding the absence of privity. 175 N.J. Super. at 344.

In particular, **Spectraserv** notes that the project in Conforti, supra, required the involvement of numerous design professionals but the Conforti court did not address (1) the contractor's primary contract with the owner of the project, including whether the contract provided the contractor with a means of recovery for the design professionals' negligence, and (2) the other contractual relationships involved in the project. As a result, plaintiff concludes that these issues were irrelevant to the determination of the contractor's right to assert separate tort claims against the design professionals. **Spectraserv** also notes that the contractor sought [*11] and obtained relief from the owner of the project due to the failures and negligence of the architect on at least one occasion. See Conforti & Eisele, Inc. v. Dep't of Treas., Dep't of Treas. 75.056, final decision, (Mar. 7, 1977) ("Admin. Decision of R. Leonard Di Donato").

**Spectraserv** contends that Saltiel, supra, permits a plaintiff to recover in tort even when it has a contractual relationship with the defendant provided that the defendant owes an independent duty as a matter of law. 170 N.J. at 317-18. Plaintiff avers that this holding is consistent with People Express, supra, where our Supreme Court determined that "a defendant who has breached his duty of care to avoid the risk of economic injury to particularly foreseeable plaintiffs may be held liable for actual economic losses that are proximately caused by its breach of duty." 100 N.J. at 267. **Spectraserv** posits that the People Express Court recognized that the existence of a "'special relationship' between the tortfeasor and [an] individual or business deprived of economic expectations" gave rise to a duty of care. Id. at 256. For example, plaintiff notes that our State "recognizes engineers as professionals in the context [*12] of malpractice suits," see N.J.S.A. 2A:53A-26(e) and 45:8-27, and, thus, they "owe a duty to perform the services for which they were retained in accordance with the standards of [their] profession." See Hanson Eng'g., Inc. v. Ascher, 2008 U.S. Dist. LEXIS 32089, at *11 (D.N.J. 2008).

**Spectraserv** also looks to our sister States in further support of its contention that tort claims for economic losses may be maintained notwithstanding the absence of a contract between the plaintiff and a design professional because the latter owed the former a duty of care. See, e.g., E. Steel Constructors, Inc. v. City of Salem, 209 W. Va. 392, 549 S.E.2d 266, 275 (W. Va. 2001) ("[N]otwithstanding the absence of privity between the contractor and design professional," duty exists "due to special relationship that exists between the two."); Kemin Indus. Inc. v. KPMG Peat Marwick LLP, 578 N.W.2d 212, 221 (Iowa 1998) ("[A] claim that a provider of professional services has failed to meet the standard of care that the law has placed on that party is essentially a negligence cause of action."); Tommy L. Griffin Plumbing & Heating Co. 1 v. Jordan, Jones & Goulding, Inc., 320 S.C. 49, 463 S.E.2d 85, 88 (S.C. 1995) ("When . . . there [*13] is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action."); Congregation of the Passion, Holy Cross Province v. Touche Ross & Co., 159 Ill. 2d 137, 636 N.E.2d 503, 514, 201 Ill. Dec. 71 (Ill. 1994) (same); Mid-Western Elec. Inc. v. DeWild Grant Reckert & Assocs. Co., 500 N.W.2d 250, 254 (S.D. 1993) (same); Sommer v. Fed. Signal Corp., 79 N.Y.2d 540, 593 N.E.2d 1365, 1369, 583 N.Y.S.2d 957 (N.Y. 1992) (same); Waldor Pump & Equip. Co. v. Orr-Schelen-Mayeron & Assocs., Inc., 386 N.W.2d 375, 377 (Minn. Ct. App. 1986) (same); Owen v. Dodd, 431 F. Supp. 1239, 1242 (N.D. Miss. 1977) (same).

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 7 of 15 PageID: 930

Page 5 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *13

Plaintiff contends that R3M recognized and accepted the existence of duties outside of its agreement with the MCUA because the Design Contract required R3M to "proceed with the Services required by this Agreement . . . diligently and faithfully [and] ... in accordance with applicable principles and standards, as generally recognized by engineering practice." Design Contract, ¶ 4.1.

Furthermore, *Spectraserv* avers that there must be a contract between a plaintiff and an alleged tortfeasor for the latter to invoke the economic loss doctrine as a bar to a negligence claim. [*14] Plaintiff asserts that there is no legal authority in New Jersey that would allow the Court to apply the doctrine to preclude negligence claims where the parties do not have a contractual relationship.

