# Exhibit 3



**User Name:** Joseph Petrillo
**Date and Time:** Tuesday, February 7, 2023 7:22:00PM EST
**Job Number:** 189780778

## Document (1)

1. *Schenker, Inc. v. Expeditors Int'l of Wash., Inc., 2016 N.J. Super. Unpub. LEXIS 1535*
   **Client/Matter:** PSA
   **Search Terms:** Schenker, Inc. v. Expeditors Int'l of Wash., Inc., 2016 N.J. Super. Unpub. LEXIS 1535
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   | --- | --- |
   | Cases | -None- |

 Caution
As of: February 8, 2023 12:22 AM Z

# Schenker, Inc. v. Expeditors Int'l of Wash., Inc.

Superior Court of New Jersey, Appellate Division

June 21, 2016, Argued; July 1, 2016, Decided

DOCKET NO. A-3555-14T1

**Reporter**
2016 N.J. Super. Unpub. LEXIS 1535 *

SCHENKER, INC., Plaintiff-Respondent, v. EXPEDITORS INTERNATIONAL OF WASHINGTON, INC., Defendant-Appellant.

**Notice:** NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION.

PLEASE CONSULT NEW JERSEY RULE 1:36-3 FOR CITATION OF UNPUBLISHED OPINIONS.

**Prior History:** [*1] On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-5248-13.

## Core Terms

customs, economic loss doctrine, contracts, economic loss, charges, parties, fault, independent duty

**Counsel:** David H. Pikus argued the cause for appellant (Bressler, Amery & Ross P.C., attorneys; Mr. Pikus, on the briefs).

Guerric S.D.L. Russell argued the cause for respondent (Nicoletti Hornig & Sweeney, attorneys; Nooshin Namazi and Mr. Russell, on the brief).

**Judges:** Before Judges Fisher and Fasciale.

## Opinion

PER CURIAM

Expeditors International of Washington, Inc. (Expeditors) appeals from a March 24, 2015 order awarding damages to Schenker, Inc. (Schenker) based on a finding of negligence following a bench trial. We conclude the judge erred in failing to apply the economic loss doctrine, and therefore reverse.

This case involves three parties. Gerresheimer is a German company that independently contracted with both Expeditors and Schenker to transport two shipments of glass from Germany to Ohio. Schenker is a non-vessel operating common carrier (NVOCC), and was engaged by Gerresheimer to arrange for shipping and trucking services for the goods. Under the contract terms, Gerresheimer was responsible for all charges, including detention and demurrage. As Schenker does not own its own vessels, it subcontracted with Hamburg [*2] Sud to move the product from Germany to Virginia, and then from Virginia to Ohio.

Gerresheimer also contracted with Expeditors as a broker to provide customs clearance. Under the terms of this agreement, Expeditors was to process the goods through customs to allow the goods to reach their ultimate destination. Thus, as Schenker's customer service manager, Cris Matos, testified, Schenker's responsibilities as a NVOCC required it to "make sure that the goods got from point A to point B, . . . and everywhere and everything that needed to be done in between." Expeditors had the limited role of making sure the goods proceeded through customs in a timely manner.

When both the first and second shipments arrived in Virginia, they were delayed at customs because Expeditors did not have the requisite information and documentation to move them along. The parties disagreed over who was at fault. Hamburg Sud imposed a hard deadline for clearance, otherwise the goods would be sent to "General Orders." Gerresheimer refused to pay the demurrage and storage charges, and Schenker paid the charges and allowed the goods to move to their final destination. Schenker then sent two invoices to Expeditors for [*3] the delay. Expeditors refused to pay.

Schenker filed a complaint against Expeditors, alleging negligence for "failure to arrange for the cargo's release from customs in a timely fashion," which resulted in damages. After a bench trial, the judge concluded that

Case 3:22-cv-04905-MAS-LHG   Document 63-3   Filed 02/16/23   Page 4 of 6 PageID: 942

Page 2 of 4

2016 N.J. Super. Unpub. LEXIS 1535, *3

Expeditors was negligent because it "failed to provide reasonable care and skill to Gerresheimer in respect to clearing Gerresheimer's two shipments through customs." The court further found that Schenker also prevailed on a theory of equitable subrogation.

