# Exhibit 4



**User Name:** Joseph Petrillo
**Date and Time:** Tuesday, February 7, 2023 7:23:00PM EST
**Job Number:** 189780823

## Document (1)

1. *MJF Elec. Contr., Inc. v. Toms River Bd. of Educ., 2021 U.S. Dist. LEXIS 58422*
   **Client/Matter:** PSA
   **Search Terms:** MJF Elec. Contr., Inc. v. Toms River Bd. of Educ., 2021 U.S. Dist. LEXIS 58422
   **Search Type:** Natural Language
   **Narrowed by:**

   | Content Type | Narrowed by |
   |---|---|
   | Cases | -None- |

Cited
As of: February 8, 2023 12:23 AM Z

# MJF Elec. Contr., Inc. v. Toms River Bd. of Educ.

United States District Court for the District of New Jersey

March 26, 2021, Decided; March 26, 2021, Filed

Civil Action No. 20-7336 (MAS) (LHG)

**Reporter**
2021 U.S. Dist. LEXIS 58422 *; 2021 WL 1168962

MJF ELECTRICAL CONTRACTING, INC., Plaintiff, v. TOMS RIVER BOARD OF EDUCATION AND MASER CONSULTING, P.A., Defendants.

**Notice:** NOT FOR PUBLICATION

## Core Terms

economic loss doctrine, parties, lighting, drawings, negligent misrepresentation, emergency, privity, motion to dismiss, replacement, alleges, battery, signs, fixtures, emergency exit, concealed, damages, wiring, negligent misrepresentation claim, remedies, Courts, bidders, bid

**Counsel:** [*1] For MJF ELECTRICAL CONTRACTING INC., Plaintiff, Counter Defendant: CHRISTOPHER I. MCCABE, CHARLSON BRABER MCCABE & DENMARK, PHILADELPHIA, PA.

For TOMS RIVER BOARD OF EDUCATION, Defendant, Cross Claimant, Counter Claimant: WILLIAM R. BURNS, LEAD ATTORNEY, Carluccio, Leone, Dimon, Doyle and Sacks, LL, Toms River, NJ.

**Judges:** MICHAEL A. SHIPP, UNITED STATES DISTRICT JUDGE.

**Opinion by:** MICHAEL A. SHIPP

## Opinion

### MEMORANDUM OPINION

### SHIPP, District Judge

This matter comes before the Court upon Defendant Maser Consulting, P.A.'s ("Maser" or "Defendant") Motion to Dismiss Plaintiff MJF Electrical Contracting, Inc.'s ("MJF" or "Plaintiff") Complaint. (ECF No. 7.) Plaintiff opposed (ECF No. 12), and Maser replied (ECF No. 14). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to *Local Civil Rule 78.1*. For the reasons set forth below. Defendant's Motion is granted.

### I. BACKGROUND[1]

Toms River Board of Education ("TRBOE") is a New Jersey board of education constituted, authorized, and governed by the laws of the State of New Jersey. (Compl. ¶ 3, ECF No. 1.) "Maser is a professional engineering firm organized and existing under the laws of the State of New Jersey." (*Id.* ¶ 5.) "Maser is the [*2] [TRBOE's] engineer and provides [TRBOE] with architectural and professional engineering services." (*Id.* ¶ 6.)

Plaintiff alleges that "[i]n or about 2018, the [TRBOE] retained Maser to assist it with the 'Rebuilding our Schools[,]' [Toms River Regional Schools' ("TRRS")] Energy Savings Improvement Program ("ESIP") and to prepare the drawings and specifications for the project known as 'ESIP Lighting Replacement & Associated Work @ Various Locations Within The Toms River Regional School District' (the "Project")." (*Id.* ¶ 11.) Among other things, the Project consisted of "the replacement of lights in existing fixtures at 24 different TRRS locations, including the removal and replacement of emergency exit signs and the removal and replacement of emergency lighting/battery units." (*Id.* ¶ 12.)

