**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SYMBIONT SCIENCE, ENGINEERING AND CONSTRUCTION, INC., et al., : Plaintiffs, : vs. : | Case No. 3:22-cv-04905-MAS-LHG |
| GROUND IMPROVEMENT SERVICES, INC., et al., : Defendants. : | |
| GROUND IMPROVEMENT SERVICES, INC., et al., : Third-Party Plaintiffs, : vs. : | |
| GEOPIER FOUNDATION COMPANY, INC., et al., : Third-Party Defendants. : | |

**THE OPPOSITION OF DEFENDANTS/THIRD-PARTY PLAINTIFFS, GROUND IMPROVEMENT SERVICES, INC. AND GEOSTRUCTURES, INC. TO THIRD-PARTY DEFENDANT GZA GEOENVIRONMENTAL, INC.'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINT**

On the Brief:

John P. Morgenstern (Attorney ID: 019011997)
Michael T. Sweeney (Attorney ID: 020791992)
Gavin Fung (Attorney ID: 098192014)

**O'Hagan Meyer, PLLC**
1717 Arch Street, Suite 3910
Philadelphia, PA 19103
215-461-3300
*Attorneys for Defendants/Third-Party Plaintiffs,*
*Ground Improvement Services, Inc. and*
*GeoStructures, Inc. d/b/a GeoStructures of*
*Virginia, Inc.*

Dated: February 27, 2023

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

I.    PRELIMINARY STATEMENT ..........................................................................1

II.   RELEVANT FACTS ...........................................................................................2

III.  ARGUMENTS.....................................................................................................4

      A.  Standard Governing Motion to Dismiss ...................................................4

      B.  No Contractual Relationship is Required for Third-Party Plaintiffs to Assert
          a Professional Malpractice Claim Against GZA ..................................5

      C.  The Economic Loss Doctrine Does Not Bar Third-Party Plaintiffs' Claims
          Against GZA.........................................................................................8

            i.  The Economic Loss Doctrine Does Not Apply Because There Is No
                Privity Between the Parties .............................................................8

            ii. The Economic Loss Doctrine Does Not Apply Because GZA has an
                Independent Duty to Perform Its Work of Soil Investigation and
                Foundation Preparations Recommendations Up to A Standard of Care
                Possessed by Members of The Profession in Good Standing .............12

      D.  Third-Party Plaintiffs Have Alleged Sufficient Factual Allegations in Support
          of Third Cause of Action for Negligent Misrepresentation ..........................14

      E.  Third-Party Plaintiffs Asserted Valid Claims for Contribution and/or
          Indemnity...........................................................................................17

IV.   CONCLUSION ................................................................................................20

## **TABLE OF AUTHORITIES**

### Cases

Alder's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55 (1960) ----------------------------------- 19

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ----------------------------------------------------------- 4, 5

Atlantic Corporation v. Twombly, 550 U.S. 544 (2007)----------------------------------------------- 4, 5

Bedwell Co. v. Camden Cnty. Improvement Auth., 2014 WL 3499581 (D.N.J. July 14, 2014) -- 9

Blazovic v. Andrich, 124 N.J. 90, 105 (1991)------------------------------------------------------- 18

Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, LLC, 2006 WL 1982882 (D.N.J.

    July 13, 2006) ----------------------------------------------------------------------------------- 6, 7, 8

Borough of Edgewater v. Waterside Constr., LLC, 2021 WL 4059850 (D.N.J. Sept. 3, 2021) --13

BRG Harrison Lofts Urban Renewal LLC v. Gen. Elec. Co., 2020 WL 4932755 (D.N.J. Aug. 24,

    2020) ------------------------------------------------------------------------------------------------- 18

Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548 (1980) ----------------------------------- 19

Carter Lincoln–Mercury Inc., Leasing Division v. EMAR Group, Inc., 135 N.J. 182 (1993) ----- 6

Carvalho v. Toll Brothers and Developers, 143 N.J. 565 (1996) ------------------------------------ 5, 6

Chao v. New Jersey Licensed Beverage Ass'n, Inc., 461 F. Supp. 2d 303 (D.N.J. 2006) ---------18

Conforti & Eisele, Inc. v. John C. Morris Ass'ns, 175 N.J. Super. 341 (Law.Div.1980), aff'd, 199

    N.J. Super. 498 (App. Div. 1985) -------------------------------------------------------------------9, 12

DeAngelo v. Exxon Corp., 1999 WL 34014043 (N.J. Super. App. Div. Oct. 15, 1999) ----- 16, 17

Dynalectric Co. v. Westinghouse Elec. Corp., 803 F. Supp. 985 (D.N.J. 1992)--------------- 11, 12

Ford Motor Co. v. Edgewood Properties, Inc., 2012 WL 4172133 (D.N.J. Aug. 31, 2012) ---7, 13

Grand St. Artists v. Gen. Elec. Co., 19 F. Supp. 2d 242 (D.N.J. 1998)-------------------------7, 17

Grant Indus., Inc. v. Isaacman, 2022 WL 2358422 (D.N.J. June 30, 2022)------------------------- 9

Hedges v. United States, 404 F.3d 744 (3d Cir.2005)------------------------------------------------- 4

Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 966 A.2d 1102 (N.J. Super. App. Div. 2009) -----------------------------------------------------------------------------------------------20

Horizon Grp. of New England, Inc. v. New Jersey Sch. Const. Corp., 2011 WL 3687451 (N.J. Super. App. Div. Aug. 24, 2011) --------------------------------------------------------------------- 11, 12

Juliano v. Gaston, 187 N.J. Super. 491 (App. Div. 1982) ----------------------------------------- 10

