IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYMBIONT SCIENCE, ENGINEERING AND CONSTRUCTION, INC., ZURICH AMERICAN INSURANCE COMPANY a/s/o Symbiont Science, Engineering and Construction, Inc.; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a/s/o Symbiont Science, Engineering and Construction, Inc. and STEADFAST INSURANCE COMPANY a/s/o Symbiont Science and Construction, Inc. | Honorable Robert Kirsch, U.S.D.J. Honorable J. Brendan Day, U.S.M.J. C.A. No.: 3:22-cv-04905-RK-JBD |
| Plaintiffs | |
| vs. | |
| GROUND IMPROVEMENT SERVICES, INC.; JOHN DOES 1-10, (fictitious parties) and ABC COMPANIES 1-10 (fictitious parties); GEOSTRUCTURES OF VIRGINIA, INC. | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF
PROPOSED INTERVENOR DENALI WATER SOLUTIONS LLC'S
<u>MOTION FOR LEAVE TO INTERVENE UNDER F.R.C.P. 24</u>**

[SIGNATURE BLOCK ON NEXT PAGE]

Dated: September 12, 2023        Respectfully submitted,


*/s/ Jeffrey M. Pollock*
Jeffrey M. Pollock, Esq.
Steven J. Link, Esq.
Dominique J. Carroll, Esq.
**FOX ROTHSCHILD LLP**
997 Lenox Drive
Lawrenceville, New Jersey 08648
Tel.: (609) 896-3600
Fax: (609) 896-1469
jmpollock@foxrothschild.com
slink@foxrothschild.com
djcarroll@foxrothschild.com

Counsel for Proposed Intervenor
Denali Waters Solutions LLC

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    RELEVANT FACTUAL BACKGROUND .............................................5

    A.    After Denali notifies TRP of its intent to terminate the Feedstock Agreement, TRP files an unsuccessful Order to Show Cause seeking injunctive relief, followed by multiple amended complaints contending that the Trenton Facility has no operational issues. ...................................5

    B.    For years, Denali pursued discovery supporting its defense that the Trenton Facility has fundamental engineering issues and design flaws, but TRP withheld discoverable information and misrepresented its construction dispute with Symbiont. ..........................................................6

    C.    At the end of fact discovery in the State Court Action, Symbiont's corporate representative reveals it engaged in mediation with TRP. TRP, however, doubles down on its misrepresentations and falsely characterizes its construction disputes with Symbiont as mere warranty issues. ...................................................................................................7

    D.    Symbiont's federal lawsuit revealed a nearly $12 million settlement with TRP concerning construction disputes at the Trenton Facility, that Symbiont incurred over $3M in damages beyond the settlement paid by its insurers to TRP, and that Symbiont faces additional claims by Trenton Biogas totaling more than $4M for alleged damages caused by the actions, inactions, and failures of defendants in this federal action...........8

III.   ARGUMENT .........................................................................................9

    A.    Denali should be permitted to intervene as of right under F.R.C.P. 24(a)(2). ............................................................................................10

        1.     Denali's application is timely. ...................................................10

        2.     Denali has a substantial legal interest in this case. ......................11

        3.     Intervention is necessary to protect Denali's interests. ..............13

        4.     The existing parties cannot adequately protect Denali's interests. .................................................................................14

B.      Alternatively, Denali should be granted permissive intervention under
F.R.C.P. 24(b)(1)(B). ................................................................................15

IV.      Conclusion...............................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
    844 F.2d 1050 (3d Cir. 1988) ................................................................. 11

*Citizens for Balanced Use v. Mont. Wilderness Ass'n.*,
    647 F.3d 893 (9th Cir. 2011) ................................................................. 13

*In re Fine Paper Antitrust Litig.*,
    695 F.2d 494 (3d Cir. 1982) ................................................................. 11

*Harris v. Pernsley*,
    820 F.2d 595 (3d Cir. 1987) ....................................................... 11, 12, 15

*Hoots v. Pennsylvania*,
    672 F.2d 1133 (3d Cir. 1982) ................................................................. 14

*Howard v. McLucas*,
    782 F.2d 956 (11th Cir. 1986) ................................................................. 12

*Jordan v. Mich. Conference of Teamsters Welfare Fund*,
    207 F.3d 854 (6th Cir. 2000) ................................................................. 14

