IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYMBIONT SCIENCE, ENGINEERING AND CONSTRUCTION, INC.; ZURICH AMERICAN INSURANCE COMPANY a/s/o Symbiont Science, Engineering and Construction, Inc.; AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a/s/o Symbiont Science, Engineering and Construction, Inc.; and STEADFAST INSURANCE COMPANY a/s/o Symbiont Science, Engineering and Construction, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> GROUND IMPROVEMENT SERVICES, INC.; JOHN DOES 1-10, (fictitious parties) and ABC COMPANIES 1-10 (fictitious parties); GEOSTRUCTURES OF VIRGINIA, INC., <br><br> Defendants. <br><br> GROUND IMPROVEMENT SERVICES, INC. and GEOSTRUCTURES, INC., <br><br> Third-Party Plaintiffs, <br><br> vs. <br><br> GEOPIER FOUNDATION COMPANY, INC., and GZA GEOENVIRONMENTAL, INC., <br><br> Third-Party Defendants. | Case No. 3:22-cv-04905-RK-JBD <br><br> The Honorable Judge Robert Kirsch <br><br> **Motion Date: Oct. 16, 2023** <br><br> **Response in Opposition to Denali Water Solutions LLC's Motion to Intervene** |

**MEMORANDUM OF LAW IN OPPOSITION TO DENALI WATER SOLUTION, LLC'S
MOTION FOR LEAVE TO INTERVENE**

Defendant, Ground Improvement Services, Inc. ("GIS") and GeoStructures of Virginia,

Inc. ("GeoStructures") (collectively referred hereinafter as "Responding Defendants"), hereby presents their combined opposition to the Motion for Leave to Intervene Under F.R.C.P. 24, filed by Proposed Intervenor Denali Water Solutions, LLC ("Denali"). For the reasons detailed below, GIS and GeoStructures states that Denali has misstated its reason for seeking to intervene in this matter, and as such, its present motion should be denied.

I.      **INTRODUCTION**

As the Court is well aware, the instant litigation stems from claims alleging improper foundation and construction work, causing the settlement of tanks located at a facility owned by Trenton Biogas in Trenton, New Jersey. For consistency with Denali's present motion, as well as a case caption in the New Jersey state action, the entity operating the Trenton facility will be referred to as Trenton Renewable Power ("TRP") throughout this response. TRP initially brought the faulty construction claims against Symbiont Science Engineering and Construction, Inc. ("Symbiont") which ultimately settled the claims against it, and which in turn seeks subrogation of such claims against a number of contractors that worked on the project.

The Proposed Intervenor, Denali, is a party to a civil action filed in the Superior Court of New Jersey, Chancery Division in Mercer County, docketed as *Trenton Renewable Power, LLC v. Denali Water Solutions LLC*, Docket No. C-49-20.

Upon information and belief, the state action relates to a contract dispute regarding the delivery of organic food-waste product from Denali to TRP, for processing into various gases and fertilizer products. TRP claims that Denali failed to perform under the terms of the contract between the two, while Denali claims that TRP made performance impossible in a number of ways.

Yet, as this Court is aware, the current matters before the Court have nothing to do with contracts controlling the delivery of organic waste products. Rather, it is a construction and soil

leveling dispute, seeking to determine the liable party for the excess settlement of the processing tanks located at the TRP facility.

Denali claims that it attempted to investigate claims of construction and design flaws at the TRP facility "years" ago via discovery requests to TRP. *Denali Mot.*, at p. 1-2. Per Denali, TRP refused these efforts and would not produce the requested documentation, requiring court intervention compelling TRP to produce "all [d]ocuments and [c]ommunications [c]oncerning any construction disputes, design disputes, or other disputes with the contractors, engineers, or other professionals concerning the efforts to repurpose and retrofit the Trenton Facility for use as an anaerobic biodigester facility. *Id.*, at p. 2.

Denali claims that it deposed TRP's owner and general manager, but both denied any construction disputes at the facility. Denali ultimately learned of the 2022 mediation between TRP and Symbiont from deposition of Symbiont's corporate representative. *Id.* Denali claims that TRP repeatedly refuses to produce the discovery materials ordered by the state court, and that it now seeks intervention in the current litigation in order to obtain the "thousands of pages of documents constituting the files of the parties related to the work at the facility, the incident and the settlement of the Trenton Biogas claims against Plaintiff Symbiont." *Id.*, at p. 3.