*Spectraserv* notes that, *Horizon, supra*, as an unpublished decision, cannot "constitute precedent or be binding upon any court" nor, except in limited circumstances not relevant here, shall an "unpublished opinion ... be cited by any court." *R. 1:36-3*. In addition, it contends that the *Horizon* court did not abrogate existing law or establish new precedent for the application of the economic loss doctrine. *Spectraserv* claims that *Horizon, supra*, can be distinguished because the contractor there had clear contractual remedies against the negligent design and engineering professionals. *2011 N.J. Super. Unpub. LEXIS 2271 at *24* (finding that remedy existed because owner had assigned all claims and causes of actions it had against design and engineering professionals to contractor). Plaintiff avers that defendants by failing to recognize the assignment in *Horizon, supra*, have interpreted that decision in a manner that directly conflicts with *Conforti, supra.* *Spectraserv* also contends that *Dynalectric, supra*, [*15] is distinguishable because that case hinged largely upon a finding that the plaintiff, a second-tier subcontractor, had contractual rights providing "another means of redress against the alleged tortfeasor." *803 F. Supp. at 991*.

Plaintiff notes R3M's contracts with the MCUA provide that R3M agrees to "remain liable . . . for all damages to the AUTHORITY including any such caused by the ENGINEER'S negligent performance of any of the services furnished under this Agreement." Design Contract, ¶ 4.1.4 and Construction Management Contract, ¶ 4.1.4. *Spectraserv* maintains that R3M cannot legitimately argue that the economic loss doctrine precludes the former's negligence claims against the latter in the absence of a contract when R3M has contemporaneously agreed in contractual language to permit the MCUA to assert those same negligence claims.

*Spectraserv* observes that the only defendant mentioned in the Contract is R3M. Thus, plaintiff asserts that its rights against the other defendants are not limited by the Contract. Further, while R3M is named, *Spectraserv* notes that it is only designated as the "Engineer," and none of the Contract's language addresses *Spectraserv*'s rights against R3M [*16] in the event of the latter's negligence. Plaintiff also notes that the Contract provisions referenced by R3M's counsel, such as Sections 1.5.6.5 (Allocation of Losses) and 9.5.1 (Disputes), solely relate to *Spectraserv*'s rights against the MCUA. Thus, *Spectraserv* contends that there is no contractual basis to deprive it of its rights against defendants.

Plaintiff argues that to confer immunity upon defendants based on the Contract directly contravenes the policy and objectives set forth by the Legislature when it enacted the Tort Claims Act. See *Vanchieri v. N.J. Sports and Exposition Auth., 104 N.J. 80, 85, 514 A.2d 1323 (1986)* (holding that "independent contractors are expressly excluded" from the scope of Tort Claims Act and that for tort liability purposes, public entities are expressly contrasted with "private entrepreneur[s]," who "may readily be held liable for negligence within the chosen ambit of [their] activity."). *Spectraserv* contends that allowing defendants to escape liability would be tantamount to granting independent contractors a form of derivative immunity simply by virtue of having an innocent party contract with a State or municipal authority. Moreover, plaintiff notes that the [*17] Court has already found that R3M is not entitled to derivative immunity under the Tort Claims Act. See *Spectraserv, Inc. v. The Middlesex County Utilities Authority*, Docket No. MID-L-2577-07, Order Denying Mot. to Dismiss Counts Nine, Twelve, Fourteen, and Fifteen of Second Amended Complaint (Law Div. Aug. 30, 2011).

V. Legal Standard

A. Motion to Dismiss Standard

The question before the Court is whether *Spectraserv* has failed to state a claim upon which relief can be granted pursuant to *Rule 4:6-2(e)*. The standard which the Court must apply is set forth in *Printing Mart-Morristown v. Sharp Elecs. Corp., supra.*

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 8 of 15 PageID: 931

Page 6 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *17

The test for determining the adequacy of a pleading is whether a cause of action is "suggested" by the facts. In reviewing a complaint dismissed under N.J. Civ. R. 4:6-2(e), the reviewing court's inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. However, a reviewing court searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary. At this preliminary stage of the litigation, the [*18] court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint. For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. The examination of a complaint's allegations of fact required by the aforementioned principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.

[116 N.J. at 746.]

Pursuant to this standard, should the Court find that plaintiff's negligence claims against defendants are barred by the economic loss doctrine, the negligence Counts of the Second Amended Complaint must be dismissed for failure to state a cause of action as a matter of law.

B. The Economic Loss Doctrine

"Economic loss can take the form of either direct or consequential damages." Spring Motors Distribs. v. Ford Motor Co., 98 N.J. 555, 566, 489 A.2d 660 (1985). "A direct economic loss includes the loss of the benefit of the bargain, i.e., the difference between the value of the product as represented and its value in its defective condition." Ibid. (emphasis omitted). "Consequential economic loss includes such indirect losses as lost profits." Ibid.

As the Third Circuit has aptly noted, "[u]nder New Jersey [*19] law, the economic loss doctrine defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort." Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 244 (3d Cir. 2010) (internal quotation and formatting marks omitted). "The purpose of the rule is to strike an equitable balance between countervailing public policies that exist in tort and contracts law." Ibid. (internal quotation and formatting marks omitted). Our Supreme Court has observed that "the purpose of a tort duty of care is to protect society's interest in freedom from harm, i.e., the duty arises from policy considerations formed without reference to any agreement between the parties[]" whereas "[a] contractual duty, by comparison, arises from society's interest in the performance of promises." Spring Motors, supra, 98 N.J. at 579.