On appeal, Expeditors argues that Schenker failed to produce evidence to establish that Expeditors owed Schenker a duty, or even if it did, that it breached its duty; that the economic loss doctrine bars recovery by Schenker; that Schenker's claim is barred by the comparative negligence law; and that Schenker failed to establish a claim of negligence.

The economic loss doctrine evolved as part of the common law "as an effort to establish the boundary line between contract and tort remedies." *Dean v. Barrett Homes, Inc., 204 N.J. 286, 295, 8 A.3d 766 (2010)*. The doctrine "bars tort remedies in strict liability or negligence when the only claim is for" economic loss, as opposed to physical injury or property damage. *Ibid.* Early economic loss [*4] cases arose in the context of defective goods and strict liability, *see, e.g., Spring Motors Distribs. v. Ford Motor Co., 98 N.J. 555, 579, 489 A.2d 660 (1985)*, but has expanded to service contracts, *Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 788 A.2d 268 (2002)*.

It is generally accepted that the economic loss doctrine does not require the parties to be in privity of contract. See *BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004)* (explaining that the economic loss doctrine applies where there is a series of interrelated contracts, even despite privity, because the parties have the ability to allocate risk); *Am. Stores Props., Inc. v. Spotts, Inc., 648 F. Supp. 2d 707, 713 (E.D. Pa. 2009)* (stating that "privity of contract is not required for application of the economic loss doctrine to [a] [p]laintiff's negligence claims"). In sum, the economic loss doctrine bars negligence claims when the party asserting the action has a contractual remedy, thereby maintaining a boundary between contract and tort law and preventing amplified exposure to the party responsible for the loss. See *Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 248 (3d Cir. 2010)* ("New Jersey courts have consistently held that contract law is better suited to resolve disputes between parties where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities with equal bargaining power and that could have been the subject of their negotiations.")

There are two exceptions to the economic loss doctrine. The [*5] first is where the injured party would not otherwise have a remedy. *People Express Airlines v. Consol. Rail Corp., 100 N.J. 246, 249-50, 254, 495 A.2d 107 (1985)* (airline could recover for pure economic loss where a tank car in a freight yard ignited and caused evacuation of the nearby airport because the airline had no contract with the owners of the tank car and its only means of recovery was in tort); *see also Conforti & Eisele, Inc. v. John C. Morris Assocs., 175 N.J. Super. 341, 344, 418 A.2d 1290 (Law Div. 1980)*, aff'd, *199 N.J. Super. 498, 489 A.2d 1233 (App. Div. 1985)*. The second exception is if an independent duty exists. *Saltiel, supra, 170 N.J. at 316* ("Under New Jersey law, a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law."). This refers to situations in which an independent duty exists irrespective of contractual obligations, such as for doctors, lawyers, insurance brokers, and manufacturers in products-liability law. *Id. at 317*.

Here, Gerresheimer, in order to transport its goods from Germany to Ohio, entered into two independent contracts, one with Schenker and another with Expeditors, both related to the transportation of the same goods. In order to discharge its obligations under its contract with Gerresheimer, Schenker subcontracted with Hamburg Sud for the physical transportation of the goods. Thus, there was no privity of contract between Expeditors and Schenker. However, [*6] much like the interrelated contracts in the construction project presented in *BRW, supra, 99 P.3d at 72*, here there were interrelated contracts that allowed the parties to allocate risks and remedies. Indeed, Matos certified that the contract between Gerresheimer and Schenker made the former "responsible for all charges, including in particular all expenses, costs, detention, and demurrage charges." Gerresheimer refused to pay Schenker for the storage costs in spite of the agreement, and Schenker paid the demurrage fees to Hamburg Sud. Schenker chose not to pursue a contract action against Gerresheimer; instead, it elected to sue Expeditors in tort.

This is a case of pure economic loss. The damages arise from the delays in clearing the goods at customs. There was no physical injury, and, contrary to the judge's finding, there was no damage to the property, nor did Expeditors "take control" of the property. *The Restatement (Second) of Agency § 352* states:

> An agent is not liable for harm to a person other than his principal because of his failure adequately

Case 3:22-cv-04905-MAS-LHG   Document 63-3   Filed 02/16/23   Page 5 of 6 PageID: 943

Page 3 of 4

2016 N.J. Super. Unpub. LEXIS 1535, *6

to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control [*7] of land or other tangible things.