In or around December 7, 2018, MJF submitted a bid to the TRBOE for the Project. (*Id.* ¶¶ 36-37.) "In preparing its bid for the Project. Plaintiff relied upon the Project

---

[1] For the purposes of a motion to dismiss, the Court accepts as true and summarizes the factual allegations of the Complaint. See *Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)*.

drawings and specifications prepared by the [TRBOE] and Maser." (*Id.* ¶ 38.) But according to Plaintiff, the drawings "materially misrepresented" certain conditions relating to the Project. (*Id.* ¶ 55.) Maser's drawings allegedly depicted [*3] "the locations of the lighting fixtures, which would receive new lights, as well as the locations of the emergency exit signs and emergency lighting/battery units which were to be replaced." (*Id.* ¶ 13.) Critically, however, Plaintiff alleges that the Project drawings "depicted the installation, by use of a symbol, in certain locations, of 'branch circuit wiring concealed in walls and above ceiling[s]' in only certain, limited locations in the Project drawings." (*Id.* ¶¶ 14-15.) Plaintiff alleges that "[b]y using the concealed branch wiring symbol in these few limited locations." and "because the concealed branch wiring symbol did not accompany the symbols for the new emergency exit signs and emergency lighting/battery units, the [TRBOE] and Maser represented to MJF and the other bidders, that concealed branch wiring was *not* needed in locations for the new emergency exit signs and the new emergency lighting/battery units." (*Id.* ¶ 16.)

Relatedly, Plaintiff alleges that on November 21, 2018, twelve days prior to the date for receipt of bids for the Project, the [TRBOE] and Maser issued a 'Question and Answer Document' concerning bidding for the Project. This Q&A Document was issued by Maser [*4] to all prospective bidders including [P]laintiff." (*Id.* ¶ 25.) The Q&A Document noted that not "all emergency exit fixtures, as called out on the drawings" were replacements of existing fixtures. (*Id.* ¶¶ 26-27.) Rather, some of the emergency exit fixtures, as called out in the drawings, were new and the "[c]ontractor [was] to price this item as shown on the drawings for each school." (*Id.* ¶ 27.) Plaintiff alleges that the answer to this question implied "that only *some* of the exit signs and emergency lighting/battery units were new. meaning that they were not replacements." (*Id.* ¶ 30.) Furthermore. Plaintiff maintains that the other implication of the above Q&A answer was that "'replacements' were in the same location as pre-existing emergency exit signs and emergency lighting/battery units in the schools." (*Id.* ¶ 32.) According to Plaintiff, the TRBOE and Maser

> could have easily provided Plaintiff and the other bidders with a complete and comprehensive list and location of all exit signs and emergency lighting/battery units which were 'new' (meaning that concealed branch wiring was needed) and all exit signs and emergency [lighting/battery units] which were 'replacements' of pre-existing [*5] [fixtures] (meaning that no concealed branch wiring was needed).

*Id.* ¶ 34.) Plaintiff maintains that "in preparing its bid for the Project. Plaintiff ... relied upon the answer[s] . . . in the Q&A Document." (*Id.* ¶ 38.)

Ultimately, "Plaintiff was the low bidder for 17 of the locations included in the Project." (*Id.* ¶ 40.) In July 2019, however, "soon after commencement of its work under the Contract, Plaintiff informed the [TRBOE] and Maser that Plaintiff was performing additional and unanticipated work on the Project consisting variously of the installation of concealed branch circuit wiring between the 'new' exit signs and 'new' emergency lighting/battery units (the 'Additional Work')." (*Id.* ¶ 42.) Plaintiff reports, by way of one example, "at Beachwood Elementary School, one of the 17 locations included in the Contract, there were 191 'new' 'emergency' fixtures, whereas there were only a small number of pre-existing fixtures to be removed. The situation at Beachwood was replicated at the remaining 16 locations covered by the Contract." (*Id.* ¶ 44.) Although Plaintiff reports attempting to negotiate additional compensation for the Additional Work and clarifications of the scope of its [*6] work, Plaintiff alleges that the negotiations have not produced additional compensation. (*Id.* ¶¶ 45-52.)

Plaintiff filed this action on June 16, 2020. (ECF No. 1.) The Complaint alleges breach of contract, fraudulent inducement, unjust enrichment, and quantum meruit claims against TRBOE. (*Id.* ¶¶ 53-76.) Plaintiff brings a single negligent misrepresentation claim against Maser. (*Id.* ¶¶ 77-88.) In the Motion now before the Court, Maser moves to dismiss Plaintiff's negligent misrepresentation claim.[2]

## II. LEGAL STANDARD

District courts undertake a three-part analysis when considering a motion to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. *Malleus v. George, 641 F.3d 560. 563 (3d Cir. 2011)*. "First. the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal, 556 U.S. 662. 675, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009))* (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)* (quotation omitted). In doing so, the court

---

[2] TRBOE has answered the Complaint. (ECF No. 13.)