Levine v. Wiss & Co., 97 N.J. 242 (1984)-------------------------------------------------------------- 5

Magic Reimbursements LLC v. T-Mobile USA, Inc., 2022 WL 4550647 (D.N.J. Sept. 29, 2022) ------------------------------------------------------------------------------------------------------------- 9

MJF Elec. Contracting, Inc. v. Toms River Bd. of Educ., 2021 WL 1168962 (D.N.J. Mar. 26, 2021) ----------------------------------------------------------------------------- 10, 11, 12, 14

Napolitano v. Haven Homes Inc., 2012 WL 253175 (D.N.J. Jan. 26, 2012)------------------- 18, 19

People Exp. Airlines, Inc. v. Consol. Rail Corp., 100 N.J. 246 (1985) ------------------------- 12, 13

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir.2008) ------------------------------------- 4

Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC, 2013 WL 5467093 (D.N.J. Sept. 30, 2013)--------------------------------------------------------------------------------------------17

RGD Holding Co., LLC v. Perkins, 2022 WL 597055 (D.N.J. Feb. 28, 2022)--------------------20

Saltiel v. GSI Consultants, Inc., 170 N.J. 297 (2002) ----------------------------------------------- 8

Smith v. Lindemann, 2011 WL 3235682 (D.N.J. July 28, 2011)------------------------------------19

Snyder v. American Association of Blood Banks, 144 N.J. 269 (1996) ------------------------------ 6

SRC Const. Corp. of Monroe v. Atl. City Hous. Auth., 935 F. Supp. 2d 796 (D.N.J. 2013) --9, 10

Svigals v. Lourdes Imaging Associates, P.A., 2018 WL 6178863 (D.N.J. Nov. 27, 2018) -------- 9

Sykes v. Propane Power Corp., 224 N.J. Super. 686 (App. Div. 1988)----------------------------- 5

Szaloczy v. KONE Elevators & Escalators, 2021 WL 2680185 (D.N.J. June 29, 2021)----------20

Trump Hotels & Casino Resorts, Inc. v. Mirag e Resorts Inc., 140 F.3d 478 (3d Cir.1998)------- 4

Umland v. PLANCO Fin. Serv., Inc., 542 F.3d 59 (3d Cir. 2008) ------------------------------------- 4

Warth v. Seldin, 422 U.S. 490 (1975)------------------------------------------------------------------------ 4

## STATUTES

N.J.S.A. 2A:15–5.3 --------------------------------------------------------------------------------------------18

N.J.S.A. 2A:53A–1 --------------------------------------------------------------------------------------------18

N.J.S.A. 2A:53A–2 --------------------------------------------------------------------------------------------18

N.J.S.A. 2A:53A–26--------------------------------------------------------------------------------------------- 5

N.J.S.A. 2A:53A–3 --------------------------------------------------------------------------------------------18

N.J.S.A. 45:8–27 ------------------------------------------------------------------------------------------------- 5

N.J.S.A. 45:8-36 ------------------------------------------------------------------------------------------------- 5

## REGULATIONS

N.J.A.C. 13:40-1.1, et seq.------------------------------------------------------------------------------------- 5

Defendants/Third-Party Plaintiffs Ground Improvement Services, Inc. ("GIS") and GeoStructures, Inc., d/b/a GeoStructures of Virginia, Inc.[1] ("GeoStructures," collectively with GIS, "Third-Party Plaintiffs"), by and through their undersigned counsel, submit the following Brief in Opposition to Third-Party Defendant GZA GeoEnvironmental, Inc.'s ("GZA") Motion to Dismiss the Third-Party Complaint.

## I.   <u>PRELIMINARY STATEMENT</u>

GZA's Motion to Dismiss should be denied because, when the facts alleged are viewed in the light most favorable to Third-Party Plaintiffs with all reasonable inferences drawn, Third-Party Plaintiffs adequately pled causes of actions for professional negligence, negligent misrepresentation, contribution and indemnity against GZA.

GZA's argument that it does not owe any duties to the Third-Party Plaintiffs because "As an engineer, GZA owe no duty to third-parties outside of its contractual responsibilities…" is plainly against New Jersey law.  Professional engineers, such as GZA, owe the duty to exercise the skill and knowledge normally possessed by members of the profession to all those foreseeably may be harmed by the engineer's breach of such a duty.  Third-Party Plaintiffs pled that it was foreseeable that they, as subsequent engineer and contractor, would reasonably rely upon the reports issued by GZA pertaining to soil investigation and recommendations for the purpose of designing and constructing the four tanks for Trenton Biogas.  Moreover, the economic loss doctrine does not apply because (1) there is no privity between Third-Party Plaintiffs and GZA, (2) GZA owe Third-Party Plaintiffs an independent duty to avoid the risk of injuries because it is particularly foreseeable that Third-Party Plaintiffs would rely on GZA's reports and be harmed by GZA's breach of its duty of care, and (3) the alleged damage arises from physical harm.

---

[1] Plaintiffs filed suit against GeoStructures, Inc. of Virginia, Inc., a registered trade name of GeoStructures, Inc.

GZA's argument for the dismissal of the Third-Party Plaintiffs' cause of action for negligent misrepresentation also fails because the purpose of the GZA reports was for the design and construction of the project for Trenton Biogas and it was reasonable that Third-Party Plaintiffs would rely on the investigation, testing, and recommendations provided by GZA for this project.

Moreover, Third-Party Plaintiffs have asserted valid claims for contribution under the New Jersey Joint Tortfeasor Contribution Law and Comparative Negligence Act and indemnity because the alleged injury that is the subject of the Complaint and Third-Party Complaint is one and the same and because liability imposed upon Third-Party Plaintiff would be constructive, technical imputed or vicarious due to the acts of GZA.