*Kleissler v. United States Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) ................................................................. 10

*Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
    72 F.3d 361 (3d Cir. 1995) ............................................................. 10, 13

*PDX N., Inc. v. Wirths*,
    No. 15–07011, 2018 WL 3611063 (D.N.J. July 26, 2018) ....................... 10

*Trenton Renewable Power, LLC v. Denali Water Sols. LLC*,
    470 N.J.Super. 218, 269 A.3d 519 (App. Div. Jan. 24, 2022) ....................... *passim*

*UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co.*,
    2020 WL 5810562 (D.N.J. Sept. 30, 2020) ............................................. 9

*United States v. City of Los Angeles*,
    288 F.3d 391 (9th Cir. 2002) ................................................................. 10

**Other Authorities**

Fed. R. Civ. P. 24 ................................................................. 4, 9, 10

i

Fed. R. Civ. P. 24(a)(2)...........................................................................................10, 14, 15

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................................15

Fed. R. Civ. P. 24(b)(3)........................................................................................................15

Req No. 9 .........................................................................................................................2, 7

I.    **INTRODUCTION**

This federal litigation stems from Plaintiffs' allegations that substantially overlap with an active multimillion dollar civil action in the New Jersey Superior Court captioned *Trenton Renewable Power, LLC v. Denali Water Solutions LLC*, Docket No. MER-C-49-20 (the "State Court Action").[1] At the core of both litigations is "an anaerobic digestion and biogas production facility in Trenton, New Jersey" owned by Trenton Biogas, LLC (the "Facility"), and the allegation that "[t]here existed numerous defects and deficiencies in the design and construction of the Facility." *See*, *e.g.*, Declaration of Steven J. Link, Esq. ("Link Decl."), *Ex. 1*, ¶¶ 13, 15, 65.

In the State Court Action, Trenton Renewable Power, LLC ("TRP") seeks millions in damages alleging that proposed intervenor Denali Water Solutions LLC breached its contractual obligation to deliver agreed quantities of source separated organic waste to the Facility under an Amended and Restated Merchant Waste Feedstock Agreement ("Feedstock Agreement").[2] *See* Link Decl., *Ex. 2*, at ¶ 1; *see also Ex. 3*.

For years, Denali diligently pursued discovery to support its defenses,

---

[1] "Plaintiffs" refers to Symbiont Science, Engineering and Construction, Inc. and its insurers Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company.

[2] TRP is an affiliate of Trenton Biogas, LLC.

including that the Trenton Facility has fundamental construction and design flaws—the same argument raised by Plaintiffs here—precluding the facility from accepting and processing Approved Merchant Waste, as defined in the Feedstock Agreement.

To that end, Denali requested discovery from TRP concerning construction disputes at the Facility. TRP, however, refused to produce all responsive discovery and Denali was forced to seek court intervention—ultimately resulting in the court compelling TRP to produce "[a]ll Documents and Communications Concerning any construction disputes, design disputes, or other disputes with the contractors, engineers, or other professionals concerning the efforts to repurpose and retrofit the Trenton Facility for use as an anaerobic biodigester facility." *See* Link Decl., *Ex. 4*, ¶ 2(a); *Ex. 5* at Req No. 9.

During depositions in the State Court Action, Denali specifically asked TRP's owner and general manger—Peter Joseph and Brian Blair, respectively—if there were any construction disputes. Under oath, they both denied any construction disputes. *See* Link Decl., *Ex. 6*, 160:7-15 (Joseph dep.) & 47:3-7 (Blair dep.). On the last day of fact discovery, however, Symbiont's corporate representative admitted that Symbiont was engaged in a protracted mediation to resolve a construction dispute with TRP under its Engineering, Procurement, and Construction Contract ("EPC Contract") concerning issues with the digester and buffer tanks that Symbiont built and installed—the same EPC Contract at issue in

2

this federal action.  *See*, *e.g.*, Link Decl., *Ex. 1*, ¶ 15.