However, when viewed in context with other recent events, both in the New Jersey State action as well as the instant litigation, Denali's instant motion seeking intervention in the current action can better be characterized either as an attempt to circumvent court orders denying Denali's discovery requests in the state action, or a misplaced sanctions remedy for Trenton's alleged discovery malfeasance.

## II.  FACTUAL BACKGROUND OF DENALI'S LITIGATION EFFORTS

Upon information and belief, fact discovery in the underlying state court litigation was completed in the Spring of 2023, but was extended to May 18, 2023, limited only to the newly raised issue of the materials Trenton Power produced during mediation in the Symbiont Litigation. Again, upon information and belief, the New Jersey Superior Court, on recommendation from the Discovery Master, denied Denali's attempts to gather such information regarding the mediation in the Symbiont Litigation, finding that the focus of the mediation was too narrow to allow Denali's broad, sweeping, and comprehensive discovery requests. However, the Court there also stated that "in the interest of justice, this court grants the parties 90 additional days of discovery, to September 26, 2023, on the **limited issue** raised by defendant concerning **construction and warranties** regarding plaintiff's tank failures." A true and correct copy of the Superior Court's June 28, 2023, Order is appended hereto as Exhibit A (emphasis added). Thus, any additional discovery period in the state litigation is expressly limited in topic and scope by the Court's June 28 Order.

Denali represents in its current Motion that TRP was ordered to produce the discovery materials sought by Denali. However, examination of the court records shows such requests were denied as not related to matters at issue in the case. While the Superior Court extended fact discovery to explore the limited issue identified, Denali issued extensive subpoenas, both *ad testificandum* and *duces tecum,* to multiple parties in this litigation, including the Responding Defendants on or about August 4, 2023. A true and correct copy of the Denali subpoenas directed to GIS and GeoStructures are appended hereto as Exhibits B and C, collectively.

In its subpoenas, Denali seeks depositions of the Corporate Designees of GIS and GeoStructures, to testify on the following topics:

> 1. [GIS/GeoStructures]' file concerning the work performed at the Trenton facility related to the digester tanks and buffer tank.

2. The discovery [GIS/GeoStructures] produced in the Federal Litigation concerning the Tank Foundation Dispute and Mediation.

3. [GIS/GeoStructures]' contracts, agreements, or scopes of engagement, including any change orders, with Symbiont, [GIS], or other third party concerning any work on the digester tanks and buffer tank at the Trenton Facility.

4. The Tank Foundation Dispute and related communications, including liability, responsibility or fault for the cost to repair the digester tanks and buffer tank at the Trenton Facility.

5. The impact that the excessive settlement of and repairs to the digester tanks and buffer tank had on the Trenton Facility's processing capabilities.

6. Discovery, evidence, and information [GIS/GeoStructures] provided during the mediation between Symbiont and Trenton concerning the Tank Foundation Dispute.

*Ex. B*, at p. 2; *Ex. C*, at p. 2.

Furthermore, Denali seeks to compel document production related to at least twenty-five (25) topics which are included in Exhibit A of the subpoena.

Even a cursory review of both the topics for testimony as well as the document requests contained in the subpoenas demonstrate they go well beyond the "limited issue" dealing with "construction and warranties" as expressly limited by the Superior Court. Further, the incredible burden to be placed on GIS and GeoStructures by responding to these subpoenas is loudly broadcast in the first document request, which seeks "all discovery produced in the [Symbiont Litigation] . . . **including 'the thousands of pages of documents** constituting the files of the parties related to the work at the [Trenton Facility], the incident and the settlement of the Trenton Biogas claims against Plaintiff Symbiont' as represented in Symbiont's May 2, 2023 Joint Status Letter filed in the [Symbiont Litigation]." *Ex. B*, at p. 8, No. 1/ *Ex. C*, at p. 8, No. 1 (emphasis added).