Regarding this dilemma of applying contract or tort law, "New Jersey courts have consistently held that contract law is better suited to resolve disputes where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities and that could have been the subject of [*20] their negotiations." Dammann, supra, 594 F.3d at 248. Most jurisdictions have adopted a similar view concluding that "a contractor's liability for economic loss is limited to the terms of the contract." Saltiel, supra, 170 N.J. at 310-11.

C. Pre-Saltiel Interplay between Contract and Tort Law

In Santor v. A & M Karagheusian, Inc., our Supreme Court held that the purchaser of a defective carpet could maintain a strict liability claim against the manufacturer seeking economic loss. 44 N.J. 52, 63, 207 A.2d 305 (1965). The Court reasoned that the consumer would otherwise have no remedy in contract against a manufacturer with which he was not in privity; thus, an action in tort would supply a remedy where contract law failed to provide one. Ibid.

Two decades later, the Court applied the economic loss doctrine for the first time in Spring Motors, supra, 98 N.J. at 555. There, a commercial buyer sued to recover economic losses arising from defective goods. Id. at 590. The Court held that the plaintiff could recover against an immediate seller and a remote supplier in the chain of distribution for breach of warranty under the Uniform Commercial Code ("U.C.C.") but not in strict liability or negligence. Id. at 561. [*21] In reaching this conclusion, our Supreme Court determined that as among commercial parties in a direct chain of distribution, contract law, expressed through the U.C.C., provided the more appropriate procedure for adjudicating disputes arising from frustrated economic expectations. Id. at 580.

The Court later reinforced the principles underlying Spring Motors, supra, when it held that the seller of a defective boat could not be sued in tort because the purchaser of a defective boat had contractually protected himself by way of breach of warranty

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 9 of 15 PageID: 932

Page 7 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *21

remedies thus "insur[ing] against the risk that gave rise to his economic loss[.]" *Alloway v. Gen. Marine Indus., 149 N.J. 620, 642, 695 A.2d 264 (1997)*. The Court concluded that the purchaser's tort claims for negligence and strict liability were barred by the economic loss doctrine. *Id. at 643*. Federal courts while acknowledging that "the New Jersey Supreme Court has long been a leader in expanding tort liability" have interpreted *Spring Motors, supra*, and *Alloway, supra*, to reflect "New Jersey's strong resistance to the usurpation of contract law by tort law." *Dammann, supra, 594 F.3d at 248* [*22] (internal quotation and formatting marks and citations omitted).

### D. Contracts Where the Economic Loss Doctrine Applies

While the economic loss doctrine has historically been applied to contracts for goods, both our Supreme Court and the United States District Court for the District of New Jersey have applied the doctrine to service contracts. Compare *Saltiel, supra, 170 N.J. at 310* and *Dynalectric, supra, 803 F. Supp. at 985* (applying economic loss doctrine to contract and subcontracts for construction of congregation facility because plaintiff subcontractor had other means to redress alleged economic harm) with *DiIorio v. Structural Stone & Brick Co., 368 N.J. Super. 134, 137, 141, 845 A.2d 658 (App. Div. 2004)* (declining to apply economic loss doctrine to service contract because doctrine does not apply when plaintiff alleges tangible physical harm to persons or property).[5]

---

[5] **Spectraserv** disputes the applicability of the economic loss doctrine to service contracts but the authority that **Spectraserv** cites is unpersuasive. For example, in *Q Capital Corp. v. Wilmington Trust Co.*, the Appellate Division declined to apply the economic loss doctrine holding that whether a party may seek to recover economic [*23] losses resulting from the performance of a contract based on breach of contract remedies and tort remedies, including fraud, is an open question. *2007 N.J. Super. Unpub. LEXIS 614, at *2 (Jan. 12, 2007)*. Thus, the court left the question unresolved.

In *Consult Urban Renewal Dev. Corp. v. T.R. Arnold & Assoc.*, the United States District Court for the District of New Jersey found no evidence that New Jersey law extended the economic loss doctrine to service contracts. *2009 U.S. Dist. LEXIS 56194 at *9 (July 1, 2009)*. The District Court viewed the economic loss doctrine as a body of case law distinct from the independent duty analysis applied in *Saltiel, supra. 2009 U.S. Dist. LEXIS 56194 at *10*. However, the court's reasoning

### VI. Analysis

The instant matter involves a construction contract and **Spectraserv** seeks, among other things, redress for damages that are [*24] purely economic in nature. Second Amended Complaint, ¶¶ 511, 525, 539, 541 and 543. The economic loss doctrine will not apply unless defendants owed **Spectraserv** an independent duty imposed by law existing outside the scope of a contract, or there exists no other remedy by which **Spectraserv** may recover its economic loss.

### A. Privity

Whether the absence of privity of contract between plaintiff and defendants renders the economic loss doctrine inapplicable presents an issue of first impression in New Jersey.