The Reporter's Notes accompanying the text illustrate that the exception for taking possession of land or things refers to the agent's liability where he or she is in possession of the principal's land or the principal's tangible property. In that case, the agent-possessor will face liability for individuals on the land or as a result of the destruction of the property.

> It is still true that an agent is not liable to a third person for undertaking and later failing to perform a duty to the principal to pay money *or otherwise deal with the purely economic interests of such person*, in the absence of a promise made for his benefit. It is only where physical harm to the person or tangible things of another is caused that the agent may become personally responsible for his failures in performing his undertaking to the principal.
>
> The other important principle in the law of torts which is important in this type of situation is that which imposes a duty of care upon one who is in control of tangible things. Thus, the possessor of land is liable to persons outside the land for dangerous conditions on it, and in addition is subject to various liabilities to people [*8] who enter. An agent who is in charge of property is subject to a similar liability and also . . . is entitled to take advantage of the privileges or the lessened duties of care of the principal.
>
> [*Ibid.* (emphasis added) (citations omitted).]

There is no indication in the record that Expeditors exercised physical control over the property, it was merely acting as a customs broker dealing with the necessary paperwork and attempting to streamline the process. Thus, in this case, applying the economic loss doctrine will serve its designed purpose to limit tort liability and allow for recovery under the contract.

The judge also erred in concluding that an independent duty existed between Expeditors and Gerresheimer. The judge reasoned that Expeditors breached its fiduciary duty to Gerresheimer, and that Schenker could recover as a subrogee of Gerresheimer. However, any duty Expeditors owed to Gerresheimer was based in contract; there was no duty imposed by law. See *Saltiel, supra,* 170 N.J. at 317 (itemizing recognized independent duties). Here, Expeditors did not breach any special duty imposed by law[1] ; any failure to properly arrange for clearance through customs "was not a violation of an obligation imposed by law, but [*9] rather a breach of its contractual duties." *Ibid.* Therefore, as this case involves pure economic loss, and because no exception applies, Schenker's negligence claim against Expeditors is barred.

Finally, the judge erred in awarding Schenker recovery as a subrogee because the judge acknowledged that Gerresheimer was at least partially at fault in failing to produce the necessary documents. "Subrogation is a device of equity to compel the ultimate discharge of an obligation by the one who in good conscience ought to pay it." *Standard Acc. Ins. Co. v. Pellecchia,* 15 N.J. 162, 171, 104 A.2d 288 (1954). As subrogation is an equitable doctrine, "[t]he one asserting the right cannot thereby profit from his own wrong; he must himself, be without fault." *Camden Tr. Co. v. Cramer,* 136 N.J. Eq. 261, 264, 40 A.2d 601 (1945). The subrogee essentially steps into the shoes of the subrogor, only recovering to the extent the subrogor would have recovered had it brought the action itself. *Pellecchia, supra,* 15 N.J. at 171.

Here, the judge found that Gerresheimer was at least partially at fault for the delay at customs:

> It is undisputed Expeditors needed Gerresheimer's documents [*10] to fulfill its obligation to Gerresheimer to clear the shipments through customs. The question may be asked whether Gerresheimer contributed to the failure of Expeditors to clear the cargo without incurring storage charges. *The answer is clearly affirmative*, as Gerresheimer unnecessarily complicated the process by hiring two different entities to complete the delivery, and failing to list the container numbers on the invoices.
>
> [(Emphasis added).]

However, the court then awarded Schenker the full amount of damages, irrespective of any fault by Gerresheimer. Thus, independent from the economic loss analysis, Schenker's subrogation claim fails because the judge found that Gerresheimer was at fault, and Schenker's rights cannot be better than those of Gerresheimer.

---

[1] We note that Schenker did not allege a breach of fiduciary duty claim against Expeditors; it merely asserted a claim of negligence for alleged failure of Expeditors to carry out its contractual obligations.

Joseph Petrillo

Case 3:22-cv-04905-MAS-LHG   Document 63-3   Filed 02/16/23   Page 6 of 6 PageID: 944

Page 4 of 4

2016 N.J. Super. Unpub. LEXIS 1535, *10

In light of our conclusions, we need not address Expeditors' remaining points on appeal.

Reversed.

---

**End of Document**

Joseph Petrillo