Joseph Petrillo

is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal, 556 U.S. at 678* (citing *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). "[M]ere restatements of the elements of [a] claim[] ... are not entitled to the assumption of truth." [*7] *Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011)* (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler, 578 F.3d at 211* (quoting *Iqbal, 556 U.S. at 679*). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005)* (citation omitted).

"*Rule 12* prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim . . . and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kinzbugwe v. United States, No. 12-7940, 2014 U.S. Dist. LEXIS 164226, 2014 WL 6667959*. at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)* (emphasis omitted) (internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. See *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)* ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation omitted)).

## III. DISCUSSION

### A. Choice of Law

As a preliminary matter, [*8] the Court notes that both parties appear to assume that Plaintiff's claims are governed by New Jersey law. (*See generally* Maser's Moving Br., ECF No. 7; Pl.'s Opp'n Br., ECF No. 12.) "A federal court sitting in diversity must apply the choice of law rules of the forum state. Thus, New Jersey choice of law principles govern the choice of law in this case." *Dynalectric Co. v. Westinghouse Elec. Corp., 803 F. Supp. 985.988 (D.N.J. 1992)* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1940))*. Here, the Plaintiff is domiciled in Pennsylvania, while Maser is domiciled in New Jersey. "Even assuming that there is a conflict between Pennsylvania and New Jersey law ... [the] contacts with New Jersey clearly predominate in this litigation," and "New Jersey law applies to this case." *Dynalectric Co., 803 F. Supp. at 988-89*.

### B. MJF Raises a Valid Claim for Negligent Misrepresentation

MJF raises a colorable claim of negligent misrepresentation. Negligence "has four elements: '(1) [a] duty of care, (2) [a] breach of [that] duty, (3) proximate cause, and (4) actual damages[.]'" *Shtutman v. Carr, No. A-1093-15T1, 2017 N.J. Super. Unpub. LEXIS 2507, 2017 WL 4402045, at *10 (N.J. Super. Ct. App. Div. Oct. 4, 2017)* (quoting *Polzo v. Cnty. of Essex, 196 N.J. 569, 584, 960 A.2d 375 (2008))* (alterations in original). Where the alleged negligence also involves misrepresentation, the plaintiff must plead "an incorrect statement, negligently made and justifiably relied on ...[which] may be the basis for recovery of damages for economic [*9] loss ... sustained as a consequence of that reliance.'" *Kaufman v. i-Stat Corp., 165 N.J. 94, 109, 754 A.2d 1188 (2000)* (citing *H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 461 A.2d 138, 142-43 (N.J. 1983))*; *Shtutman, 2017 N.J. Super. Unpub. LEXIS 2507, 2017 WL 4402045, at *10*.

The New Jersey Supreme Court 'has relied on the Restatement's negligent misrepresentation section' in establishing its negligent misrepresentation doctrine. *Shtutman, 2017 N.J. Super. Unpub. LEXIS 2507, 2017 WL 4402045, at *8*. *Section 552 of the Restatement* "imposes on professionals and other business people a duty to avoid negligently providing false information, including to non-clients." *Id.* The Second Restatement provides the following understanding of negligent misrepresentation in the context of the duties owed by professionals and other businesses people:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Shtutman, 2017 N.J. Super. Unpub. LEXIS 2507, 2017 WL 4402045, at *9 (quoting Restatement (Second) of Torts, § 552 (1977)). Importantly, the liability contemplated by the Restatement is limited to loss suffered "by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information [*10] or knows that the recipient intends to supply it- and "through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends." Id. (quoting Restatement (Second) of Torts, § 552 (1977)). Relatedly, "lack of privity has been held not to bar the liability of an independent contractor engaged to perform services for his negligent nonfeasance." H. Rosenblum, 461 A.2d at 144. "The professional's 'duty is defined not by the contractual relationship between the parties but by considerations of foreseeability and fairness.'" Shtutman, 2017 N.J. Super. Unpub. LEXIS 2507, 2017 WL 4402045, at *8 (quoting Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc., 135 N.J. 182, 638 A.2d 1288, 1295 (N.J. 1994)). With respect to the "justifiable reliance" element of negligent misrepresentation, "[r]eliance is ordinarily not justifiable if the misrepresentation ... is mere puffing, or states an opinion or judgment of one without specialized knowledge and that does not imply assertions of fact; [or] predicts some future course of events over which the defendant has little or no control[.]" 2017 N.J. Super. Unpub. LEXIS 2507, [WL] at *10. (quoting Dobbs, et al., 3 The Law of Torts, § 672 at 669, § 676 at 682 (2d ed. 2011)).