For these reasons, set forth more fully below, GZA's Motion to Dismiss the Third-Party Complaint against it should be dismissed with prejudice.

## II.   <u>RELEVANT FACTS</u>

This is, in part, a subrogation action filed by Plaintiffs, Symbiont Science, Engineering and Construction, Inc. ("Symbiont") and its two insurers, Zurich American Insurance Company ("Zurich") and American Guarantee and Liability Insurance Company ("AGLIC," and collectively with Symbiont and Zurich, the "Plaintiffs") against GIS and GeoStructures for alleged damages sustained by Symbiont in connection with a construction project.   <u>See</u> Second Amended Complaint, ECF No. 23.

Symbiont entered into a contract with Trenton Biogas, LLC ("Trenton Biogas") for the design and construction a biogas production facility in Trenton, New Jersey (the "Project").   <u>Id.</u> at ¶15.  The Project included the design and construction of four large tanks.  <u>Id.</u> at ¶¶ 18, 19.

GZA provided geotechnical services for the Project, including subsurface boring, installation of wells to monitor groundwater, laboratory testing of soils samples, and recommended

the suitable methods of construction for the foundations of the four tanks.  See Third Party Complaint, ECF No. 31, ¶¶ 15, 17, 18, and Exhibits A and B of the Third-Party Complaint, 11-69, 70-160.  GZA issued two reports, the first dated June 28, 2013, and the second dated January 5, 2018, detailing its investigation and recommendations for the Project.  Ibid.  GZA stated that "[t]he objective of our geotechnical services is to provide foundation design and related earth work recommendations for your planned construction."  See Exhibit A of Complaint, ECF No. 31, 12.

GZA's reports were part of a package of materials included in a bid package for construction of the Project.  See id. at ¶21, Exhibit C of Third-Party Complaint, 161-168.  In reliance of the investigation, testing, and recommendations detailed in the GZA reports for the Project, GIS submitted a Quotation/Contract No. 1 to Symbiont for design and construction services for the installation of foundation support for the tanks at the Project.  See id. at ¶19, Exhibit C of Third-Party Complaint, ECF No. 31, 161-168.  GIS and Symbiont then entered into a Subconsultant Professional Services Agreement, incorporating the aforementioned Quotation.  See id. at ¶22, Exhibit D of the Third-Party Complaint, ECF No. 31, 169-178.

Third-Party Plaintiffs later learned that GZA misstated the sulfate content of the soil and incorrectly classified the testing result as "negligible" instead of "moderate" under ASTM D516.  See Exhibit A of Third-Party Complaint, ECF No. 31, 17, and Exhibit B of Third-Party Complaint, ECF No. 31, 77-78.  See also Declaration of Larry Moore, P.E., attached as Exhibit "A".  Had GZA not misrepresented such condition, additional criteria regarding cement type and minimum strength requirements would have been triggered.  Id.  Third-party Plaintiffs reasonably relied upon GZA's misrepresentation of the site condition in designing and constructing the foundation support.

### III.   ARGUMENT

#### A.   Standard Governing Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. Hedges v. United States, 404 F.3d 744, 750 (3d Cir.2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the non-moving party. See Trump Hotels & Casino Resorts, Inc. v. Mirag e Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998), citing Warth v. Seldin, 422 U.S. 490, 501 (1975). A complaint need not contain detailed factual allegations, only to provide the grounds of the claims beyond labels and conclusions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, the factual allegations need only to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." See id. at 570; see also Umland v. PLANCO Fin. Serv., Inc., 542 F.3d 59, 64 (3d Cir. 2008).

As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'" Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir.2008) (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 556 (2007)). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 663–64 (2009). A claim has "facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." Id. at 678.

Here, the allegations of the Third-Party Complaint set forth sufficient facts to satisfy the "facial plausibility" standard and GZA's Motion to Dismiss should be denied.

### B. No Contractual Relationship is Required for Third-Party Plaintiffs to Assert a Professional Malpractice Claim Against GZA

Puzzlingly, and contrary to well settled New Jersey law, Statutes, and Regulations, GZA argues that "As an engineer, GZA owed no duty to third-parties outside of its contractual responsibilities to [Trenton Biogas]." The law is well-settled that "[o]ne who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession in good standing in similar communities." Sykes v. Propane Power Corp., 224 N.J. Super. 686, 691–92 (App. Div. 1988), quoting Levine v. Wiss & Co., 97 N.J. 242, 246 (1984). Moreover, New Jersey Legislature has provided certain thresholds of competency and accountability to the public for engineers, such as GZA. Under N.J.S.A. 45:8–27, a license to practice professional engineering is required "[i]n order to safeguard life, health and property, and promote the public welfare...." Any "[p]lans, specifications, plats and reports" issued by the professional engineer must bear an authorized seal of licensure. N.J.S.A. 45:8-36. Moreover, the New Jersey Administrative Code promulgated certain standards and requirements imposed upon professional engineers. See N.J.A.C. 13:40-1.1, et seq. Engineers are considered professionals in the context of malpractice suits. See N.J.S.A. 2A:53A–26.

In New Jersey, the existence of a duty is a matter of law decided by the court. See Carvalho v. Toll Brothers and Developers, 143 N.J. 565, 572 (1996). The "question of whether a duty exists

in a particular case is a question of fairness and policy that implicates many factors."  Id.; see

Snyder v. American Association of Blood Banks, 144 N.J. 269, 292 (1996).  The foreseeability of

injury to others from defendant's conduct a "significant consideration."  See Carvalho, supra.  The

"foreseeability" factor does not, by itself establish the existence of a duty, but it is a "crucial

element in determining whether imposition of duty ... is appropriate."  See id. at 573.