Despite Symbiont's testimony, TRP doubled down on its false contention that there were only warranty issues with Symbiont and no construction disputes. This federal litigation, however, confirms that TRP "placed Symbiont on notice of a **dispute** . . . relating to the settlement of the digester tanks and buffer tank." *Id.*, ¶ 54 (emphasis added).  This resulted in a mediation that concluded with a settlement "whereby Symbiont agreed to pay to Trenton Biogas the total sum of $11,715,000 in exchange for a full release of all of Trenton Biogas' claims relating to the settlement of the digester tanks and buffer tank." *See id.*, ¶¶ 54-56.

This federal litigation also revealed to Denali that, in addition to the nearly $12 million settlement, Symbiont incurred more than $3,285,000 in damages and "Symbiont faces additional claims by Trenton Biogas, totaling in excess of $4,000,000 for alleged damages that were also caused by the action, inaction and failure of GIS and the other defendants." *Id.* at ¶ 60.

Although TRP refuses to produce discovery concerning the construction disputes in the State Court Action, here the parties have produced "thousands of pages of documents constituting the files of the parties related to the work at the facility, the incident and the settlement of the Trenton Biogas claims against Plaintiff Symbiont." *See* Link Decl., *Ex. 7*.  The discovery in this action should further confirm that while TRP argues in the State Court Action that Denali caused its

damages, Trenton Biogas has simultaneously claimed the same damages were caused by Symbiont's defective work, which is central to this federal litigation.



Denali has an independent interest to ensure that, among other things, TRP is not seeking damages in the State Court Action that are attributable to parties other than Denali. The discovery and issues at the core of this federal action overlap substantially with Denali's key defense that the Trenton Facility has severe construction and design flaws.

Under F.R.C.P. 24, Denali moves to intervene and protect Denali's individual and independent interest for the limited purposes of being notified of all electronic filings and correspondence, being permitted to observe all proceedings including but not limited to depositions, hearings, and on and off record conferences, and being permitted to review discovery exchanged in this matter, subject to Denali executing the Discovery Confidentiality Order at Dkt. 79.

Denali does not anticipate an active role here; rather, Denali anticipates an observatory role that will not delay or prejudice the adjudication of this action.

## II.    **RELEVANT FACTUAL BACKGROUND**

### A.    **After Denali notifies TRP of its intent to terminate the Feedstock Agreement, TRP files an unsuccessful Order to Show Cause seeking injunctive relief, followed by multiple amended complaints contending that the Trenton Facility has no operational issues.**

Under the Feedstock Agreement, Denali anticipated delivering organic waste material to TRP, which would convert the material into renewable natural gas at the Trenton Facility. *See generally* Link Decl., *Ex. 3*. In April 2020, Denali notified Trenton of its intention to terminate the Feedstock Agreement if certain defaults were not timely cured. A few weeks later, TRP commenced the State Court Action through an Order to Show Cause ("OTSC") seeking immediate injunctive relief to prevent Denali from exercising its contractual right to terminate the Feedstock Agreement. *See* Link Decl., *Ex. 8*.

After the state court denied TRP's request for temporary restraints, TRP filed an amended complaint and then a Second Amended Complaint ("Second Am. Compl."). In the Second Am. Compl., TRP contends it fully complied with its representations to Denali including ensuring that the Trenton Facility was in good working order and could accept all categories and quantities of Approved Merchant Waste. *See, e.g.*, Link Decl., *Ex. 2*, ¶¶ 88 & 102-103.

Conversely, Denali answered TRP's Second Am. Compl. contending, among other things, "Trenton's claims are barred because it was never able to perform under the Agreement due its own gross mismanagement and fundamental design flaws,

and/or inadequate equipment at the Trenton Facility." *See* Link Decl., *Ex. 9*, at 24. Denali also contends, "Trenton's claims are barred, and the Agreement is void, due to [TRP]'s misrepresentations." *Id*. at 25.

Thus, one of the key issues in the State Court Action is the accuracy of TRP's representations that it can—and has always been able to—physically and legally accept and process all categories and quantities of Approved Merchant Waste from Denali.

**B.      For years, Denali pursued discovery supporting its defense that the Trenton Facility has fundamental engineering issues and design flaws, but TRP withheld discoverable information and misrepresented its construction dispute with Symbiont.**

Since 2020, Denali has sought discovery from TRP focused on whether it or its affiliate, Trenton Biogas, LLC was engaged in any construction disputes. Such information was relevant because (i) the construction disputes would address whether other entities were responsible for the alleged damages TRP seeks from Denali, and (ii) the existence of construction disputes would support Denali's argument that the Trenton Facility was failing for reasons other than Denali's alleged breach.