Denali seeks the "entire file" from both GIS and GeoStructures "concerning **all work**

5

**related to the digester tanks and buffer tank at the Trenton Facility**" which again indicates the extremely wide scope, as well as the extremely onerous burden to be placed on GIS and GeoStructures, associated with Denali's instant requests. *Ex. B*, at p. 8, No. 2/ *Ex. C*, at p. 8, No. 2. (emphasis added). Moreover, Denali requests "all Communications with Your insurers and reinsurers Concerning the Tank Foundation Dispute[1]", "all Communications with Your insurers and reinsurers Concerning the Mediation[2]", and "all Communications with" [Trenton Power], Symbiont, Third-Party Defendant Geopier [Geopier Foundation Company, Inc.], and Third-Party Defendant GZA [GZA Geoenvironmental, Inc.] "Concerning the Tank Foundation Dispute" and/or "the Mediation.[3]"

Clearly, on the face of these requests, such intended production goes well beyond the limited scope of permissible limited discovery as prescribed by the Court's June 28 Order extending discovery for the limited purposes as stated.

Furthermore, two (2) of the deposition topics, and ten (10) of the document production requests relate directly to information surrounding the February 2022 Mediation between Trenton Power and Symbiont. Notably, though, **neither GIS nor GeoStructures participated in the February 2022 Mediation.**

When considered in context with its August 2023 subpoenas, Denali's current motion should be seen for what it is; yet another attempt to gather materials that were previously considered and denied by the state court. Denali's attempt at intervention should not be rewarded when it is simply a veiled attempt to circumvent the prior denials of the sought-after discovery materials.

---

[1] *Ex. B*, at p. 8, No. 4/ *Ex. C*, at p. 8, No. 4.
[2] *Ex. B*, at p. 8, No. 5/ *Ex. C*, at p. 8, No. 5.
[3] *Ex. B*, at p. 8, No. 8-17/ *Ex. C*, at p. 8, No. 8-17.

Additionally, a Discovery Confidentiality Order was entered by this Court on May 4, 2023. A true and correct copy of the Order is appended hereto as Exhibit D for convenience. The Order applies to all entities involved in this litigation and limits the use of the materials produced in discovery "solely for purposes of the prosecution or defense of this action, [and] shall not be disclosed by the one other than those set forth in Paragraph 4, unless and until the restrictions herein are removed either by written agreement of counsel for the parties, or by Order of the Court." *Ex. D*, at No. 3.

Denali seeks access to, and use of, the discovery materials produced in this action and which are subject to this Court's Confidentiality Order. The Court expressly limited the use of materials produced in discovery for the "prosecution or defense" of this action, but Denali seeks to use such materials outside of this litigation, for purposes unknown. *Id.* Permitting such disclosure to Denali for use in the state action would entirely undercut the reasons the Order was enacted in the first place, and would serve to expose the trade secrets, proprietary information, and other confidential business information of all of the parties herein. Certainly, such an unjust result cannot be allowed.

### III. LEGAL ARGUMENT

#### a. Standard of Review

Rule 24 of the Federal Rules of Civil Procedure governs intervention of right as well as permissive intervention. Judicial review of a court's motion for intervention is subject to an abuse of discretion analysis, but the discretion applied to the intervention of right analysis is more stringent than the discretion associated with permissive intervention. *Harris v. Pernsley*, 820 F.2d 592, 597 (3d Cir. 1987). As rule 24 provides additional guidance on intervention, and which "restricts the district court's discretion by providing that an applicant shall be permitted to

intervene if she or she satisfies the requirements of the Rule. *Id.* (*citing* F.R.C.P. 24(a)(2)).

"We, therefore, will reserve a district court's determination on a motion to intervene as of right if the court 'as applied an improper legal standard or reached a decision that we are confident is incorrect.'" *Id.* (*quoting United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 991 (2d Cir. 1984)).

### b. Intervention of Right

Intervention as a matter of right is controlled by F.R.C.P. 24(a)(2), which states:

> On timely motion, the court must permit anyone to intervene who claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Stated differently, in order to intervene as a matter of right, a party must demonstrate: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected by the disposition of the action; and (4) the interest is not adequately represented by an existing party to the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). All four requirements are required, and all four must independently be demonstrated to intervene as a matter of right. *Id., citing New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984) (*cert. denied*).