In the past, our courts have applied the economic loss doctrine to bar negligence claims brought by a contractor against multiple parties, despite the absence of privity of contract. See *Horizon, supra, 2011 N.J. Super. Unpub. LEXIS 2271 at *24*.[6] The *Horizon* court relied on *Saltiel, supra*, in holding that two of the parties, Bovis and Imperial, did not owe an independent duty imposed by law to the contractor, and hence the negligence claims against the third parties were barred. *2011 N.J. Super. Unpub. LEXIS 2271 at *8* (citing *Saltiel, supra, 170 N.J. at 297*). With respect to the remaining two parties, notwithstanding the assignment of the owner's indemnification claims against the third parties to the contractor, [*25] the *Horizon* court recognized that the contractor had other remedies available to address its loss, finding that the contractor "could invoke contractual remedies to request change orders and obtain other accommodations and, if necessary, could sue the owner directly for breach of contract, which it did." *2011 N.J. Super. Unpub. LEXIS 227 at *17*. Furthermore, the Appellate Division determined that the contractor entered into a contract

---

is lacking because our Supreme Court applied the economic loss doctrine in *Saltiel, supra*, to a service contract because no independent duty existed. Thus, the economic loss doctrine is linked rather than distinct from the independent duty analysis. In light of the *Saltiel* Court's decision, *Consult Urban Renewal, supra*, cannot withstand serious scrutiny.

[6] While the Court recognizes that *Horizon, supra*, is neither precedent nor binding upon the Court, see *Rule 1:36-3*, it merits comment.

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 10 of 15 PageID: 933

Page 8 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *25

that clearly described the nature of the relationship, or lack thereof, among the various contractors and professionals. In addition, the court noted that the contractual scheme was specifically defined with the owner functioning as the hub. *2011 N.J. Super. Unpub. LEXIS 227 at *20*. The *Horizon* court's reference to these remedies evidences a belief that privity of contract is not necessary for the economic loss doctrine to apply. Moreover, the court never stated that its application of the doctrine was conditioned on the assignment alone.

Other States have addressed this issue and reached a similar conclusion. The Supreme Court of Colorado has succinctly noted that "[t]he policies [*26] underlying the application of the economic loss rule to commercial parties are unaffected by the absence of a one-to-one contract relationship." *BRW, supra, 99 P.3d at 72*. The *BRW* court enumerated three policies underlying the economic loss doctrine: "(1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort." *Ibid.* The Colorado high court concluded that contractual duties arise just as surely from networks of *interrelated* contracts as from two-party agreements." *Ibid.* (emphasis added). The *BRW* court explained:

> In the context of larger construction projects, multiple parties are often involved. These parties typically rely on a network of contracts to allocate their risks, duties, and remedies:
>
> Construction projects are multiparty transactions, but it is rarely the case that all or most of the parties involved in the project will be parties to the same document or documents. In fact, most construction transactions [*27] are documented in a series of two-party contracts, such as owner/architect, owner/contractor, and contractor/subcontractor. Nevertheless, the conduct of most construction projects contemplates a complex set of interrelationships, and respective rights and obligations.
>
> [*Ibid.* (citation omitted).]

In *Am. Stores Props., Inc. v. Spotts, Inc.*, the United States District Court for the Eastern District of Pennsylvania observed that "controlling federal and Pennsylvania state law hold that privity of contract is not required for application of the economic loss doctrine to [omitted] negligence claims." *648 F. Supp. 2d 707, 713 (2009)*. The court highlighted that "the rationale behind the application of this doctrine is appropriate in the instant matter because to allow a negligence cause of action for purely economic loss would be to open the door to every person in the economic chain of the negligent person or business to bring a cause of action." *Id. at 714* (internal quotation and formatting marks omitted). The District Court concluded that "[s]uch an outstanding burden is clearly inappropriate and a danger to our economic system." *Ibid.*

In *Ass'n of Apt. Owners v. Venture 15, Inc.*, the Supreme [*28] Court of Hawai'i held that recovery for economic loss in negligence is barred, even in the absence of privity of contract, when allowing such recovery would blur the distinction between contract and tort law, *115 Haw. 232, 167 P.3d 225, 285 (2007)*. The court determined that, where a general contractor and subcontractor had "allocated the risks and benefits of performance in their contract," imposing a tort duty upon the subcontractor correlative to the contract's specifications "would disrupt the contractual relationships between and among the various parties." *Ibid.* (citation omitted). See also *SEC Donohue, supra, 679 N.E.2d at 1197* (applying economic loss doctrine to bar contractor's negligence action for economic loss, against engineer with whom it lacked privity of contract, in relation to construction of water supply line improvements); *Rissler, supra, 929 P.2d at 1228* (invoking doctrine to bar contractor's negligence and negligent misrepresentation claims for economic loss, against engineer with whom it lacked privity of contract, in relation to construction of water distribution system); *Travelers Cas. & Sur. Co. v. Dormitory Auth., 734 F. Supp. 2d 368 (S.D.N.Y. 2010)* (finding the doctrine [*29] applied to bar negligence claims for economic loss brought by insurer who equitably subrogated to rights of prime contractor, against architect and construction manager with whom it lacked privity of contract, in relation to the construction of 785,000 square-foot vertical campus for Baruch College).