Here, the Court finds that Plaintiff has adequately pled a negligent misrepresentation claim against Maser. According to the Complaint, Maser was aware that [its] Project drawings and specifications would be reviewed [*11] and relied upon by prospective bidders to perform the work necessary to construct the Project." (Compl. ¶ 20.) Those drawings and specifications were "properly and reasonably relied upon" by Plaintiff notwithstanding certain alleged "material misrepresentation[s]." (Compl. ¶¶ 21, 28, 55, 56, 84.) Courts have allowed negligent misrepresentation claims such as these to survive defendant design professionals' motions to dismiss even where the parties lack privity of contract. See., e.g., Bedwell Co. v. Camden Cnty. Improv. Auth., No. 14-1531, 2014 U.S. Dist. LEXIS 95510, 2014 WL 3499581, at *4-5 (D.N.J. July 14, 2014) (denying a motion to dismiss negligent misrepresentation claims against a design professional where the plaintiff alleged that "an incorrect statement [was] negligently made, justifiably relied upon. and result[ed] in economic injury"); Conforti & Eisele, Inc. v. John C. Morris Assocs., 175 N.J. Super. 341, 418 A.2d 1290, 1291 (N.J. Super. Ct. 1980) (finding that "a design professional [is] answerable in tort to a contractor who sustains economic damages as a result of the negligence of the design professional in the absence of privity of contract"), aff'd, 199 N.J. Super. 498, 489 A.2d 1233 (N.J. Super. Ct. App. Div. 1985).

## C. The Economic Loss Doctrine Bars Plaintiff's Claim

Even if Plaintiff has adequately pled a claim for negligent misrepresentation, Maser argues that the claim is barred by New Jersey's economic loss doctrine. The economic loss doctrine requires that when a "party [*12] has another means of redress against the alleged tortfeasor," e.g., a breach of contract claim, "that party may not assert the identical claims for identical damages under tort theories." Dynalectric, 803 F. Supp. at 991. Under the economic loss doctrine, "when a complaint sounds in tort, but the relationship between the parties is defined by the contract between them, contract principles will generally apply." Horizon v. New Jersey Schs. Constr. Corp., 2011 N.J. Super. Unpub. LEXIS 2271, 2011 WL 3687451, at *5 (N.J. Super. Ct. App. Div. Aug. 24, 2011) (per curiam) (citing Dean v. Barrett Homes, Inc., 204 N.J. 286, 8 A.3d 766 (N.J. 2010)). "Therefore, if a party is able to pursue remedies in another way, for instance, if the claims can be characterized as contract claims[.] ... it may not supplement its claims with allegations of negligence." Dynalectric, 803 F. Supp. at 990-91.

Courts interpreting New Jersey's economic loss doctrine appear to disagree on whether the economic loss doctrine bars tort claims between plaintiffs and defendants who lack privity of contract. The District of New Jersey, for example, has held that New Jersey's economic loss doctrine only applies to bar certain tort claims *between parties to a contract*. Stated another way, the absence of a contract between a plaintiff and defendant in a negligence suit precludes the application of the economic loss doctrine." SRC Constr. Corp. of Monroe v. Atl. City Hous. Auth., 935 F. Supp. 2d 796, 799 (D.N.J. 2013) (emphasis in the original); *see also* Bedwell, 2014 U.S. Dist. LEXIS 95510, 2014 WL 3499581, at *3 (holding that "[plaintiff] and [*13] [defendant] did not enter into a written contract, and no oral agreement is alleged in the complaint. Consequently, the obligations of the parties are defined by tort law, unaffected by third-party agreements. And New Jersey tort law holds that the economic loss

doctrine does not preclude [plaintiff's] instant claims.").