> Once the foreseeability of an injured party is established, ...
> considerations of fairness and policy govern whether the imposition
> of a duty is warranted.  The assessment of fairness and policy
> involves identifying, weighing, and balancing several factors—the
> relationship of the parties, the nature of the attendant risk, the
> opportunity and ability to exercise care, and the public interest in the
> proposed solution.
>
> The determination of the foreseeability of harm and considerations
> of fairness and policy are connected.  The concept of foreseeability
> subsumes many of the concerns we acknowledge as relevant to the
> imposition of a duty: the relationship between the plaintiff and the
> tortfeasor, the nature of the risk, and the ability and opportunity to
> exercise care.  Nevertheless, the foreseeability of harm is susceptible
> to objective analysis, while the resolution of fairness and policy is a
> much less certain determination.  Whereas the magnitude and
> likelihood of potential harm are objectively determinable, the
> propriety of imposing a duty of care is not.  Although in many cases
> a duty of care can arise simply from the determination of the
> foreseeability of harm, usually more is needed to find such a duty,
> that "more" being the value judgment, based on an analysis of public
> policy, that the actor owed the injured party a duty of reasonable
> care.

Carvalho, 143 N.J. at 573 (internal quotation marks and citations omitted).  "That a plaintiff may

be found within a range of harm emanating from tortfeasor's activities is more significant than

whether the parties stand in a direct contractual relationship.  Lack of privity is no bar to recovery."

Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, LLC, 2006 WL 1982882, at *6

(D.N.J. July 13, 2006), citing Carter Lincoln–Mercury Inc., Leasing Division v. EMAR Group,

Inc., 135 N.J. 182 (1993).

New Jersey courts have held that engineers may be liable to non-contracting third parties when it was foreseeable that those non-contracting third parties would rely on the engineer's work. See e.g., Grand St. Artists v. Gen. Elec. Co., 19 F. Supp. 2d 242, 248 (D.N.J. 1998) (holding that an engineer who contracted with a former property owner owed a duty to non-contracting prospective purchasers to perform its work in conformance with a standard of care possessed by members of the profession in good standing); Bonnieview, supra, 2006 WL 1982882, at *7 (denying summary judgment holding that it may be foreseeable that it was foreseeable that subsequent purchaser of property would rely on assessment report of engineer who only contracted with prior owner when report was done in furtherance of future development and sale); Ford Motor Co. v. Edgewood Properties, Inc., 2012 WL 4172133, at *19 (D.N.J. Aug. 31, 2012) (holding that it was foreseeable that purchasers of contaminated concrete would rely on testing report by consultant who only contracted with seller).

Here, the Third-Party Complaint sufficiently allege facts, when viewed as true and all reasonable inferences drawn in favor of Third-party Plaintiffs, that GZA owed a duty to the Third-Party Defendants to perform its investigation, testing, and recommendation of the jobsite in conformance with a standard of care possessed by members of the profession in good standing. GZA contracted with Trenton Biogas for the investigation, testing and to provide recommendation for the foundation preparation and building of four large tanks.  In GZA's own words, "[t]he objective of our geotechnical services is to provide foundation design and related earthwork recommendations for your planned construction."  GZA issued reports detailing its soil investigation, testing results, and recommendations as to how to prepare the soil in furtherance of constructing those tanks.  It was certainly foreseeable that subsequent engineers and contractors, including Third-Party Plaintiffs, would rely on GZA's testing and recommendations when

designing and implementing their foundation work based on those very same testing results and recommendations for the foundation preparation when the purpose of GZA's work was for the ultimate construction of the Project.

GZA argues that because of a purported "exclusive use" provision in its reports for the Project, third-parties contractors performing work for the Project for Trenton Biogas cannot be considered to be someone who would be foreseeably harmed by its defective reports.  GZA's argument was specifically rejected by the Bonnieview Court.  See Bonnieview, supra, 2006 WL 1982882, at *7 (holding purported "exclusive use" provision in engineer's report did not eliminate foreseeability of non-contracting parties' reliance upon the report when the report was for assessment of a property in furtherance of future development and sale).  As stated by GZA, the purpose of the reports was for preparing building of tanks at the Project and for others working on Trenton Biogas's behalf to design and build the tanks.  Accordingly, the Third-Party Complaint has alleged sufficient facts that GZA owes Third-Party Plaintiffs a duty of professional care and GZA's Motion to Dismiss Count I of the Third-Party Complaint on this basis should be denied.

## C.  **The Economic Loss Doctrine Does Not Bar Third-Party Plaintiffs' Claims Against GZA**

### i.  **The Economic Loss Doctrine Does Not Apply Because There Is No Privity Between the Parties**

The purpose of the economic loss doctrine is to maintain the "critical" "distinction between tort and contract actions" by precluding a party's tort action when the claim (i) is brought in addition to a contract action, and (ii) does not stem from an independent duty of care.  Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 310 (2002).  This is important to bar tort claims where a plaintiff "simply [seeks] to enhance the benefit of the bargain she contracted for."  Id. at 315.  As a preliminary matter, the New Jersey Supreme Court has not opined on whether the existence of a