TRP refused to produce its discovery concerning construction disputes, and Denali ultimately obtained an Order from the state court compelling TRP to produce "[a]ll Documents and Communications Concerning any construction disputes, design disputes, or other disputes with the contractors, engineers, or other

professional concerning the efforts to repurpose and retrofit the Trenton Facility for use as an anaerobic biodigester facility." *See* Link Decl., *Ex. 4*, ¶ 2(a); *Ex. 5* at Req. No. 9.  TRP, however, never produced the ordered documents.

**C.    At the end of fact discovery in the State Court Action, Symbiont's corporate representative reveals it engaged in mediation with TRP. TRP, however, doubles down on its misrepresentations and falsely characterizes its construction disputes with Symbiont as mere warranty issues.**

During depositions, Denali specifically asked Peter Joseph and Brian Blair, TRP's owner and general manager respectively, if there were any construction disputes.  Both men denied there were any construction disputes, and instead they testified that TRP was resolving some "warranty issues" with Symbiont. *See* Link Decl., *Ex. 6*, 160:7-15 (Joseph dep.) & 47:3-7 (Blair dep.).  But on the last day of fact discovery, Symbiont's corporate representative, Brian Till confirmed Joseph and Blair lied under oath by admitting that Symbiont was engaged in protracted mediation to resolve a construction dispute with Trenton Biogas under its EPC Contract concerning issues with the digester and buffer tanks that Symbiont built and installed.  ███████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████   Even after Symbiont's deposition in the State Court Action, TRP continued to falsely contend that there were only warranty issues and no construction disputes.

**D.**   **Symbiont's federal lawsuit revealed a nearly $12 million settlement with TRP concerning construction disputes at the Trenton Facility, that Symbiont incurred over $3M in damages beyond the settlement paid by its insurers to TRP, and that Symbiont faces additional claims by Trenton Biogas totaling more than $4M for alleged damages caused by the actions, inactions, and failures of defendants in this federal action.**

As this federal action confirms, TRP was in negotiations and then mediation—required by the EPC Contract only for construction disputes, not warranty issues—with Symbiont for months (if not years) while fact discovery was pending in the State Court Action.  The mediated dispute is simple to understand: the digestion and buffer tanks that are critical for processing and converting feedstock into energy and agricultural byproducts were not built or installed correctly and now need to be fixed.

Put simply, this litigation conclusively establishes that there was a construction dispute between Symbiont and Trenton Biogas concerning these tanks governed under Article 20 of the EPC Contract.  This dispute—and several other undisclosed disputes with Symbiont that Denali reasonably believes exist[3]—was not

---

[3]   For example, Denali knows from a July 13, 2022 DEP audit report that Trenton Biogas is "actively litigating" a dispute concerning the "defective" ammonium sulfate recovery system, which Symbiont was responsible for selecting, installing, and maintaining.  Symbiont's coverage counsel, Mr. Milun, further

disclosed by TRP in the State Court Action.  Therefore, TRP did not produce documents concerning those disputes because TRP claimed there were none, yet Symbiont has produced relevant documents concerning the tank foundation dispute in this litigation.  Additionally, TRP blames Symbiont and alleges that Symbiont's failures caused it to lose revenue from energy and solid nutrient sales—the very same damages TRP alleges Denali is responsible for in the State Court Action.  Thus, Denali has a substantial legal interest in this case, and Denali moves under F.R.C.P. 24 to intervene.

## III.   **ARGUMENT**

The Court should grant intervention as of right because Denali's motion is timely, Denali has a substantial interest in this federal action, intervention is necessary to protect Denali's interests, and the existing parties cannot adequately protect Denali's interests.  Alternatively, permissive intervention is appropriate because there will be no delay or prejudice to the adjudication of this action, both litigations involve overlapping questions of law and facts, and Denali's interests are directly at issue in this litigation.

District courts have "broad discretion to determine … permissive intervention in a case is appropriate." *UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co.*, 2020 WL

---

confirmed in October 2022 that the $4 million dispute referenced in the Second Amended Complaint was "the subject of ongoing mediation."