#### i. Timeliness of Motion

The timeliness of a motion to intervene is "'determined from all the circumstances' and, in the first instance, 'by the trial court in the exercise of its sound discretion.'" *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995). Additionally, the Third Circuit Court of Appeals has provided three (3) specific factors to consider in a timeliness

analysis: (1) the stage of the proceeding: (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 500 (3d Cir. 1982).

### 1. Stage of the Proceeding, Prejudice to the Parties, and Reason for the Delay

Responding Defendants acknowledge that the stage of the proceeding analysis is applied rather liberally and is generally met so long as the intervention does not require the subject case to rewind its litigation process. *See, Mountain Top Condo. Ass'n*, *supra*, at 369-370. The inquiry into timeliness and the stage of proceeding is "inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." *Id.*, at 370. Such is the primary focus and reason to disallow Denali's current request for intervention.

Here, all factors are interdependent and intertwined. It is precisely because of the prejudice that will be forced upon the parties to the instant litigation that Denali's intervention attempt is untimely and unwarranted.

Denali states that it intends simply to be a passive observant of the instant litigation, but its actual intentions are likely exposed by its prior actions in this matter. Denali issued subpoenas to GIS and GeoStructures, along with multiple other parties, seeking, *inter alia*, "all discovery produced in the [Symbiont Litigation] . . . **including 'the thousands of pages of documents** constituting the files of the parties related to the work at the [Trenton Facility], the incident and the settlement of the Trenton Biogas claims against Plaintiff Symbiont' as represented in Symbiont's May 2, 2023 Joint Status Letter filed in the [Symbiont Litigation]." Ex. B, at p. 8, No. 1/ Ex. C, at p. 8, No. 1 (emphasis added).

Therefore, not only has Denali delayed its attempt at intervention until well into the current litigation, the scope and amount of interference it intends to impose on the parties and the process itself should be viewed as a deterrent to allowing the requested intervention.

Furthermore, Denali has offered no explanation for its delay in filing the intervention request at this stage. In its very motion, Denali states that it has diligently pursued its discovery for years, including

into the theory that the Trenton facility suffered from fundamental construction and design flaws. *Denali Mot*., at Parts II (A)-(B). Such is the very topic at which Denali now seeks to intervene and further investigate, despite its prior years' long attempts to accomplish that same task in the state litigation. Denali makes no attempt to explain its delay in waiting years, which should weigh heavily against its instant requests to this Court. *See*, *Haymond v. Lundy*, 2002 WL 31149289, at *4 (E.D. Pa. 2002) ("When a proposed intervener knew or should have known of the pendency of a lawsuit at an earlier time, but failed to act at that time to protect its interests, that inaction will weigh heavily against the timeliness of the motion.") (*citing*, *Delaware Valley Citizens' Council for Clean Air*, 674 F.2d 970, 975 (3d Cir. 1982)).

### ii. Sufficient Interest in Litigation and Interest Affected by Litigation

In order to warrant intervention as a matter of right, a proposed intervener must demonstrate that it "has an interest relating to the property or transaction which is the subject of the action that is significantly protectable." *Kleisser v. U.S. Forest Service*, 157 F.3d 964, 969 (3d Cir. 1998) (citations omitted).

While an exact definition of a sufficient interest has remained elusive, many courts have taken on common-sense approach in analyzing each specific set of facts in the cases before it, with pragmatism as a "substantial factor that must be considered." *Id.*, at 970 ("The central purpose of the 1966 amendment was to allow intervention by those who might be practically disadvantaged by the disposition of the action and to repudiate the view, under the formal rule, that intervention must be limited to those who would be legally bound as a matter of res judicata." *Id.* (*citing* 7C Charles Alan Wright, Arthur R. Murray & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d § 1908*, at 301 (1986)).

Responding Defendants here assert that Denali's alleged sufficient interest must be read in context with the following requirement, "Interest Affected by Disposition." While Denali's alleged interest in the construction dispute at the heart of the current litigation may appear on the surface,

further contemplation demonstrates that interest to be nothing more than elusive and fleeting and becomes even more so if Denali's participation is observational only, as it suggests.

Denali attempts to qualify its intervention as observational only, asking that it be allowed "for the limited purposes of being notified of all electronic filings and correspondence, observing all proceedings including but not limited to depositions, hearings, and on-and-off record conferences, and receiving discovery exchanged in this litigation. *Denali Mot.,* at p. 14.