The Court's "reference to foreign jurisdictions is informed by and in harmony with the New Jersey Supreme Court's own approach under similar circumstances." *Dammann, supra, 594 F.3d at 250*. See also *Cox v. RKA Corp., 164 N.J. 487, 497, 753 A.2d 1112 (2000)* (considering other States' jurisprudence in absence of reported New Jersey cases addressing precise issue).

Here, there is a large construction project, with multiple

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 11 of 15 PageID: 934

Page 9 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *29

parties. There are a series of interrelated contracts: a contract between **Spectraserv** and the MCUA (the Contract), two contracts between the MCUA and R3M (the Design and Construction Management Contracts), and a contract between the MCUA and Morehouse (the SCADA Engineering Contract). The parties relied on these contracts to allocate their risks, duties, and remedies. Given the nature of the relationships among the parties, the absence of a direct contractual relationship does not preclude [*30] the application of the economic loss doctrine. Applying the doctrine in such cases will serve its purpose of limiting the expansion of tort liability where contractual remedies exist. This is the proper course of action because "where two competing yet sensible interpretations of [New Jersey] law exist, [the Court] should opt for the interpretation that restricts liability, rather than expands it, until the Supreme Court [of New Jersey] decides differently." Dammann, supra, 594 F.3d at 253.

B. Independent Duty

In Saltiel, supra, William Paterson University entered into a contract with Jan Saltiel to reconstruct the University's athletic field. 170 N.J. at 300. Saltiel turned to a consulting firm, GSI Consulting, Inc., for services including the design and specifications for the turf grass to be used on the field. Ibid. After a drainage failure that rendered the field unfit for athletic use, Saltiel sued GSI Consulting and two of its officers, alleging negligent design and negligent misrepresentation. Ibid. Our Supreme Court held that "[u]nder [*31] New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Id. at 316. The Court determined that the two corporate officers could not be held personally liable for tortious conduct under the participation theory, nor could the consulting firm be held liable in tort. Id. at 316-18. It further reasoned that the plaintiff had not stated a cause of action in tort and failed to establish that GSI Consulting or its officers owed the contractor "an independent duty" outside the scope of the contract. Id. at 315.[7] The Saltiel Court was

"unable to discern any duty owed to the plaintiff that was independent of the duties that arose under the terms of the contract." Id. at 316. The Court concluded by noting that "GSI [Consulting] possessed specific technical skills that it was obligated to apply under the contract [and its] failure to do so was not a violation of an obligation imposed by law, but rather a breach of its contractual duties." Id. at 316-17.

Similarly, in the present matter, the Court finds that defendants' alleged failure to apply the technical skills that were required by the contract was not a violation of an obligation imposed by law. Although the Saltiel Court acknowledged the "existence of duties that are specifically imposed by law in New Jersey, which can be enforced separately and apart from contractual obligations," such as the duty of care imposed on physicians, attorneys,[8] and insurance brokers, the Court did not find that such a duty applied to architectural [*33] professionals. 100 N.J. at 317. Our Supreme Court concluded that the damages alleged by the Saltiel plaintiff, including the cost of preparing new specifications and hiring a new contractor to reconstruct the field, were not the type of damages that arose from any duty imposed by law. Ibid. The Court contrasted the case to New Mea Constr. Corp. v. Harper, 203 N.J. Super. 486, 494, 497 A.2d 534 (1985), where the Appellate Division declined to hold a builder personally liable for damages resulting from negligent workmanship. Ibid.

The Court finds that the substantial, direct, delay, disruption, and inefficiency damages **Spectraserv** alleges it sustained are no different than the damages alleged in Saltiel, supra, and New Mea, supra. Furthermore, the Court is [*34] not persuaded by plaintiff's contention that engineers are professionals in

---

[7] Saltiel, supra, as well as foreign jurisdictions, have applied an independent duty analysis rather than a mere foreseeability analysis, in determining whether [*32] the economic loss doctrine is applicable. 170 N.J. at 300; see also BRW, supra, 99 P.3d at 73; SEC Donohue, supra, 679 N.E.2d at 1201; Rissler, supra, 929 P.2d at 1235 n.1; Venture 15, supra, 167 P.3d at 285. However, a foreseeability analysis is not appropriate in all cases. In People Express, supra, the foreseeability analysis was proper because the plaintiff had neither a direct nor an interrelated contract with any of the defendants. 100 N.J. at 264. To the contrary, Saltiel, supra, and the aforementioned cases from outside New Jersey, similar to the instant matter, involve contracts containing duties thereby obviating the need for a foreseeability analysis.