On the other hand, New Jersey's Appellate Division has held it is generally accepted that the economic loss doctrine *does not* require the parties to be in privity of contract." Schenker, Inc. v. Expeditors Int'l of Wash., Inc., No. A-3555-14T1, 2016 N.J. Super. Unpub. LEXIS 1535, 2016 WL 3563187, at *2 (N.J. Super. Ct. App. Div. July 1, 2016) (citing BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 72 (Colo. 2004)). In *Schenker*, the Appellate Division held that although the plaintiff and the defendant lacked privity of contract, each had "entered into two independent" but "interrelated" contracts to transport the same goods. 2016 N.J. Super. Unpub. LEXIS 1535, [WL] at *2. The Appellate Division found that the plaintiff had a breach of contract claim against a third party for its damages. *Id.* ("[T]he contract between [the third-party] and [plaintiff] made the former responsible for all charges, including in particular all expenses, costs, detention, and demurrage charges .... [Plaintiff] chose not to pursue a contract action against [the third-party]; instead, it elected to [*14] sue [defendant] in tort.") Although there was no privity of contract between the parties, the Appellate Division held that the plaintiff was not without a remedy for its damages because it could sue the third party for breach of contract. Accordingly, the Appellate Division held that the economic loss doctrine applied to bar plaintiff's claims. 2016 N.J. Super. Unpub. LEXIS 1535, [WL] at *3. Relying on *Schenker* and other New Jersey state court cases that Defendant argues are similar. Defendant asserts that the "application of New Jersey state court authority leads to the inescapable conclusion that [P]laintiff's negligence claim against Maser is precluded by the economic loss doctrine." (Maser's Moving Br. 12, ECF No. 7-1; *see also id.* at 10-11 (citing Spectraserv, Inc. v. Middlesex Cnty., 2013 N.J. Super. Unpub. Lexis 2173 (N.J. Super. Ct. July 1, 2016); Horizon, 2011 N.J. Super. Unpub. LEXIS 2271, 2011 WL 3687451, at *1).)

As Maser correctly observes, "[t]he role of any federal court sitting in diversity is to predict what the forum state's highest court would rule on the matter at hand." Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co., 226 F. Supp. 2d 557, 562 n.1 (D.N.J. 2002). "In making such a prediction, we should consider relevant state precedents, analogous decisions . . . and any other reliable data tending convincingly to show how the highest court in the state would resolve the issue at hand." Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221 (3d Cir. 2008).

After carefully reviewing the applicable caselaw, the Court believes that the New Jersey Supreme [*15] Court would invoke the economic loss doctrine to bar Plaintiff's negligent misrepresentation claim. The New Jersey Supreme Court has held that "there are various exceptions to the economic loss rule, and [has] recognized an exception when there is a special relationship between the tortfeasor and the plaintiff." Horizon, 2011 N.J. Super. Unpub. LEXIS 2271, 2011 WL 3687451, at *7 (citing People Express Airlines, Inc. v. Con. Rail Corp., 100 N.J. 246, 495 A.2d 107, 112-13 (N.J. 1985)). Indeed, the New Jersey Supreme Court has held that claims against certain professionals who are not in privity with third-party plaintiffs are excepted from the economic loss rule. *See, e.g.,* H. Rosenblum, 461 A.2d at 138 (holding that auditors could be liable for damages stemming from "negligently conducted" financial audits relied upon by plaintiffs in the course of a transaction), *abrogation by statute recognized by* Petrillo v. Bachenberg, 139 N.J. 472, 655 A.2d 1354, 1360 (N.J. 1995) (noting that while an auditor's liability to third parties for negligent acts was limited by statute, the overriding statute, "however, does not affect the application of [Restatement] [S]ection 552 to other professionals"); Petrillo, 655 A.2d at 1360 (holding that "like certified public accountants or other professionals involved in commercial transactions, a lawyer's duty may run to third parties who foreseeably rely on the lawyer's opinion or other legal services").

"Courts have justified their finding [*16] of liability in these negligence cases based on notions of a special relationship between the negligent tortfeasors and the foreseeable plaintiffs who relied on the quality of defendants' work or services, to their detriment." People Express, 495 A.2d at 112 (finding that "[o]ne group of exceptions" to the economic loss doctrine "is based on the 'special relationship' between the tortfeasor and the individual or business deprived of economic expectations"). "Courts have found it fair and just in all of these exceptional cases to impose liability on defendants who, by virtue of their special activities, professional training or other unique preparation for their work, had particular knowledge or reason to know that others ... would be economically harmed" by defendants' negligent misrepresentations. People Express Airlines, 495 A.2d at 113; *see, e.g.,* H. Rosenblum, 461 A.2d at 138; Petrillo, 655 A.2d at 1360.