contract between the parties is a pre-requisite for a defendant to successfully assert the economic loss doctrine as a defense.  In the absence of such authority, District Courts have predicted that the New Jersey Supreme Court would require that the parties be in direct privity for the defendant to assert the defense of the economic loss doctrine.  See e.g., SRC Const. Corp. of Monroe v. Atl. City Hous. Auth., 935 F. Supp. 2d 796, 800–01 (D.N.J. 2013); Bedwell Co. v. Camden Cnty. Improvement Auth., 2014 WL 3499581, at *3 (D.N.J. July 14, 2014) (quoting Conforti & Eisele, Inc. v. John C. Morris Ass'ns, 175 N.J. Super. 341, 344 (Law.Div.1980), aff'd, 199 N.J. Super. 498 (App. Div. 1985), "To deny this plaintiff his day in court would, in effect, be condoning a design professional's right to do his job negligently but with impunity as far as innocent third parties who suffer economic loss.  Public policy dictates that this should not be the law.  Design professionals, as have other professionals, should be held to a higher standard."  Holding that the economic loss doctrine did not bar contractor's claim against the architect because the two were not in privity with each other); Svigals v. Lourdes Imaging Associates, P.A., 2018 WL 6178863, at *4 (D.N.J. Nov. 27, 2018) (denying motion to dismiss based on the economic loss doctrine because, inter alia, "[t]he purpose of the economic loss doctrine … is to prohibit plaintiffs from using tort law to alter contractual remedies or to replace a breach of contract action. That purpose is not implicated where parties are not in contractual privity"); Grant Indus., Inc. v. Isaacman, 2022 WL 2358422, at *14–15 (D.N.J. June 30, 2022) (holding that the purposes of the doctrine are not implicated as to parties who did not have a contract with the defendant and denied motion to dismiss as to those plaintiffs); Magic Reimbursements LLC v. T-Mobile USA, Inc., 2022 WL 4550647, at *6, n.3 (D.N.J. Sept. 29, 2022) (holding that economic loss doctrine did not apply due to the lack of contractual privity).

In SRC Construction, a contractor brought a negligence and breach of warranty action

against an architectural firm with whom it did not have a contract.  935 F. Supp. 2d at 797-798.

Both parties were hired, independently, by the developer, to build an assisted living facility.  Id. at

797.  The architectural firm, like GZA here, argued that the economic loss doctrine precluded the

contractor's negligence claim and required the firm to seek redress in contract against the

developer.  Id. at 798.  The Court found persuasive the Appellate Division's decision in Juliano v.

Gaston, 187 N.J. Super. 491, 496 (App. Div. 1982), where the Appellate Division held that the

lack of a contract between a homeowner did not preclude the homeowner's claim against a

subcontract with whom the homeowner did not contract and rejected the architectural firm's

argument.  Id. at 799.  The Court reasoned that the doctrine precluded negligence actions only

when the claimant and defendant had a contractual relationship themselves.  Ibid.  The existence

of a contract with a third party, such as a project developer, did not trigger application of the

doctrine.  Ibid.  Consequently, the Court found the "absence of a contract between" the architect

and contractor "preclude[d] the application of the economic loss doctrine."  Ibid.

Here, the Third-Party Complaint does not allege that there exist any contracts between the

Third-Party Plaintiffs and GZA.  There is no risk of the Third-Party Plaintiffs using tort law to

alter contractual remedies.  Third-Party Plaintiffs' professional negligence claim against GZA is

not being brought in addition to a breach of contract claim against GZA.  Therefore, the purpose

of the economic loss doctrine is not implicated and the Court should not apply it to bar Third-Party

Plaintiffs' claim against GZA.

The Court's decision in MJF Elec. Contracting, Inc. v. Toms River Bd. of Educ., 2021 WL

1168962 (D.N.J. Mar. 26, 2021) is readily distinguishable.  In MJF, a contractor hired by the Toms

River Board of Education brought suit against the Board of Education and an engineering firm

who provided drawings and specifications for a project because the drawings in the bid package,

including drawings prepared by the engineering firm, misrepresented the scope of work which caused the contractor to underbid the project. MJF Elec., 2021 WL 1168962, at *2. After failing to renegotiate for additional compensation for the additional work required for the project, the contractor brought suit against the Board of Education alleging causes of action for breach of contract, fraudulent inducement, unjust enrichment, and *quantum meruit*. Ibid. The contractor also sued the engineering firm for negligent misrepresentation. Ibid. The Court held that the contractor alleged a valid claim of negligent misrepresentation against the engineering firm but such claim was precluded by the economic loss doctrine. Id. at *4. The Court reasoned that the contractor "seeks negligence remedies against [the engineering firm] for the Additional Work, these remedies can plainly be characterized as contractual remedies against [the Board of Education]. Id. at *6.

Dynalectric Co. v. Westinghouse Elec. Corp., 803 F. Supp. 985 (D.N.J. 1992) is also inapplicable here because it involved a similar fact pattern as MJF where a contractor was suing its upstream contractor and owner for additional sums under its contract with the upstream contractor for additional work. Id. at 987. The Court applied the economic loss doctrine because the contractor's claim against the non-contracting owner duplicated the contractual claim brought against the upstream contractor. Id. at 993.

Likewise, the Court in Horizon Grp. of New England, Inc. v. New Jersey Sch. Const. Corp., 2011 WL 3687451 (N.J. Super. App. Div. Aug. 24, 2011) applied the economic loss doctrine because there was a "comprehensive contract scheme in place" to "address delays, unanticipated setbacks, and scope of work and price adjustments" and the suit by the contractor was brought to seek additional sums that it claimed was owed due to additional work it performed. Id. at *6.