5810562 at *2, (D.N.J. Sept. 30, 2020) (citation omitted); *see also PDX N., Inc. v. Wirths*, No. 15–07011, 2018 WL 3611063, at *4 (D.N.J. July 26, 2018) (granting a motion for permissive intervention because, as here, discovery remained open). Courts are to be "guided primarily by practical and equitable considerations," and "courts **generally construe[ ] [the Rule] broadly in favor of proposed intervenors**." *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotations and citations omitted) (emphasis added).

### A. Denali should be permitted to intervene as of right under F.R.C.P. 24(a)(2).

A court must permit intervention if there is a timely application by anyone who "claims an interest relating to the property or transaction that is the subject of the action," and whose interest may be "impair[ed] or impede[d]" by disposition of the action, "unless existing parties adequately represent that interest." F.R.C.P. 24(a)(2). "Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). Denali meets each of the requirements for intervention as of right.

### 1. Denali's application is timely.

Courts engage in a totality of circumstances analysis to determine timeliness of a potential intervenor's application. *Mt. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). The mere passage of time

does not render an application untimely. *Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1056 (3d Cir. 1988). To determine if the motion is timely, there are three factors to consider: the stage of the proceeding, the prejudice that delay may cause the parties, and the reason for the delay. *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982).

Here, discovery remains open and there will be no prejudice or delay to adjudication of this litigation if the motion is granted. Denali understands that written discovery has been exchanged and the Court recently granted the parties' request for an extension of time to exchange proposed lists of deposition witnesses. Dkt. 91. It does not appear to Denali that a trial date has been set.

This federal litigation and discovery about the alleged deficiencies concerning the Trenton Facility is ongoing. Much of the discovery regarding the alleged deficiencies relate directly or indirectly to Denali's core defenses in the State Court Action. There will be no prejudice or delay by granting Denali's motion since Denali seeks only to intervene for the limited purposes specified above. Denali does not anticipate active participation in this litigation that will cause any interference.

### 2.    Denali has a substantial legal interest in this case.

Denali has a substantial legal interest in this lawsuit. The precise interest "required [to intervene as of right] has eluded precise and authoritative judicial definition". *Harris v. Pernsley*, 820 F.2d 595, 596 (3d Cir. 1987). Intervenors need

not have an interest in every aspect of the litigation. They are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable. *See*, *e.g.*, *Harris*, *supra*, 820 F.2d at 599, *Howard v. McLucas*, 782 F.2d 956, 960 (11th Cir. 1986) (holding that non-minority employees had the right to intervene to challenge the promotional remedy, but not to contest the existence of past discrimination).

Here, Denali has an interest regarding the chose in action that Trenton Biogas pursued against Symbiont in mediation because it is the same chose in action that TRP is bringing against Denali in the State Court Action. For example, TRP contends in the State Court Action that its damages were caused by Denali's failure to deliver waste. ██████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

However, TRP previously claimed the same damages were caused by Symbiont's defective work, which resulted in the nearly $12 million payout at issue in this federal litigation. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ Denali has a significant interest in ensuring that Trenton is not seeking a recovery from Denali in the State Court Action that is attributable and was already received from Symbiont.

Denali also has a significantly protectable legal interest related to the identification and preservation of discovery relevant to the State Court Action. TRP falsely represented to Denali in the State Court Action that there were no construction disputes at the Trenton Facility. As a result, despite a court order compelling it to produce documents concerning construction disputes, TRP did not produce its responsive documents based on this false representation. Symbiont has now confirmed TRP's lies by alleging there was at least one construction dispute with Trenton Biogas that resulted in a nearly $12 million settlement, which resulted in the production of "thousands of pages of documents constituting the files of the parties related to" this dispute "and the settlement of the Trenton Biogas claims against . . . Symbiont." Link Decl., *Ex. 7*. This discovery is relevant to and has been requested for production in the State Court Action, which Denali has a right to obtain.

### 3.      Intervention is necessary to protect Denali's interests.

To be considered necessary to protect a party's interests, an intervenor need only "demonstrate that their interest might become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mt. Top Condo. Ass'n v. Dave Stabbert Master builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (citation omitted). "[I]ntervention of right does not require an absolute certainty that a party's interest will be impaired." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647

F.3d 893, 900 (9th Cir. 2011).