Therefore, by Denali's own express limitations, its basis for intervention is eroded if it is not asking to take any substantive role in the litigation and simply gain access to the discovery materials and deposition testimony. Thus, the question of Denali's interests, affects of disposition, and its interests being adequately represented in the current litigation all become moot if Denali does not seek to take any actions with respect to the substantive development. Rather, the current attempt at intervention should be seen for what it is – an attempt to circumvent its previously precluded subpoenas issued in the state court action, and collateral attempts to address its claimed refusals and lack of responsiveness by TRP in the underlying litigation.

Denali's claimed interest is in the potential damages that it might incur if it cannot demonstrate TRP's inability to operate at full capacity due to construction issues. However, "a mere economic interest in the outcome of the litigation is insufficient to support a motion to intervene." *Mountain Top Condo. Ass'n*, *supra*, at 366 (*citing New Orleans Public Service, Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 464 (5th Cir. 1984) ("It is plain that something more than an economic interest is necessary.")).

Denali fails to present an interest beyond the financial impacts of the litigation, and without more, cannot demonstrate a sufficient interest in the current litigation or any interest that will be affected by the litigation. Therefore, its instant request must be denied.

11

### iii. Interest Not Adequately Represented

Denali fails to adequately address this required prong to demonstrate its ability to intervene as a matter of right. Aside from the case law citations, Denali includes one sentence in support of this prong; "Denali alleges that its individual and independent interests may be overlooked since those interests may not be essential to the ultimate resolution of this litigation." *Denali Mot.,* at p. 15. No other discussion is made as to how Denali's interests would not be otherwise adequately protected by the parties herein.

Moreover, Denali's actual interest is not in determining the actual party liable for the settling of the digester tanks at the TRP facility. Rather, Denali's only interest is determining that the settling of the tanks impacts TRP's ability to operate the facility at full capacity, and thus accept 100% of the food waste contemplated in the contract between TRP and Denali. The fact that the tank settlement occurred is sufficient to serve Denali's interests in this matter, which it does not need to intervene to obtain. The factual averments contained in the Complaint in this matter serve Denali's interest likely more than intervening in the litigation would, and at a fraction of the cost and without the significant burden and prejudice which would be foisted upon the herein parties should Denali be permitted to intervene.

Lastly, to the extent that Denali argues it needs to intervene to obtain materials from TRP, it must be noted that TRP is not a party to this suit, and Responding Defendants had no interaction with TRP during the construction phases at the facility. Permitting the significant disruption that would arise with Denali's intervention, Responding Defendants state that there are less-intrusive methods for obtaining the materials sought against TRP, such as seeking sanctions for the alleged misrepresentations from the TRP representatives encountered in discovery in the state court matter.

For the reasons stated above, Responding Defendants state that Denali has failed to

demonstrate sufficient basis for it to intervene in the current matter as a matter of right.

### c. Permissive Intervention

Permissive Intervention is controlled by F.R.C.P. 24(b), which states that on "a timely motion, the court may permit anyone to intervene who has a claim of defense that shares with the main action a common question of law or fact." Permissive intervention is largely left to the sound discretion of the trial court, with few, if any, reversals of a denial of permissive intervention. *See*, *Liberty Mutual Ins. Co. v. Treesdale, Inc.,* 410 F.3d 216, 227 (3d Cir. 2005) ("In fact, one court of appeals has noted that a denial of a motion for permissive intervention "has virtually never been reversed.") (*citing, Catazano By Catazano v. Wing*, 103 F.3d 223, 234 (2d Cir. 1996)).

By its own admission then, Denali confirms that there is no common issue of law or fact between the state court action and this present litigation. In its motion, Denali advises that TRP seeks damages in the state court action "alleging that proposed intervenor Denali Water Solutions LLC breached its contractual obligations to deliver agreed quantities of source separated organic waste to the Facility under an Amended and Restated Merchant Waste Feedstock Agreement." *Denali Mot.,* at p. 1. The present action seeks to determine the liable party for the excessive settlement of the digestion tanks at the TRP facility, which is entirely independent of claims made under a Feedstock Agreement or relating to delivery of organic food waste. The two actions have no relation to one another and focus on entirely separate examinations. *See*, *Id.*, at 227-28 ("this argument [of permissive intervention] warrants little discussion or analysis, The declaratory judgment action turns on the interpretation of the contracts of insurance between PMP and Liberty Mutual. It has nothing to do with [asbestos-related] injuries to Appellants or anyone else.").