[8] **Spectraserv** cites Petrillo, supra, 139 N.J. at 472, in support of its contention that defendants owed **Spectraserv** a professional duty. Petrillo, supra, is not instructive in determining whether an engineer owes a professional duty, because the case concerns the professional duty owed by an attorney. See Saltiel, supra, 170 N.J. at 317 (recognizing that attorneys owe independent duty imposed by law but reaching opposite conclusion for architects).

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 12 of 15 PageID: 935

Page 10 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *34

New Jersey malpractice cases, and hence owe an independent duty imposed by law. See N.J.S.A. 2A:53A-26(e) and -27. While the Court recognizes that architects, like the *Saltiel* defendant, are also considered professionals with respect to malpractice claims in this State, see N.J.S.A. 2A:53A-26(b), our Supreme Court in *Saltiel, supra*, did not find that architects owed an independent duty imposed by law. 170 N.J. at 317.[9] The *Saltiel* Court did recognize that "a different analysis and result could [have] been implicated" had personal injuries or property damage resulted from the defendants' negligence. *Ibid.*

In the matter before the Court, there was no duty imposed by law; rather, there was a duty of care defined in defendants' respective contracts with the MCUA. With respect to R3M, the Design Contract required R3M to "proceed with the Services required by this Agreement . . . diligently and faithfully [and] . . . in accordance with applicable principles and standards, as generally recognized by engineering practice." Design Contract, ¶ 4.1. R3M was also obligated to "correct or review any negligent acts, errors, omissions or deficiencies in Basic Services and Other services." *Id.* at ¶ 4.1.1. Further, R3M was to perform its engineering services, "in accordance with this Agreement and Applicable Law in effect on the effective date of this Agreement." *Id.* at ¶ 4,1.2. Moreover, the Design Contract provides that "[r]eview, acceptance and/or approval by the AUTHORITY or any Public Regulatory Agency of the [*37] Project shall not, in any way, relieve the ENGINEER's responsibility for the technical adequacy of work performed by the ENGINEER." *Id.* at ¶ 4.1.3. Similar language also appears in R3M's Construction Management Contract. *See* Construction Management Contract, ¶¶ 4.1, 4.1.1, 4.1.2, and 4.1.3. Thus, any duty of care R3M and its agents owed was to its client, the MCUA, and delineated in its contracts with the MCUA. These contracts were part of the series of interrelated Project contracts, and thus any duty contained therein is not an "independent" duty imposed by law.

Similarly, the SCADA Engineering Contract requires Morehouse to "proceed with the Services required by this Agreement . . . diligently and faithfully [and] . . . in accordance with applicable principles and standards, as generally recognized by engineering practice and recognized standards for computer software development," SCADA Engineering Contract, ¶ 4.1.1. The agreement also provides that "[t]he professional personnel provided by MOREHOUSE hereunder shall have appropriate technical and application skills to enable them to perform their duties hereunder." *Id.* at ¶ 4.2.1. Further, Morehouse was "responsible for the professional [*38] quality, technical accuracy, timely completion, and the coordination of the Basic Service and Other Services furnished by MOREHOUSE under this Agreement." *Id.* at ¶ 4.2.2. Thus, any duty of care Morehouse owed, once again, was to its client, the MCUA, and delineated in its contract with the MCUA.

It is inconsequential that **Spectraserv** was not a party to the contracts containing R3M's duties. The Court concludes similar to the Colorado high court in BRW, *supra*, that the parties' respective duties of care were set forth in the interrelated contracts and there was no independent duty imposed by law. 99 P.3d at 66. *See also* Blake, *supra*, 353 S.E. 2d at 726 ("The architect's duties both to owner and contractor arise from and are governed by the contracts related to the construction project. While such a duty may be imposed by contract, no common-law duty requires an architect to protect the

---

[9] Cases from other jurisdictions to the contrary cited by **Spectraserv** are readily distinguished, and generally do not conclude that the tort claims were based on duties imposed by the contract, which is the case at bar. *See, e.g.,* Eastern Steel, *supra*, 549 S.E.2d at 275 (holding that design professional owes duty of care to contractor, notwithstanding absence of privity of contract, due to special relationship that exists between both, but noting that nature of duty may be impacted by nature of contracts between [*35] various parties); Kemin Indus., *supra*, 578 N.W.2d at 221 (finding that under Iowa law claim that failure of public accounting firm to meet standard of care is negligence cause of action); **Griffin Plumbing, supra, 463 S.E.2d at 88-89** (determining that engineer owed duty to contractor not to negligently design or supervise project because engineer had right to inspect and halt construction); Congregation of the Passion, *supra*, 636 N.E.2d at 514 (holding that accounting firm owed client extracontractual duty of reasonable professional competence); Mid-Western Elec., *supra*, 500 N.W.2d at 254 (concluding that professional negligence was proper cause of action for foreseeable third parties, where there was no privity of contract between architectural firm and subcontractor, and failure to review specifications resulted in harm); Sommer, *supra*, 593 N.E.2d at 1369-70 (finding that fire alarm company's failure to perform competently could have catastrophic consequences; thus, nature of its services and relationship with its customers gave rise to independent duty of care); Waldor Pump, *supra*, 386 N.W.2d at 377 (determining that engineer was liable in negligence to subcontractor who foreseeably [*36] relied on engineer's specifications, despite lack of privity of contract); Owen, *supra*, 431 F. Supp. at 1242 (concluding that under Mississippi law architect owes duty to general contractor who relines on plans to use ordinary and reasonable skill in preparation of plans and specifications).