But the New Jersey Supreme Court's holdings in *Rosenblum* and *Petrillo* are each distinguishable from the case at bar. In *H. Rosenblum*, plaintiffs sold their business to a company in exchange for stock in the

purchasing company. *H. Rosenblum, 93 N.J. 324, 461 A.2d 138 at 140*. The stock ultimately proved to be worthless. *Id.* The New Jersey Supreme Court allowed the plaintiffs to sue professionals who negligently audited the purchasing company's fraudulent [*17] financial statements. *Id.* Those audits had been relied upon by plaintiffs in the course of the transaction. *Id. at 141*. The New Jersey Supreme court permitted the suit even though the parties were not in privity. *Id. at 153*. As the Appellate Division noted in an earlier opinion, however, the case against the auditors arose because the purchasing company ultimately responsible for the fraudulent financial statements went bankrupt. *H. Rosenblum, Inc. v. Adler, 183 N.J. Super. 417, 444 A.2d 66, 68 (N.J. Super. Ct. App. Div. 1982)* ("Giant's bankruptcy has resulted in claims against defendant [auditors] . . . in eight lawsuits."). Unlike in *H. Rosenblum*, in the case at bar, there is no allegation that Plaintiffs lack a remedy against TRBOE, the entity with whom they were in privity.

In *Petrillo*, the New Jersey Supreme Court held that an attorney could be liable for negligent misrepresentations made to a non-client during a transaction. *655 A.2d at 1361*. In its opinion, the court noted that the roles and relationships of the parties color our assessment. In making that assessment, we cannot ignore the fact that Herrigel is an attorney who, in connection with his client's efforts to sell the property. provided [a misleading] report to a real estate broker." *Id.* Here, with respect to Maser's alleged negligent misrepresentations, [*18] the Court has no similar concerns about "the roles and relationships of the parties" such as the ethical duties of attorneys to non-clients.

Ultimately, the Court agrees with Maser that the New Jersey Supreme Court is more likely to follow the Appellate Division's decisions in *Schenker*, *Spectraserv*, and *Horizon* rather than Judge Irenas's opinion in *SRC* that "the potential availability of an additional route to relief for [a plaintiff] ... is not a persuasive reason to bar its negligence claim." *SRC, 935 F. Supp. at 801*; *see also Bedwell, 2014 U.S. Dist. LEXIS 95510, 2014 WL 3499581, at *3*. The Complaint alleges that MJF has pursued change orders and other contractual remedies from TRBOE in order to receive compensation for the Additional Work. (Compl. ¶¶ 42-52; *see also* Certif. of Counsel ¶ 14 (noting that "Section 6.1 of the General Conditions [to the Contract] specifically includes change orders within the scope of contract documents defining the rights and obligations of the parties to the contract." (citing General Conditions to the Contract § 6.1, Ex. C to Certif. of Counsel, ECF No. 7-2)).) While MJF seeks negligence remedies against Maser for the Additional Work, these remedies can plainly be characterized as contractual remedies against TRBOE. Once again, "if a party is able [*19] to pursue remedies in another way, for instance, if the claims can be characterized as contract claims ... it may not supplement its claims with allegations of negligence." *Dynalectric, 803 F. Supp. at 991*. Under these facts, it is entirely consistent with the economic loss doctrine to bar MJF's claims against Maser.

## IV. CONCLUSION

For the reasons set forth above, the Motion is granted. The Court will enter an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**

**UNITED STATES DISTRICT JUDGE**

## ORDER

This matter comes before the Court upon Defendant Maser Consulting, P.A.'s ("Maser" or "Defendant") Motion to Dismiss Plaintiff MJF Electrical Contracting. Inc.'s ("MJF" or "Plaintiff") Complaint. (ECF No. 7.) Plaintiff opposed (ECF No. 12). and Maser replied (ECF No. 14). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to *Local Civil Rule 78.1*.

**IT IS** on this 26th day of March 2021 **ORDERED** that

1. Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED**.

/s/ Michael A. Shipp

**MICHAEL A. SHIPP**

**UNITED STATES DISTRICT JUDGE**

---

End of Document

Joseph Petrillo