Here, the damages asserted against GZA arises out of, in part, damages allegedly suffered

by Trenton Biogas due to the settlement of the tanks, part of which was paid by Symbiont and now seeking to recover against GIS and GeoStructures.  This is not a case where the negligence claim asserted against GZA should more properly be characterized as contractual remedies against Symbiont.  Third-Party Plaintiffs are not seeking additional sums under their contract with Symbiont but seek an adjudication of liability due to GZA's professional negligence for the alleged damages suffered by Symbiont and Trenton Biogas.  GZA argues that Third-Party Plaintiffs should seek redress against Symbiont contractually but does not explain how when Symbiont is the one who allegedly suffered the very harm that is the subject of this lawsuit.  Third-Party Plaintiffs are not seeking to enhance or duplicate any breach of contract remedies.  Therefore, the economic loss doctrine does not apply and the holdings in <u>MJF</u>, <u>Dynalectric</u>, and <u>Horizon</u>, are inapposite to the facts here.  Rather, the economic loss doctrine does not apply to claims against design professionals when the design professional prepared plans that it knew would be submitted to contractors for purpose of bidding the job, and the contractor was damaged when it relied on defective plans.  <u>See Conforti & Eisele, Inc. v. John C. Morris Associates</u>, 175 N.J. Super. 341, 343 (Law Div. 1980), <u>aff'd</u>, 199 N.J. Super. 498 (App. Div. 1985).  Accordingly, the economic loss doctrine does not apply to bar Third-Party Plaintiffs' claims against GZA and GZA's Motion to Dismiss should be denied.

> ### ii.   **The Economic Loss Doctrine Does Not Apply Because GZA Has an Independent Duty to Perform Its Work of Soil Investigation and Foundation Preparations Recommendations Up to A Standard of Care Possessed by Members of The Profession in Good Standing**

The economic loss doctrine does not apply where the defendant "has breached his duty of care to avoid the risk of economic injury to particularly foreseeable plaintiffs … that are proximately caused by its breach of duty."  <u>See People Exp. Airlines, Inc. v. Consol. Rail Corp.</u>, 100 N.J. 246, 267 (1985).  Such losses are recoverable "when they are the natural and probable

consequence of a defendant's negligence in the sense that they are reasonably to be anticipated in view of defendant's capacity to have foreseen that the particular plaintiff or identifiable class of plaintiffs … is demonstrably within the risk created by defendant's negligence." Ibid. See also Borough of Edgewater v. Waterside Constr., LLC, 2021 WL 4059850, at *5 (D.N.J. Sept. 3, 2021) (declined to apply economic loss doctrine where consultant allegedly breached its duty to conform to a standard of care possessed by members of the profession in good standing notwithstanding the parties were in privity); Ford Motor Co., 2012 WL 4172133, at *23(same).

GZA is an engineering professional who must conform to a standard of care possessed by members of the profession in good standing imposed by law under New Jersey laws and regulations.  The explicit stated purpose of the GZA "is to provide foundation design and related earthwork recommendations for [Trenton Biogas's] planned construction."  The natural and probable sequence would be for Trenton Biogas to take GZA's geotechnical reports to solicit bid for the design and construction for the foundation for the Project and for contractors, such as Third-Party Plaintiffs, to rely upon GZA's reports to design and construct the foundation for the Project. Therefore, Third-Party Plaintiffs are within an identifiable class of plaintiffs who are within the risk created by GZA's negligence and the economic loss doctrine does not apply to bar their claims against GZA.

Finally, the economic loss doctrine, as its name suggest, only applies to purely economic losses. People Exp., 100 N.J. at 251 ("It is well-accepted that a defendant who negligently injures a plaintiff or his property may be liable for all proximately caused harm, including economic losses.")  Here, the alleged damage arises from the alleged settlement of the four tanks in excess of acceptable limits and required physical alteration of the tanks to abate the physical harm. Therefore, the economic loss doctrine does not apply and GZA's Motion to Dismiss on this basis

should be denied.

**D. Third-Party Plaintiffs Have Alleged Sufficient Factual Allegations in Support of Their Cause of Action for Negligent Misrepresentation**

As the Court in <u>MJF</u> noted:

> The New Jersey Supreme Court 'has relied on the Restatement's negligent misrepresentation section' in establishing its negligent misrepresentation doctrine.   Section 552 of the Restatement "imposes on professionals and other business people a duty to avoid negligently providing false information, including to non-clients." The Second Restatement provides the following understanding of negligent misrepresentation in the context of the duties owed by professionals and other businesses people:
>
> > One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> Importantly, the liability contemplated by the Restatement is limited to loss suffered "by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it" and "through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends."  Relatedly, "lack of privity has been held not to bar the liability of an independent contractor engaged to perform services for his negligent nonfeasance."   "The professional's 'duty is defined not by the contractual relationship between the parties but by considerations of foreseeability and fairness.'"   With respect to the "justifiable reliance" element of negligent misrepresentation, "[r]eliance is ordinarily not justifiable if the misrepresentation ... is mere puffing, or states an opinion or judgment of one without specialized knowledge and that does not imply assertions of fact; [or] predicts some future course of events over which the defendant has little or no control[.]"

<u>MJF</u>, 2021 WL 1168962, at *3 (internal citations omitted).

GZA was contracted for the geotechnical investigation and to render its professional

opinion as to how to construct the foundation for the four tanks.  The reports detailing results of GZA's geotechnical investigations and its professional recommendation as to how to construct the foundation for the four tanks were provided to Trenton Biogas for the purpose of disseminating to contractors, including GIS and GeoStructures, who would follow GZA's recommendations to design and build the foundation system for the four tanks.  Therefore, GIS and GeoStructures are within a group of "person for whose benefit and guidance [GZA] intends to supply the information or knows that the recipient so intends."  Accordingly, it was foreseeable and reasonable for GIS and GeoStructures to rely upon the faulty information conveyed in the two reports issued by GZA.