Here, Denali's interest might become affected or impaired if it is not allowed to intervene for the limited requested purposes. Providing Denali with the necessary opportunity to observe these related proceedings comports with liberal federal discovery rules. Thus, Denali moves to intervene for the limited purposes of being notified of all electronic filings and correspondence, observing all proceedings including but not limited to depositions, hearings, and on-and-off-record conferences, and receiving discovery exchanged in this litigation.

### 4. The existing parties cannot adequately protect Denali's interests.

The final requirement for intervention as of right under F.R.C.P. 24(a)(2) is that the existing parties cannot adequately protect the potential intervenor's interests. A potential intervenor can show either that its interests, although like those of the existing party, are nevertheless sufficiently different in that the representative cannot give the applicant's interest proper attention, there is collusion between the representative and opposing party, or the representative has not been diligent in prosecuting the litigation. *Hoots v. Pennsylvania*, 672 F.2d 1133, 1135 (3d. Cir. 1982) (citation omitted). Like the necessity prong analysis, a potential intervenor "need not prove that the [existing parties'] representation will in fact be inadequate, but only that it 'may be' inadequate*." Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000).

Denali alleges that its individual and independent interests may be overlooked since those interests may not be essential to the ultimate resolution of this litigation. Because Denali satisfies all the requirements for intervention as of right under F.R.C.P. 24(a)(2), this motion should be granted.

### B.    Alternatively, Denali should be granted permissive intervention under F.R.C.P. 24(b)(1)(B).

Denali may also be granted leave to intervene by permission. Rule 24(b)(1)(B) permits intervention on timely motion by anyone who has "a claim or defense that shares with the main action a common question of law or fact." "In exercising its discretion, the court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights." F.R.C.P. 24(b)(3). It is within the district court's discretion to determine when permissive intervention is appropriate. *Harris*, *supra*, 820 F.2d at 597.

The same substantial interests that give Denali the right to intervene in this case under F.R.C.P. 24(a)(2) support permissive intervention under F.R.C.P. 24(b)(1)(B). First, for the reasons detailed above, this motion is timely, and granting it will not delay or prejudice the adjudication of the original parties' rights. Next, the overlap of questions of law and fact involved in this case and the state court case are nearly identical. For example, Denali anticipates that TRP is pursuing the same damages against it that Trenton Biogas previously claimed were caused exclusively by Symbiont. Since "the settlement of the Trenton Biogas claims" is squarely at

issue in this case, the facts related to Trenton Biogas' allegations against Symbiont and Symbiont's defenses to those claims, among other things, are also relevant to Denali's defense in the State Court Action. The surrounding facts and circumstances of the actions and inactions of the federal defendants and third-party professionals who worked in connection with the Trenton Facility are the same in both cases.

Accordingly, because both cases involve overlapping questions of law and facts, and because Denali's interests are directly at issue in this litigation, Denali moves to intervene for the limited purpose of being notified of all electronic filings and correspondence and observing all proceedings including but not limited to depositions, hearings, and on-and-off-record conferences, and receiving discovery exchanged in this litigation.

## IV.   <u>CONCLUSION</u>

Symbiont's federal filing confirms that this federal litigation and the State Court Action involve overlapping questions of law and facts concerning defects and deficiencies in the Trenton Facility. Although there are substantial overlapping questions of law and facts between the two litigations, the current parties to the federal action cannot adequately protect Denali's unique interests. Because Denali's interests are directly at issue in this litigation, Denali moves to intervene for the limited purposes of being notified of all electronic filings and correspondence, observing all proceedings including but not limited to depositions, hearings, and on-

and off- record conferences, and receiving discovery exchanged by the parties.

Dated: September 12, 2023                    Respectfully submitted,


                                             */s/ Jeffrey M. Pollock*
                                             Jeffrey M. Pollock, Esq.
                                             Steven J. Link, Esq.
                                             Dominique J. Carroll, Esq.
                                             **FOX ROTHSCHILD LLP**
                                             997 Lenox Drive
                                             Lawrenceville, New Jersey 08648
                                             Tel.: (609) 896-3600
                                             Fax: (609) 896-1469
                                             jmpollock@foxrothschild.com
                                             slink@foxrothschild.com
                                             djcarroll@foxrothschild.com

                                             Counsel for Proposed Intervenor
                                             Denali Waters Solutions LLC

17