For these reasons as well as those articulated above, Responding Defendants state that Denali has failed to demonstrate not only its ability to intervene as a matter of right, but so too has

it failed to show that permissive intervention is warranted in this matter. *See*, *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1124 (3d. Cir. 1992) (Review for abuse of discretion of denial of a motion to intervene as of right is "more stringent than the abuse of discretion review we apply to a denial of a motion for permissive intervention" and "if [Plaintiffs] cannot meet the test for intervention as of right, then under the circumstances of this case it would likely be within the district court's discretion to deny permissive intervention as well.").

### d. Incredible Burden Regarding Discovery Materials

Separate and apart from the legal considerations discussed above, the procedural undertaking required if Denali's instant motion were granted cannot go unstated. The parties herein each produced thousands of documents in their respective document productions, resulting in hundreds of thousands of pages requiring review, categorization, and ultimate production of each page, for which multiple time extensions were sought and approved by this Court. Denali's intervention would not only bring this process back the beginning for each party, but would also be the source of multiple disputes regarding the undoubted withholding of materials subject to the aforementioned Confidentiality Order.

Given Denali's veiled intention of using discovery materials from this matter in the state action filed in the Superior Court, in contradiction of the Confidentiality Order, each party would have to start from square one with regards to document production. Any document that references any trade secret, confidential business practices, or other confidential information would have to be withheld, requiring the months-long production process to start anew.

Aside from the considerable time involved in such an undertaking, the significant expenses imposed on all parties cannot go without mention. Denali's intervention would cost each party tens of thousands of dollars – at a minimum – for document review and production that does not

14

further the intention of this litigation. Rather, Denali seeks to force those costs upon each party so it can avoid appealing the Superior Court's denial of the production of such materials from TRP.

The interests of justice and equality must work to avoid the imposition of such burdens on the parties to this litigation and avoid rewarding Denali for failing to properly pursue the production of such materials in the action before the Superior Court.

The substantial time, costs, and efforts imposed upon the herein parties all speak to the conclusion that Denali's present motion to intervene must be denied.

## IV.  RELIEF SOUGHT

Denali falls well short of the required burdens of demonstration in its instant motion. Denali has failed to identify a protectable interest, other than economic only, which it may have in the instant litigation, and there is little, if any, overlap between the contract action against it in state court and the construction issues involved in the instant litigation.

Furthermore, the stated limited purposes for intervention – notice of filings, observance of depositions and hearings, and participation in communications – render intervention moot, as Denali expressly states repeatedly in its motion to intervene that it does not wish to intervene, and rather, simply wants access to information that it was otherwise denied when considered by the state court.

Such efforts should not be rewarded, and certainly not when granting its instant motion would impose significant burdens of cost, time, resources, and other hardships on the Responding Defendants, as well as all other parties to the instant litigation.

For these reasons, Denali's Motion for Leave to Intervene should be denied in its entirety, with prejudice.

**O'HAGAN MEYER PLLC**

BY: <u>*/s/ Michael T. Sweeney*</u>
John P. Morgenstern, Esquire
Michael T. Sweeney, Esquire
1717 Arch Street, Suite 3910
Philadelphia, PA 19103
215-461-3300
JMorgenstern@ohaganmeyer.com
MSweeney@ohaganmeyer.com

*Attorneys for Defendants/Third Party Plaintiffs,  Ground Improvement Services, Inc., and GeoStructures, Inc.*

Dated:  October 2, 2023

## CERTIFICATE OF SERVICE

I, Michael T. Sweeney, hereby certify that on the date set forth below, I caused a true and correct copy of the foregoing Response in Opposition to Denali Water Solutions LLC's Motion to Intervene, supporting exhibits, and proposed form of Order to be filed with the ECF system which provided electronic notice to all parties.

*/s/ Michael T. Sweeney*
Michael T. Sweeney

Dated: October 2, 2023