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 13 of 15 PageID: 936

Page 11 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *38

contractor from purely economic loss."). Stated differently, "even in the absence of privity of contract between the design professional and a project owner, the law does not impose a duty in tort if it would disrupt the contractual relationships between and among the various parties." Leis Family L.P. v. Silversword Eng'g, 126 Haw. 532, 273 P.3d 1218, 1225 (Haw. Ct. App. 2012) [*39] (internal quotation marks omitted).

Defendants contracted with the MCUA, and in doing so allocated the risks and benefits of performance within their respective contracts. For the Court to impose a tort duty upon defendants to satisfy Spectraserv's unmet economic expectations would disrupt the contractual relationships between and among the various parties, which the Court will not do.

C.. Availability of Remedy

As previously noted, where dismissal of the negligence Counts would render Spectraserv without an avenue to seek redress for its economic losses, the economic loss doctrine will not be applied. In both People Express, supra, 100 N.J. at 254, and Conforti, supra, 175 N.J. Super. at 344, the courts, recognizing that it would be inequitable for the plaintiffs to be left without a remedy, refused to apply the economic loss doctrine.

In Conforti, supra, the plaintiff was the general contractor for the owner, the State of New Jersey, and sued various design professionals, including the supervising architects, an engineer and a subcontracting engineer. 199 N.J. Super. at 500. Specifically, Conforti charged that the defendants were guilty of professional negligence in coordinating project [*40] drawings. Ibid. The Law Division found that a third-party contractor should be able to maintain an action against a design professional despite the absence of privity of contract. See Conforti, supra, 175 N.J. Super, at 344. In its decision, the court stated that "[to] deny this plaintiff his day in court would, in effect, be condoning a design professional's right to do his job negligently but with impunity as far as innocent third parties who suffer economic loss." Ibid.

In People Express, supra, the plaintiff, an airline, suffered economic loss due to a fire in the Port of Newark freight yard. 100 N.J. at 248-49. The freight yard, the tank car, and the ethylene oxide that ignited were owned or manufactured by different defendants, none of whom had a contract with the plaintiff. Id. at 249. The fire resulted in the plaintiff having to evacuate from the premises as a result of its close proximity to the freight yard. Ibid. Consequently, the plaintiff suffered purely economic loss including flight cancellations, lost reservations, and fixed operating expenses allocated to the evacuation time period. Id. at 249-50. Our Supreme Court declined to invoke the economic loss doctrine because [*41] doing so would have deprived the plaintiff of its only avenue for redress against the defendants. Id. at 254-55, 258.

Here, Spectraserv's economic losses may be remedied through its contractual claims. For example, Article 7 addresses issues involving the Contract price and payment. In particular, Article 7.10.4 outlines the process for changes in price, including the submission of change orders. Article 1.5.6.5 governs losses incurred by the parties due to delays caused by uncontrollable circumstances. Finally, Article 9.5 establishes a procedure for addressing disputes and disagreements with the MCUA. Therefore, it is abundantly clear the Contract contains provisions that create a remedy for Spectraserv's economic losses.

The instant case is readily distinguished from People Express, supra, and Conforti, supra. In People Express, supra, there was no contract between the plaintiff and any other party in the case; hence a tort claim was the plaintiff's only remedy. 100 N.J. at 254-55, 258. While Conforti, supra, is factually similar to the present matter in that it involved a large construction contract, the Conforti court never addressed the primary contract in reaching its conclusion [*42] that the plaintiff had no available remedy outside its tort claim. 175 N.J. Super. at 342-44.[10] Additionally, the Conforti court assumed that the design professional owed the contractor a duty based on the application of the motion to dismiss standard. Id. at 342.

The Court finds that Conforti, supra, which predates Spring Motors, supra, and never discussed the economic loss doctrine is not instructive on whether the Court should review the Contract in order to determine if

---

[10] It appears that the contractor in Conforti, supra, sought and obtained relief from the owner of the project due to the failures and negligence of the architect. See Admin. Decision of R. Leonard Di Donato. Spectraserv cites to this administrative decision in an effort to establish that the Contract terms and any possible remedy it may have against the MCUA are irrelevant to its right to assert tort claims against defendants. It is not clear why the administrative decision addressed the primary contract in Conforti, supra, but both the Law Division and Appellate Division did not do so.

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 14 of 15 PageID: 937

Page 12 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *42

plaintiff has an avenue of recovery. Because there are a series of interrelated contracts, **Spectraserv** is not without a remedy if [*43] it can recover for its economic loss by way of any of the interrelated contracts. See BRW, supra, 99 P.3d at 72 ("[T]he economic loss rule applies when the claimant seeks to remedy only an economic loss that arises from interrelated contracts.").