Specifically, Third-Party Plaintiffs later learned that GZA misstated the sulfate content of the soil and incorrectly classified the testing result as "negligible" instead of "moderate" under ASTM D516.  See Exhibit A of Third-Party Complaint, ECF No. 31, 17, and Exhibit B of Third-Party Complaint, ECF No. 31, 77-78.  See also Declaration of Larry Moore, attached as Exhibit "A".  Had GZA not misrepresented such condition, additional criteria regarding cement type and minimum strength requirements would have been triggered.  Id.  Third-party Plaintiffs reasonably relied upon GZA's misrepresentation of the site condition in designing and constructing the foundation support.

GZA argues that any reliance cannot have been reasonable because "Both Reports alert all readers (other than GZA's client [Trenton Biogas]) that reliance is at their own risk."  See ECF No. 57-3, 26.  However, such an argument goes against the explicit stated purpose of the reports which was for the construction of the Project and is in fact belied by the very language GZA relies upon.  The purported limitation language reads as follows:

> GZA GeoEnvironmental, Inc. (GZA) prepared this report on behalf of, and for the **exclusive use of our Client for the stated purpose(s) and location(s) identified in the Proposal for Services and/or Report.**  Use of this report, in whole or in part, **at other locations,**

**or for other purposes, may lead to inappropriate conclusions**; and we do not accept any responsibility for the consequences of such use(s).  Further, reliance by any party not expressly identified in the agreement, for any use, without our prior written permission, shall be at that party's sole risk, and without any liability to GZA.

<u>See</u> Exhibit A of Third-Party Complaint, ECF No. 31, at 33 (emphasis added).

The use of the GZA reports by GIS and GeoStructures was for the exact stated purpose and location identified in GZA's reports for the building of the Project for Trenton Biogas.  The GZA reports' very purpose was, in part, to give direction to subsequent contractors as to how to build the Project for Trenton Biogas.  Moreover, the next sentence in this paragraph makes clear that it is the use of the reports "at other locations or for other purposes" is the intent of the disclaimer.  It goes against common sense that a licensed professional can disclaim liability in reports for the very purpose they were commissioned.  Therefore, it was reasonable and foreseeable for GIS and GeoStructures to rely on GZA's reports when the reports were part of a bid package for the solicitation of work and Third-Party Plaintiffs relied on the accuracy of information conveyed in the reports.

GZA relies upon <u>DeAngelo v. Exxon Corp.</u>, 1999 WL 34014043 (N.J. Super. App. Div. Oct. 15, 1999) for its argument that this provision terminates any reasonable reliance third parties may have on its reports for the Project.  However, <u>DeAngelo</u> is distinguishable on its facts.  In <u>DeAngelo</u>, a subsequent purchaser brought suit against an environmental remediation company where the remediation company was hired to observe and document removal of certain underground fuel tanks.  <u>Id.</u> at *1.  However, the remediation company was not hired for investigating whether there are other underground tanks.  <u>Ibid</u>.  The seller sent a letter to the purchaser that "any reliance by you on the report, or any information therein shall be at your own risk.  You should conduct your own investigation to determine the accuracy of the report and the

condition of the property." Id. at *6. The Appellate Division rejected the purchaser's argument that the remediation company owed them a duty investigate the property for additional underground storage tanks because it did not even owe such a duty to the contracting seller. Id. at *10. The Appellate Division found that it would have been unfair to enlarge a party to a contract to enlarge the scope of its work without compensation in order to protect itself against the possibility of a negligence suit by some third party. Ibid. Moreover, the purchaser had the notice of the disclaimer from the seller and had the opportunity to conduct its own investigation.

Unlike the purchaser in DeAngelo, Third-Party Plaintiffs are not seeking to enlarge the scope of GZA's contracted work. Rather, it is to hold GZA accountable to the standard of care governing all professional engineers in performing its agreed upon work. See e.g., Prudential Ins. Co. of Am. v. Credit Suisse Sec. (USA) LLC, 2013 WL 5467093, at *20 (D.N.J. Sept. 30, 2013) ("a defendant may be liable (because it owes a duty) to *any reasonably foreseeable recipient* who relies on the information"); Grand St. Artists, 19 F. Supp. 2d at 250 (environmental consultant was liable to subsequent purchaser because it was foreseeable that prospective purchasers would rely upon the consultant's report). Therefore, DeAngelo is inapposite to the facts here. Accordingly, Third-Party Plaintiffs have adequately pled a plausible cause of action for negligent misrepresentation against GZA and GZA's Motion to Dismiss this cause of action should be denied[2].

### E. **Third-Party Plaintiffs Asserted Valid Claims for Contribution and/or Indemnity**

Fed. R. Civ. P. 14(a)(1) provides that "A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim

---

[2] Alternatively, Third-Party Plaintiffs request leave to amend this cause of action to alleged additional facts as outlined this submission and the Declaration of Larry Moore, P.E., Exhibit A.

against it." A third-party claim may be maintained if the liability asserted is in some way derivative

of the main claim. Chao v. New Jersey Licensed Beverage Ass'n, Inc., 461 F. Supp. 2d 303, 306

(D.N.J. 2006). "Such a claim is viable only where a proposed third party plaintiff says, in effect,

'If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third

party defendant is derivatively liable and must reimburse me for all or part … of anything I must

pay plaintiff.'" Id. at 306-307. "[C]ourts in [the Third] Circuit have regularly permit third-party

complaints based upon contribution and/or indemnity." BRG Harrison Lofts Urban Renewal LLC

v. Gen. Elec. Co., 2020 WL 4932755, at *4 (D.N.J. Aug. 24, 2020).