Plaintiff also asserts a breach of implied warranty claim against the MCUA alleging that the plans and specifications were not sufficient to complete the job. In Spearin, supra, the Supreme Court held that an owner by way of implied warranty assures the information, plans and specifications which an owner provides to a general contractor. 248 U.S. at 136. The Spearin Court also determined that a contractor will not be liable to the owner for loss or damage which results solely from insufficiencies or defects in such information, plans and specifications if it was obligated to build according to the plans and specifications. Ibid.

Here, **Spectraserv** alleges it was obligated to build the Modifications according to the plans and specifications provided by the MCUA. Thus, since the loss plaintiff seeks to redress in its contractual claims is duplicative of that it seeks to redress in its negligence claims, the latter are barred by the economic loss [*44] doctrine. While the Court recognizes that barring the negligence claims will prevent **Spectraserv** from seeking redress against defendants directly, **Spectraserv** can seek to recover its economic losses through its claims against the MCUA.

D. Policy Considerations

1. Protecting Boundaries of Contract and Tort Law

Finding that the economic loss doctrine bars plaintiff's negligence claims against defendants is consistent with the established policy that tort law should not usurp contract law. The doctrine evolved as part of the common law, largely as an effort to establish the boundary line between contract and tort remedies. See Dean v. Barrett Homes, Inc., 204 N.J. 286, 295, 8 A.3d 766 (2010). Additionally, the economic loss doctrine enforces expectancy interests of the parties so that they may reliably allocate risks and costs during their bargaining. See BRW, supra, 99 P.3d at 72. Our courts "have consistently held that contract law is better suited to resolve disputes where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities [and] that could have been the subject of their negotiations." Dammann, supra, 594 F.3d at 248.

If **Spectraserv** [*45] and other parties similarly situated were allowed to recover for economic harm in negligence claims, the scope and breadth of liability would be limitless. In the context of public bidding, it would render bidders comfortable with a less rigorous review of the bid documents, bolstered by economic loss doctrine to other torts such as fraud. As one court has noted, "[t]he question of the continuing validity of fraud claims in cases involving frustrated economic expectations under New Jersey law is very complex and troublesome." Vanguard Telecomms., Inc. v. S. New England Tel. Co., 900 F.2d 645, 654 (3d Cir. 1990). The Third Circuit has appropriately referred to the conflicting approaches of the District Court and the Appellate Division as a "morass." Ibid.

After Spring Motors, supra, the United States District Court for the District of New Jersey has generally held that claims of fraud-in-the-performance of a contract are barred, but claims of fraud-in-the-inducement are permitted. As the court has aptly observed:

> [T]he critical issue with regard to economic loss is whether the allegedly tortious conduct is extraneous to the contract . [A]n act that is in breach of a specific contractual [*46] undertaking would not be extrinsic, but an act that breaches some other duty would be . . . . [W]ith the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud.
>
> [Bracco Diagnostics, 226 F. Supp. 2d 557, 564 (D.N.J. 2002) (internal quotation and formatting marks and citations omitted).]

However, to the contrary, our courts, after Spring Motors, supra, have recognized fraud claims between commercial parties. See Coastal Group, Inc. v. Dryvit Sys., Inc., 274 N.J. Super. 171, 643 A.2d 649 (App. Div. 1994); Perth Amboy Iron Works, Inc. v. American Home Assurance Co., 226 N.J. Super. 200, 543 A.2d 1020 (App. Div. 1988), aff'd, 118 N.J. 249, 571 A.2d 294 (1990). In the face of these holdings, the Appellate Division, in an unpublished opinion, has held that the issue of whether the plaintiff can seek to recover damages for breach of contract and fraud in the same

Case 3:22-cv-04905-MAS-LHG   Document 63-2   Filed 02/16/23   Page 15 of 15 PageID: 938

Page 13 of 13

2013 N.J. Super. Unpub. LEXIS 2173, *46

action based on the same conduct arising from the execution of a business agreement is unsettled in New Jersey. Q Capital, supra, 2007 N.J. Super. Unpub. LEXIS 614 at *10. Indeed, no New Jersey court has explicitly [*47] considered whether fraud claims are barred by the economic loss doctrine.

The Court acknowledges the lingering questions regarding the applicability of the economic loss doctrine to other torts such as fraud. Nevertheless, these questions need not be addressed today because the only issue squarely before the Court on this motion is the doctrine's applicability to negligence claims.

VII. Conclusion

The Court finds that **Spectraserv**'s negligence claims against defendants are barred by the economic loss doctrine and, therefore, **Spectraserv** has failed to state a cause of action on these Counts. Accordingly, defendants' motions to dismiss Counts Six, Seven, and Eight of the Second Amended Complaint are hereby granted.

Travis L. Francis

HON. TRAVIS L. FRANCIS, A.J.S.C.

End of Document

Joseph Petrillo