> a "right of contribution exists among joint tortfeasors." N.J.S.A.
> 2A:53A–2. Indeed, under the Joint Tortfeasors Contribution Law
> (the "JTCL") "[w]here injury or damage is suffered by any person
> as a result of the wrongful act, neglect or default of joint tortfeasors,
> and the person so suffering the injury or damage recovers a money
> judgment or judgments for such injury or damage against one or
> more of the joint tortfeasors, either in one action or in a separate
> actions, and any one of the joint tortfeasors pays such judgment in
> whole or in part, he shall be entitled to recover contribution from the
> other joint tortfeasor or joint tortfeasors for the excess so paid over
> his pro rata share[.]" N.J.S.A. 2A:53A–3. For purposes of the
> JTCL, the term "joint tortfeasors" is defined as "two or more persons
> jointly or severally liable in tort for **same injury to person or
> property, whether or not judgment has been recovered against
> all or some of them**." N.J.S.A. 2A:53A–1. The Comparative
> Negligence Act modified the JTCL such that now "[j]oint
> tortfeasors no longer share liability on a pro rata basis, but instead
> on the basis of percentages of fault assigned by the trier of fact."
> Blazovic v. Andrich, 124 N.J. 90, 105, 590 A.2d 222 (1991) (citing
> N.J.S.A. 2A:15–5.3). Thus, in order to succeed on a contribution
> claim under the JTCL and Comparative Negligence Act, a party
> needs to establish that one or more other persons was a joint
> tortfeasor.

Napolitano v. Haven Homes Inc., 2012 WL 253175, at *6 (D.N.J. Jan. 26, 2012) (emphasis added).

As to a claim for common law indemnification:

> in New Jersey, a claim for common law indemnification permits a
> person who has become liable for the wrongful conduct of another

to seek reimbursement from the wrongdoer under certain circumstances. See Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566, 410 A.2d 674 (1980). First, the party seeking indemnification must be without fault and able to show that its liability is constructive, secondary, vicarious, technical or imputed. Id.; see also Alder's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 80, 159 A.2d 97 (1960). Second, there must be a special relationship between the party seeking indemnification and the alleged wrongdoer to support the imposition of indemnification; for example, "the liability must arise from either (1) an explicit contractual provision, (2) some special legal relationship; (3) some positive rule of law, or (4) the wrongdoer's failure to discover or correct a defect or remedy a dangerous situation." Smith v. Lindemann, Civil Action No. 10–3319(FSH), 2011 WL 3235682 (D.N.J. July 28, 2011).

Id. at *7.

Here, Third-Party Plaintiffs have plead sufficient facts, when taken as true, to satisfy pleading requirements for both their claim for contribution and their claim for indemnity. Third-Party Plaintiffs alleged that GZA is a joint tortfeasor for its negligence in geotechnical testing and issuing its recommendations for the design and construction of the foundation for the four tanks at the Project. Symbiont brought this action against GIS and GeoStructures for their implementation of GZA's recommendations. While the sequence of the parties' conduct may be successive, the resulting alleged injury that is the subject of the Complaint and the Third-Party Complaint is one and the same. Accordingly, the Third-Party Complaint alleges a viable claim of contribution against GZA.

Similarly, Third-Party Plaintiffs denied that they are liable to the plaintiff for the damages asserted. Any liability imposed upon them would be constructive, technical, imputed, or vicarious due to the liability of GZA. Contrary to GZA's argument, the Third-Party Complaint explicitly alleged vicarious liability. Finally, GZA's argument that there must first be a judgment entered before a claim for contribution may be brought is an incorrect statement of law. See RGD Holding

19

Co., LLC v. Perkins, 2022 WL 597055, at *3 (D.N.J. Feb. 28, 2022) ("New Jersey courts allow indemnification and contribution claims be brought before a defendant suffers a judgment against it." Citing Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 966 A.2d 1102, 1106–08 (N.J. Super. App. Div. 2009) and Szaloczy v. KONE Elevators & Escalators, 2021 WL 2680185, at *7–*8 (D.N.J. June 29, 2021).

Therefore, the Third-Party Complaint has alleged sufficient facts for the claim of contribution and indemnification against GZA and GZA's Motion to Dismiss should be denied.

## IV.   CONCLUSION

Based on the foregoing, Third-Party Plaintiffs have satisfied the pleading requirements for plausible claims of professional negligence, negligent misrepresentation, contribution, and indemnification and respectfully request the Court enter the attached proposed Order denying GZA's Motion to Dismiss the Third-Party Complaint.

**O'HAGAN MEYER PLLC**

BY: */s/ Michael T. Sweeney*
  John P. Morgenstern (Attorney ID: 019011997)
  Michael T. Sweeney (Attorney ID: 020791992)
  Gavin Fung (Attorney ID: 098192014)
  1717 Arch Street, Suite 3910
  Philadelphia, PA 19103
  215-461-3300
  JMorgenstern@ohaganmeyer.com
  MSweeney@ohaganmeyer.com
  GFung@ohaganmeyer.com

  *Attorneys for Defendants/Third Party*
  *Plaintiffs, Ground Improvement Services, Inc.*
  *and GeoStructures, Inc.*

Dated:  February 27, 2023

## **CERTIFICATE OF SERVICE**

I, Michael T. Sweeney, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Opposition to GZA's Motion to Dismiss, supporting exhibit, and proposed form of Order to be filed with the ECF system which provided electronic notice to all parties.

*/s/ Michael T. Sweeney*
Michael T. Sweeney

Dated: February 27, 2023