UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYMBIONT SCIENCE ENGINEERING AND CONSTRUCTION, INC., *et al.*, | Civ. No. 22-4905 (RK)(JBD) |
| *Plaintiffs*, | OPINION |
| v. | |
| GROUND IMPROVEMENT SERVICES, INC., *et al.*, | |
| *Defendants*, | |
| v. | |
| GEOPIER FOUNDATION COMPANY, INC., *et al.* | |
| *Third-Party Defendants.* | |

This complex civil action arises from damages sustained in connection with the design and construction of an anaerobic digestion and biogas production facility in Trenton, New Jersey.  Plaintiff Symbiont Science, Engineering and Construction, Inc. ("Symbiont") contracted with non-party Trenton Biogas, LLC to provide engineering, procurement, and construction management services for the facility.  Symbiont, in turn, contracted with other entities for, among other things, geotechnical engineering and soil improvement design services.  Following construction, Trenton Biogas raised concerns with excessive settlement of the facility's component tanks and mediation ensued.  In February 2022, Symbiont settled with Trenton Biogas for more than $11.7 million to address the defects.

Thereafter, Symbiont and its insurers filed this suit in subrogation against two parties that had been contracted to help design a soil improvement system to prevent the tanks from settling beyond an acceptable level.  Symbiont alleges that those defendants are responsible for the defects and ultimately, for the payments that Symbiont's insurers paid to Trenton Biogas, as well as for millions of dollars in additional damages that Symbiont claims it has incurred or will incur.  Defendants, in turn, impleaded additional parties seeking contribution for any assessed liability. The core objective of this case, then, is to allocate fault and financial responsibility amongst the parties for the construction issues at the facility.  Pretrial discovery to that end is complex, voluminous, and ongoing.

Presently before the Court is a motion to intervene filed by non-party Denali Water Solutions LLC ("Denali").  Denali played no role in the design or construction of the Trenton Biogas facility and has no financial interest in the outcome of this litigation.  Since 2020, however, Denali itself has been embroiled in separate litigation in New Jersey state court with Trenton Renewable Power, LLC ("TRP"), a Trenton Biogas affiliate, in connection with a contract that called for Denali to supply source-separated organic waste as input material for the facility.  Denali seeks to intervene not for the purpose of asserting a claim or defense of its own in this case.  Denali also acknowledges that the ultimate disposition of this suit will not affect its interests.  Interested instead in the information that will be exchanged during discovery, Denali seeks to intervene for what it says is the more "limited

2

purpose" of protecting its asserted informational interests that could affect its own defenses in the separate state court litigation.  Denali specifically requests to play "an observatory role" in these proceedings; to be "notified of all electronic filings and correspondence"; to be "permitted to observe all proceedings[,] including but not limited to depositions, hearings, and on and off record conferences"; and to be "permitted to review discovery exchanged in this matter."  [Dkt. 92-3] ("Denali Mov. Br.") at 4.

The Court has received extensive briefing on the motion and held oral argument on November 29, 2023.  For the following reasons, the Court will deny Denali's motion to intervene.[1]

I.   BACKGROUND

Denali seeks to intervene in this federal action to obtain information that may help support its defenses in the state court litigation just described.  The Court therefore summarizes the two actions in more detail.

A.   <u>This Action</u>

The following facts are derived from Symbiont's second amended complaint and, for present purposes only, are assumed as true.  As noted above, Symbiont and

---

[1]   This opinion and the accompanying order resolve a non-dispositive motion pursuant to 28 U.S.C. § 636(b).  *See, e.g.*, *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 198 n.6 (3d Cir. 2014) (not precedential) ("[T]he Magistrate Judge considered the motion [to intervene] as a non-dispositive motion under 28 U.S.C. § 636(b), which empowers her to do so even absent consent of the parties."); *In re Gabapentin Patent Litig.*, 321 F. Supp. 2d 653, 661 (D.N.J. 2004) ("A ruling on a motion to intervene is typically treated as non-dispositive.").

Trenton Biogas entered into an Engineering, Procurement and Construction ("EPC") contract, pursuant to which Symbiont provided engineering, procurement, and construction management services in connection with the anaerobic digestion and biogas production facility in Trenton. Second Amended Complaint, [Dkt. 23] ("SAC") ¶ 15. The contract contemplated the construction of four large, above-ground tanks—three digester tanks and one buffer tank. *Id.* ¶ 18. In January 2018, third-party defendant GZA GeoEnvironmental, Inc. ("GZA") issued a geotechnical engineering evaluation report concerning the facility, which reported that the ground where the tanks would be installed needed to be stabilized and reinforced because the existing near-surface fill layer was unsuitable to support the tanks' foundations. *Id.* ¶¶ 20-21. Accordingly, in February 2018, Symbiont and defendant Ground Improvement Services, Inc. ("GIS") entered into a contract under which GIS provided soil improvement design services to ensure that the tanks would not settle beyond an acceptable level. *Id.* ¶¶ 22-24. GIS, in turn, contracted with defendant GeoStructures of Virginia, Inc. ("GeoStructures") to assist with that endeavor. *Id.* ¶ 25.

Thereafter, in August 2018, GIS and its subcontractors completed the soil improvement system. SAC ¶¶ 32-33. As part of its work, GIS completed a load test and informed Symbiont that the test complied with the settlement requirements. *Id.* ¶¶ 33-34. Thereafter, another contractor (not a party to this action) constructed concrete floor slabs for the tanks under a contract with Symbiont, and another

contractor (also not a party to this action) erected the four tanks under a direct contract with Trenton Biogas.  *Id.* ¶ 35.

The following spring, from March 2019 to May 2019, the tanks were tested by filling them with water to their operating capacity.  *Id.* ¶ 36.  The specifics of the ensuing design and construction issues are immaterial to Denali's motion to intervene; it suffices for these purposes to say that beginning with the initial tests and continuing for many months, the tanks settled in the soil to an unacceptable level, causing the need for expensive and time-consuming remediation.  *See generally id.* ¶¶ 36-53.

As a result of these issues, Trenton Biogas placed Symbiont on notice of a dispute under the EPC contract, and the parties engaged in mediation.  SAC ¶¶ 54-55.  In February 2022, the parties settled and Symbiont agreed to pay Trenton Biogas $11.715 million in exchange for a release of all of Trenton Biogas's claims relating to the settlement of the digester tanks and buffer tank.  *Id.* ¶ 56.  Symbiont's insurers assumed responsibility for this payment, and Symbiont alleges that it sustained additional losses, costs, and expenses of more than $3.285 million beyond what its insurers paid to Trenton Biogas, and that it faces additional non-released claims by Trenton Biogas, totaling more than $4 million, for additional alleged damages that defendants caused.  *Id.* ¶¶ 57-61.

Symbiont and its insurers thereafter sued GIS and GeoStructures in this Court, asserting claims for, *inter alia*, breach of contract, negligence, professional

malpractice, breach of warranty, and indemnification.  GIS and GeoStructures answered the second amended complaint and filed third-party complaints against Geopier Foundation Company ("Geopier") and GZA.  [Dkts. 30, 31.]  In brief, GIS and GeoStructures allege that GZA and Geopier contributed, in whole or in part, to the tank settlement issues and therefore should be held financially responsible for any liability assessed against GIS and GeoStructures.[2]

Given the technical issues and the number of parties involved in this action, discovery is voluminous and complex.  The parties have exchanged tens if not hundreds of thousands of pages of written discovery and soon will begin an initial round of fact depositions.

    B.    <u>The State Court Action</u>

Meanwhile, in December 2018, and concomitantly with the construction of the facility, Denali and TRP entered into a merchant waste feedstock agreement under which Denali agreed to deliver to the facility source-separated organic waste that would be converted to renewable natural gas.  A dispute under the contract arose, and in April 2020, Denali notified TRP of its intent to terminate the contract if TRP did not cure certain asserted defaults.  Denying that it had defaulted, TRP brought suit against Denali in the Superior Court of New Jersey, Mercer County, Chancery Division, and discovery ensued.

---

[2]    GZA has filed a motion to dismiss the third-party claims against it. That motion is fully briefed and pending.

Discovery disputes arose in the state court proceedings.  Stripped to the essentials, Denali sought discovery from TRP regarding any disputes that TRP or its affiliates (*e.g.*, Trenton Biogas) had regarding the construction of the facility. Specifically, Denali sought discovery regarding "construction disputes, design disputes, or other disputes with [TRP or Trenton Biogas] contractors, engineers, or other professionals concerning the efforts to repurpose and retrofit the Trenton Facility for use as an anaerobic biodigester facility." [Dkt. 92-5] at 6.  Denali says that it sought this discovery because if the facility were defective or inoperable, then it might support an impossibility-type defense to TRP's contract claims.  Denali also sought the discovery to determine if any or all of TRP's or Trenton Biogas's alleged damages were attributable not from Denali's asserted breach of the merchant feedstock agreement, but from the facility's construction defects.

Years of proceedings on this issue—before both the state court and a special discovery master designated by that court—followed.  Denali asserts that TRP has wrongfully stonewalled its efforts to obtain the requested discovery.  In fact, Denali claims that during discovery in the state court action, TRP officials lied when asked in depositions whether there were any disputes surrounding the construction of the facility.  Denali claims that not until the day before the close of fact discovery did it learn from a Symbiont representative that intensive mediation was then ongoing

7

between it and Trenton Biogas as to the settlement of the facility's tanks.[3]
The state court largely denied Denali's efforts to obtain its desired discovery, but in
June 2023, the court granted Denali 90 days to seek discovery "on the limited
issue . . . concerning construction and warranties regarding [TRP's] tank failures."
[Dkt. 94-2] at 2.  Denali then issued supplemental discovery requests to TRP and
subpoenas to the parties in this action requesting materials concerning the
construction dispute.  TRP and several of the subpoena recipients moved to quash
the subpoenas and/or for a protective order limiting the requested discovery, and on
October 11, 2023, the state court heard oral argument on those applications.  As of
the date of this opinion, the state court has not ruled on the motions to limit or
preclude TRP's discovery requests.

        The upshot of the state court proceedings to date is that Denali—from its
perspective—has been stymied in its efforts to obtain what it says is necessary
discovery from TRP regarding the construction dispute that is at the heart of this
federal action.  So on September 12, 2023, Denali turned to this Court:  It filed a
motion under Rule 24 to intervene as of right and for permissive intervention.
As the Court noted at the outset, Denali does not seek to intervene to assert a claim
or defense of its own in this case.  Instead, Denali wishes primarily to access the

_____

[3]      In a letter filed in this action, TRP denies Denali's allegations that it or its
representatives have done anything improper during discovery in the state court
litigation.  [Dkt. 94.]  As explained below, this Court need not and does not opine on
Denali's and TRP's discovery disputes to resolve the instant motion to intervene.

discovery exchanged in this matter—subject to its execution of the confidentiality order generally governing discovery in this case—and to be notified of and attend all proceedings in this case (both on and off the record), including depositions. The parties to this action oppose Denali's motion.

## II.   DISCUSSION

Denali argues that it should be permitted to intervene as of right under Rule 24(a) and, in the alternative, permissively under Rule 24(b).  The Court addresses each argument in turn.

### A.   Intervention as of Right

Rule 24(a)(2) provides that "[o]n timely motion, the [C]ourt must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  The Third Circuit interprets Rule 24(a) to allow an applicant to intervene as of right upon satisfying four criteria:  (i) the application for intervention is timely; (ii) the applicant has a sufficient interest in the litigation; (iii) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (iv) the interest is not adequately represented by an existing party in the litigation.  *See Mtn. Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995); *Brody v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992); *Harris v.*

*Pernsley,* 820 F.2d 592, 596 (3d Cir. 1987).  The applicant bears the burden of establishing the existence of all four factors, and "failure to satisfy any one of the four factors justifies denial of the request."  *Islamic Soc'y of Basking Ridge v. Twp. of Bernards*, Civ. No. 16-1369 (MAS), 2016 WL 7332732, at *1 (D.N.J. Dec. 16, 2016) (citations omitted).[4]

No party seriously argues that Denali fails to establish the first or fourth Rule 24(a)(2) factors.  Accordingly, the Court focuses on the second and third factors. As to those factors, the Third Circuit has recognized that "given the multitude of situations in which intervention controversies can arise, what constitutes . . . a [sufficient] interest "defies a simple definition."  *Harris*, 820 F.2d at 596 (citation omitted).  In determining motions to intervene as of right, therefore, courts must be flexible and address the specific circumstances of each case.  *See Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 975-80 (3d Cir. 1998) (Becker, C.J., concurring). "[P]roposed intervenors need not possess an interest in each and every aspect of the

---

[4]     In both its briefing and during oral argument, Denali heavily emphasized the "relating to" clause in Rule 24(a)(2) (highlighting what it says is the rule's breadth) but largely ignored the clause underlying the third Rule 24(a)(2) factor—"and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."  Transcript of Oral Argument ("Tr."), at 15:6-13; 20:5-7; 26:21-22; 31:5-10; 78:21-22 (Nov. 29, 2023).  Indeed, at oral argument, counsel appeared to suggest that the third factor is somehow incorrect or has been eroded by subsequent case law.  *Id.* at 79:5-25; 30:21-25.  To the extent that is the argument, the Court rejects it.  The four factors set forth above required for intervention as of right under Rule 24(a)(2) are well-established law in the Third Circuit and remain in full force.  *E.g.*, *Commonwealth of Pa. v. Pres. of the U.S.*, 888 F.3d 52, 57 (3d Cir. 2018) (reciting the four factors).

litigation.  Instead, "[t]hey are entitled to intervene as to specific issues so long as their interest in those issues is significantly protectable." *Benjamin ex rel. Yock v. Dep't of Pub. Welfare of Pa.*, 701 F.3d 938, 951 (3d Cir. 2012) (quoting *Mtn. Top*, 72 F.3d at 368).

At the same time, Rule 24(a)(2) imposes real requirements that must be met. *Islamic Soc'y of Basking Ridge*, 2016 WL 7332732, at *1.  At minimum, "the legal interest asserted must be a cognizable legal interest, and not simply an interest 'of a general and indefinite character.'" *Brody*, 957 F.2d at 1116 (quoting *Harris*, 820 F.2d at 601) (internal quotations marks and citation omitted).[5]  "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's

---

[5]      In its reply brief and at oral argument, Denali quoted part of a comment from *Brody* in support of its argument that "the Third Circuit's 'policy preference . . . , as a matter of judicial economy, favors intervention." *Id.* (quoting *Brody*, 957 F.2d at 1123) (ellipses in Denali's brief).  But Denali omits a clause from the quoted language and takes it out of context.  The full comment, which concerns the third Rule 24(a)(2) factor regarding impairment of the asserted interest, is as follows: "An applicant need not, however, prove that he or she would be barred from bringing a later action or that intervention constitutes the only possible avenue of relief. The possibility of a subsequent collateral attack does not preclude an applicant from demonstrating that his or her interests would be impaired should intervention be denied.  Such a holding would reverse our policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks." *Brody*, 957 F.2d at 1123.  This statement stands for the proposition that where there is a possibility that a proposed intervenor could later collaterally attack a judgment that adversely affects its interests, courts prefer intervention over a later collateral attack.  But Denali has neither reason nor basis to collaterally attack any judgment entered in this case, so the quoted language is inapposite here.  And at any rate, regardless of any general judicial preference favoring intervention, the four Rule 24(a)(2) factors have real work to do and Denali bears the burden of satisfying each.

interest is direct or remote.  Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought.  The interest may not be remote or attenuated . . . ."  *AstraZeneca AB v. Dr. Reddy's Laboratories, Ltd.*, Civ. No. 05-5553 (JAP), 2010 WL 4387519 (D.N.J. Oct. 29, 2010) (quoting *Kleisser*, 157 F.3d at 972).  Generally, an "economic interest in the outcome of litigation is insufficient to support a motion to intervene."  *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 221 (3d Cir. 2005) (quoting *Mtn. Top*, 72 F.3d at 366.

"Once an applicant for intervention has established that he or she possesses a sufficient legal interest in the underlying dispute, the applicant must also show that this claim is in jeopardy in the lawsuit."  *Brody*, 957 F.2d at 1122.  "It is not sufficient that the claim be incidentally affected; rather, there must be 'a tangible threat' to the applicant's legal interest.  Th[e third] factor may be satisfied if, for example, a determination of the action in the proposed intervenors' absence will have a significant *stare decisis* effect on their claims, or if the proposed intervenors' rights may be affected by a proposed remedy."  *Seneca Res. Corp. v. Twp. of Highland, Elk Cnty., Pa.*, 863 F.3d 245, 257 (3d Cir. 2017) (quoting *Brody*, 957 F.2d at 1123 (cleaned up)).  "Thus, the mere fact that a lawsuit may impede a third party's ability to recover in a separate suit ordinarily does not give the third party a right to intervene."  *Mtn. Top*, 72 F.3d at 366.

Applying these standards, the Court concludes that Denali fails to establish the second and third Rule 24(a)(2) factors.

      1.    <u>Denali Has Not Identified a Sufficiently Definite, Direct, and Legally Protectable Interest in this Case Sufficient to Warrant Intervention as of Right.</u>

At times in its briefing, Denali describes its interest in these proceedings as ensuring that "TRP is not seeking damages in the State Court Action that are attributable to parties other than Denali." Denali Mov. Br. at 4. *See also id.* at 12 ("Denali has a significant interest in ensuring that Trenton [Renewable Power] is not seeking a recovery from Denali in the State Court Action that is attributable [to] and was already received from Symbiont."). The Court has no doubt that Denali has an interest in that issue, for it constitutes what Denali says is a key defense in the state court litigation. But that issue is not going to be litigated or decided in this federal case. This case is about the allocation of fault between Symbiont, the defendants, and the third-party defendants for the construction defects at the facility. That allocation will not answer the question whether there is overlap in the asserted damages caused by Denali's alleged breach of contract and by the asserted damages caused by the construction defects at issue here. By framing its interest in this way, Denali simply identifies its ultimate objectives in state court. That does not establish a tangible, concrete, non-attenuated, and legally protectable interest *in this case*.

Elsewhere in its briefing, however, Denali articulates its interest in this case in a different way:  It says that it has an interest in the *information* that has been and will be exchanged during discovery in this case.[6]  It is that information, Denali says, that may assist with its ultimate objectives in the state court action.

Although Denali assuredly is *interested* in obtaining information that may help its defense in state court, that does not mean it has a sufficient *interest* in obtaining discovery exchanged in this case to warrant intervention as of right. The Court concludes (i) that Denali's generalized interest in information exchanged in discovery in this case is not a legally protectable interest, and (ii) that the asserted informational interest is too indirect, too abstract, too "tangential and collateral," and too "general and indefinite" to satisfy the second Rule 24(a)(2) factor. *Harris*, 820 F.2d at 601.

As a non-party, Denali has no more of a legally protectable interest in confidential discovery information exchanged in this private civil action than does any other non-party.  *Cf. N. Jersey Media Grp. Inc. v. United States*, 836 F.3d 421, 436 (3d Cir. 2016) ("[D]iscovery traditionally has been conducted by the parties in private and has not been publicly available.") (citing *United States v. Wecht*,

---

[6]    *See, e.g.*, Denali Mov. Br. at 13 ("Denali also has a significantly protectable legal interest related to the identification and preservation of discovery relevant to the State Court Action."); [Dkt. 104] ("Denali Rep. Br.") at 1 ("Denali's interest here is in access to information . . . ."); *id.* at 2 (identifying "Denali's interest and reasons for wanting the information" exchanged in discovery in this case); *id.* at 5 ("Denali simply wants access to the information disclosed in this case, which is relevant to the issues in the state court action. . . .  Denali's interest here is in information.").

484 F.3d 194, 208 (3d Cir. 2007)); *Rightchoice Managed Care, Inc. v. Hosp. Partners, Inc.*, Civ. No. 18-6037 (DGK), 2020 WL 5733203, at *2 (W.D. Mo. Sept. 24, 2020) ("Unlike judicial records, 'the public 'has no constitutional, statutory (rule-based), or common-law right of access to unfiled discovery.'" (quoting *Tussey v. ABB Inc.*, Civ. No. 06-4305 (NKL), 2012 WL 2368471, at *2 (W.D. Mo. June 21, 2012) (in turn quoting *Bond v. Utreras*, 585 F.3d 1061, 1073, 1075 (7th Cir. 2009))); *In re Agent Orange Prod. Liab. Litig.*, 96 F.R.D. 582, 584 (E.D.N.Y. 1983) ("[T]here is no independent right of access by non-parties to materials produced in discovery and not made part of the public record.") (citation omitted).

Accordingly, simply because information in this case may be relevant to Denali's defenses in other litigation does not give Denali a legally protectable right to obtain here what would otherwise be inaccessible to it.  This is particularly true because Denali has been unsuccessful thus far in obtaining the same information directly in state court.  As a general matter, "a party may not use a motion to intervene . . . so as to circumvent limitations on discovery in the intervening party's own case."  *In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*, Civ. No. 16-4686, 2018 WL 5303326, at *2 (E.D. Pa. Oct. 24, 2018) (denying a motion for permissive intervention so that proposed intervenors could obtain discovery for use in revisiting other litigation that they had already lost); *see also* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d § 2044.1 (2d ed. 1994) ("If the limitation on discovery in the collateral litigation would be substantially subverted

15

by allowing access to discovery material under a protective order, the court should be inclined to deny modification."). Denali presently is vigorously pursuing largely the same body of discovery in the state court litigation. To any extent that Denali's interest in information relevant to the state court action is legally protectable, that interest is legally protectable not in this case, but in the state court action to which Denali is a party—and, if necessary, the state appellate process.[7]

For similar reasons, the Court also concludes that Denali's asserted interest in information in this case is too tangential, abstract, generalized, and indefinite to satisfy the second Rule 24(a)(2) factor. The information to which Denali wants access is not, in and of itself, the object of or directly at issue in this action; with or

---

[7]    In *H.L. Hayden Co. of New York v. Siemens Medical Systems, Inc.*, 797 F.2d 85 (2d Cir. 1986), the Second Circuit rejected the State of New York's effort to intervene in a civil antitrust litigation. Having served subpoenas on one of the parties to produce materials in the litigation that were covered by a protective order, the State sought to intervene as of right to obtain those materials in the litigation to help protect its interest "in the enforcement of its antitrust laws, in gaining access to [the subpoenaed materials], and in reviewing the facts with all concerned." *Id.* at 88. The Second Circuit rejected that argument, explaining that "[t]he State has no significantly protectable interest in the litigation that will be impaired by the disposition of the action." *Id.* (cleaned up). The court explained that the State had an avenue to obtain the records by separate means, and likely could discuss those separately obtained records with the parties as it saw fit, but if not, "the modest impairment of the State's enforcement efforts that results from the district court's decision is not sufficient to justify an automatic right of intervention, since New York's ability to enforce its anti-trust laws has not been destroyed or even significantly curtailed." *Id. H.L. Hayden* supports the Court's conclusion here that Denali's asserted interest in information in this case is not sufficiently protectable to warrant intervention as of right simply because that information may be relevant to its own state court case.

16

without its participation, Denali's generalized interest in information is not an issue to be adjudicated in this case.  The discovery to be exchanged is simply an ordinary by-product of the litigation between private parties.  Accordingly, the Court concludes that Denali has failed to set forth a concrete, direct, and non-attenuated interest in this litigation.[8]

Bolstering this conclusion, Denali has identified no authority supporting the proposition that general access to information in discovery that might be used in separate litigation is a protectable, direct, and concrete interest sufficient to satisfy Rule 24(a)(2).  *See AstraZeneca*, *supra*, 2010 WL 4387519, at *7 (noting that the proposed intervenor's failure to identify any on-point precedent bolstered the court's

---

[8]    Although factually different, the Court sees conceptual parallels between the interests asserted in *United States v. W.R. Grace & Co.-Conn.*, 185 F.R.D. 184 (D.N.J. 1999), and the interests asserted here.  *W.R. Grace* was a CERCLA action brought by the federal government seeking contribution for environmental cleanup costs at a Superfund site; the municipality in which the site was located sought to intervene as of right and articulated, among other things, a "general interest in protecting the health and property values of its residents." *Id.* at 190.  While characterizing that interest as "laudable," the Court concluded that the asserted interest was "not a legally defined or protected interest," and affirmed the denial of the municipality's motion to intervene as of right. *Id.*  Likewise, the Court here finds Denali's "general interest" in information exchanged in this action to be similar in kind.  This Court also notes that *W.R. Grace* identified the "following situations" in which courts have found "an interest sufficient to justify intervention as of right in an ongoing cause of action:  (1) where the action will affect the intervenor's rights through the action of *stare decisis*; (2) where the contractual rights of the intervenor will be adversely affected; (3) where violations of the intervenor's statutory or constitutional rights are asserted; (4) where the intervenor's right to contribution will be limited; or (5) where the intervenor's property values would be adversely affected." *Id.* at 189 (cleaned up).  While those situations are not necessarily exhaustive, it is notable that none of them is present here.

determination that the asserted interests in the litigation were too remote and indirect to support intervention as of right).[9]

For these reasons, the Court concludes that Denali fails to satisfy the second Rule 24(a)(2) factor.

> ### 2. The Disposition of this Action Will Not Impair Denali's Asserted Interest in Information Relevant to its Defenses in the State Court Action.

Denali's motion separately fails on the third Rule 24(a)(2) factor. That factor requires a proposed intervenor to "do more than show that his or her interest may be affected in some incidental manner" by the disposition of the action; the movant instead "must demonstrate that there is a tangible threat" to the asserted interest. *W.R. Grace*, 185 F.R.D. at 189 (quoting *Harris*, 820 F.2d at 601). The disposition of this action, however, will not in any way affect, directly or indirectly, Denali's asserted interest in discovery information exchanged in this case, nor will it directly

---

[9]     Relying heavily on *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), Denali argues that it has a legally protectable right to information because the Third Circuit has recognized the right of non-parties to intervene to challenge protective orders for the purpose of obtaining certain litigation records. But *Pansy* and cases that follow it are *permissive* intervention cases under Rule 24(b). *See id.* at 778. Nowhere in *Pansy* did the Third Circuit recognize a freestanding and legally protectable right of a non-party to access unfiled discovery materials exchanged during private litigation, nor did it suggest that a generalized interest in obtaining information satisfies Rule 24(a)(2)'s second factor. If anything, the fact that *Pansy* and its progeny are permissive intervention cases under Rule 24(b) reinforces the Court's conclusion that Denali does not have a legally protectable interest in discovery information for purposes of intervention as of right under Rule 24(a)(2). As for permissive intervention, the Court addresses *Pansy* in Section II.B.2, below.

or materially affect Denali's defenses in the state court case.  Indeed, at oral argument, Denali expressly disclaimed any interest in who wins and who loses this lawsuit.  Tr. at 7:23-24.  Denali does not really care whether Symbiont and its insurers are fully responsible for the tank settlement on the one hand, or whether Symbiont's sub-contractors and the third-party defendants bear some or all responsibility on the other hand.  Moreover, Denali conceded at oral argument that the ultimate allocation of fault and financial responsibility amongst the parties in this action will not have any effect on the issues to be decided in the state court action.  *Id.* at 10:17-25; 11:5-6.

    As noted above, "the mere fact that a lawsuit may impede a third party's ability to recover [or here, defend] in a separate suit ordinarily does not give the third party a right to intervene."  *Mtn. Top*, 72 F.3d at 366.  This case, however, is even one step removed from that:  The disposition of this lawsuit will not impede Denali's defenses in the state court litigation at all, and thus nothing about the disposition of this suit represents a "tangible threat" to Denali's asserted interests in accessing discovery exchanged in this case, or to its ultimate defense in state court. The disposition of this lawsuit will not determine or impact either Denali's defenses in the state court action or Denali's ability to obtain information relevant to those offenses.  Whatever the ultimate allocation of fault amongst the various parties in this case is determined to be, Denali will be no worse off legally than it is now; it will have at its disposal whatever arguments in its defense that it has today.  Nothing

19

about the ultimate fault allocation here will have *stare decisis* or *res judicata* effect on Denali's defenses in the state court litigation, and no remedy that this Court provides to any party here will affect Denali's rights in any way.  *See Brody*, 957 F.2d at 1123 (explaining that the third Rule 24(a)(2) factor "may be satisfied if, for example, a determination of the action in the applicants' absence will have a significant *stare decisis* effect on their claims, or if the applicants' rights may be affected by a proposed remedy") (citing *Harris*, 820 F.2d at 601).[10]

Because the disposition of this lawsuit will not impair its asserted interests, Denali also cannot satisfy the third Rule 24(a)(2) factor.

\*\*\*

Denali fails to establish that it has a concrete, direct, and legally protectable interest that might be directly and adversely affected by the disposition of this lawsuit.  Its motion to intervene as of right is therefore denied.[11]

---

[10]    At oral argument, Denali suggested that a determination in this case that Symbiont and its insurers settled with Trenton Biogas for an unreasonable sum may have some downstream impact on Denali's defenses in the state court action.  Tr. at 66:6-10; 66:14-25; 67:1-11.  The Court rejects this argument.  For starters, it is not clear to the Court that the reasonableness of the settlement is an issue that necessarily will be decided in this case.  But even if that sort of determination is made in this case and is relevant to any arguments that Denali might make in the state court action, that relevance is marginal, tangential, incidental, and indirect, and in any event, it would have no *stare decisis* or *res judicata* effect in the state court action in a way that would present a "tangible threat" to Denali's asserted interests in information.

[11]    The Court notes that Denali has pointed to just one case in which a court permitted anything remotely close to the passive observational role proposed here. *See UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co.*, Civ. No. 18-17191 (MCA), 2020

20

B.     Permissive Intervention

Denali also moves for permissive intervention under Rule 24(b).  That rule

provides that "[o]n timely motion, the [C]ourt may permit anyone to intervene

who . . . has a claim or defense that shares with the main action a common question

of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  The question whether to grant permissive

intervention under Rule 24(b) is a "highly discretionary decision."  *King v. Governor*

*of the State of N.J.*, 767 F.3d 216, 246 (3d Cir. 2014) (quoting *Brody*, 957 F.2d at

1115).  "In exercising its discretion, the court must consider whether the

intervention will unduly delay or prejudice the adjudication of the original parties'

rights."  Fed. R. Civ. P. 24(b)(3).

Although the federal and state actions focus on different issues, it is fair to

acknowledge that there may be some factual overlap between the two cases.

The Court need not decide, however, whether Denali has satisfied the threshold

Rule 24(b) requirement that it has a defense in the state court action that shares

common questions of fact with this case.  Even if that threshold requirement is

satisfied, significant prudential considerations counsel against permitting Denali to

intervene in this case.  *Cf. Nicholas v. Saul Stone & Co. LLC*, Civ. No. 97-860 (AET)

(D.N.J. Oct. 11, 1997) (explaining that "[p]ermissive intervention is addressed to the

_____

WL 5810562, at *1 (D.N.J. Sept. 30, 2020).  But the *UBS* decision itself observed
that the moving parties did "not argue that they should be permitted to intervene as
of right," and that it was "apparent that intervention as of right is not
applicable . . . ."  2020 WL 5810562, at *2 n.1.  For the reasons explained, it is
equally apparent to this Court that intervention of right is not applicable here.

Court's discretion.  The Court is not under any obligation to permit intervention simply because there are questions of law or fact in common.").  And neither the Third Circuit's decision in *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994), nor this Court's decision in *UBS Financial Services. Inc. v. Ohio National Life Insurance Co.*, Civ. No. 18-17191 (MCA), 2020 WL 5810562 (D.N.J. Sept. 30, 2020), counsel or command a different result.

1. <u>Prudential Considerations Counsel Against Permitting Denali to Intervene</u>.

The Court has serious concerns about the potential ramifications of permitting Denali to intervene to observe all proceedings and obtain all discovery in this case. At least three prudential considerations come immediately to mind and lead the Court to exercise its discretion not to allow Denali to intervene permissively.

*First*, and most importantly, Denali asks this Court to grant it access to information and materials in this case that the state court, thus far, has largely denied it.  Denali repeatedly stresses that it is not asking this Court to opine on the merits of the state court's discovery decisions.  That is fair enough, and the Court certainly will not be doing that.  But even without stating a view on the matter, this Court has significant concerns with the practical effect and appearance of granting to Denali in this forum access to materials and information—for potential use in state court—when the state court itself has, to date, denied Denali's efforts to obtain that same information.  As another court has said in analogous circumstances,

22

"the court can conjure few actions which would show less respect for the sovereignty and authority of the state courts than to permit discovery in a case to go forward based on federal subpoenas where the state court has specifically ordered that certain pieces of evidence should be subject to a protective order." *Horton v. Pobjecky*, Civ. No. 12-7784, 2013 WL 791332, at *2 (N.D. Ill. Mar. 4, 2013). Out of proper respect for the state court and its supervision of discovery in that action, this Court declines to make itself, effectively, Denali's safety-valve option for the state court's discovery decisions with which Denali disagrees.

Moreover, and as a related point, it is notable that TRP has filed a letter in this case requesting that if the Court grants Denali's intervention request, that it too be given the opportunity to seek to intervene to protect its own rights. [Dkt. 94] at 5-6 n.3. The Court is hard-pressed to see how it could grant Denali's intervention request and then deny TRP's competing request. But permitting both parties to the state court action to intervene in this federal case would have obvious and highly prejudicial ramifications on the orderly discovery process and the primary issues to be decided between the parties here. The Court will not allow these proceedings to devolve into a parallel forum for resolving ongoing discovery disputes in the separate state court action.

*Second*, Denali assures the Court that it has no intention of taking an active role in the discovery process. The Court accepts Denali's representation as made earnestly and in good faith, but the Court still harbors concerns about the potential

23

for circumstances to arise that could alter Denali's present calculus. If, for example, information comes to light during depositions that is of interest to Denali, it seems difficult to envision Denali restraining itself from wanting to probe further on the issue, even if the line of questioning will be of no value to any other party. And given that Denali already has accused TRP representatives of lying under oath in the state court action, it seems unlikely that Denali will not have a position if the same or other TRP or Trenton Biogas representatives testify in this case. These are just two examples of potential mischief that the parties have identified to the Court. The Court, in sum, is concerned about the potential for unintended consequences—that Denali's promise of passive involvement in this case could change and then sidetrack the proceedings in a prejudicial way.[12]

*Third*, and underscoring the last point, Denali's request for passive access to discovery in this case also is self-defeating. Denali requests that it be permitted to obtain all discovery exchanged in this case, subject to its execution of the discovery confidentiality order that governs discovery in this case. Tr. at 14:16-18. But paragraph 4 of that order expressly directs that discovery material designated

---

[12]     During oral argument, the Court and counsel discussed the possibility of granting Denali access only to those materials relevant to its state-court defenses. Tr. 31:23-25; 32; 33:1-7; 36:5-12. Upon reflection, the Court is persuaded that the logistical burdens involved in requiring the parties to identify more limited categories of materials for production to Denali—which almost certainly would be accompanied by extensive collateral negotiations amongst counsel, and potentially disputes that this Court would need to resolve—would make the situation worse, not better.

confidential may only be used "for purposes of the prosecution or defense of this action, and shall not be used by the receiving party for any business, commercial, competitive, personal or other purpose." [Dkt. 79], ¶ 4. So if Denali were to obtain access to confidential discovery in this case that it believes supports its defense in the state court action, it is unclear what it could do with that material:  Even bringing that discovery to the attention of the trial court would violate the confidentiality order.  Recognizing this point, Denali's counsel acknowledged at oral argument that if Denali obtained in this case a confidential document that supported its position in the state court action, it would be forced to seek relief from the confidentiality order here before it could use the document there.  Tr. at 87:1-3.  But doing that would be taking an active role in the litigation that is significantly in tension with—if not entirely contrary to—Denali's assurances of passive observation and receipt of information.

Given these considerations, granting Denali's motion here will, in the Court's view, significantly risk "undu[e] delay or prejudice [in] the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  In the circumstances of this case, the Court concludes that it would be imprudent to exercise its discretion to permit Denali to intervene under Rule 24(b).

2.      *Pansy* and its Progeny Do Not Require or Warrant Denali's
        Intervention Here.

As noted above, *see supra* note 9, Denali places great emphasis on the Third

Circuit's decision in *Pansy* to support its asserted interest in discovery information

in this case.  But *Pansy* neither requires nor counsels permitting Denali to intervene

here under Rule 24(b).

In *Pansy*, a group of newspapers sought to intervene in an action that had

resulted in a settlement between the plaintiff and defendant concerning alleged civil

rights violations by a government entity; the media sought to intervene for the

purpose of obtaining a copy of the settlement agreement, which the newspapers

argued was a judicial record subject to the First Amendment's right of access

doctrine.  23 F.3d at 775.  In the alternative, the newspapers argued that they had a

right to intervene for purpose of seeking to modify the applicable order designating

the settlement agreement confidential and thus not obtainable under the state's

freedom of information law.  *Id*.  As relevant to the permissive intervention request

under Rule 24(b), the Third Circuit reversed the trial court's conclusion that the

newspapers "ha[d] not shown that their claim has anything in common with a

question of law or fact in the case," concluding that the trial court should have

permitted the newspapers to intervene permissively for the purpose of seeking to

modify the applicable confidentiality order.  *Id*.  The Third Circuit "agree[d] with

other courts that have held that the procedural device of permissive intervention is

appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Id.* The court of appeals thereafter concluded that the settlement agreement was not a public record subject to the right of access, and remanded the matter so the trial court could exercise its discretion (applying a list of factors that the court of appeals explained) as to whether to modify the confidentiality order to permit the newspapers to obtain the settlement agreement under the state's freedom of information law. *Id.* at 780-92. In doing so, however, the Third Circuit "h[e]ld that where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." *Id.* at 791.

For multiple reasons, this case is materially distinguishable from *Pansy*. *First*, Denali expressly does not seek—as the newspapers in *Pansy* sought—to challenge or modify the discovery confidentiality order entered in this case. To the contrary, Denali (at least for now) seeks to abide by it. Tr. at 14:8-9, 16-17.

*Second*, whereas the newspapers in *Pansy* sought to intervene to obtain a single, specific, identified document subject to a confidentiality order, Denali here seeks, *ex ante*, to intervene for the purpose of obtaining *all* discovery (including deposition testimony) that has been or will be exchanged in this action so that it might obtain information that could assist it in the state court action.

27

*Third*, in *Pansy*, the Third Circuit placed great importance on the fact that under applicable freedom of information laws, the newspapers would have been able to obtain the settlement agreement but for the confidentiality order governing that document. Here, however, Denali seeks broad and non-specific swaths of ordinary discovery materials exchanged in litigation between private parties—none of which it asserts would be presumptively obtainable under New Jersey's open public records laws or any other right of access doctrine.

*Finally*, as the Court explained above, to date the state court has denied Denali's efforts to obtain the discovery materials it seeks, and this Court is concerned about the end run on those rulings that permitting Denali to intervene would create. In an analogous case, parties sought to intervene under *Pansy* to obtain discovery for use in an earlier case that they had not obtained in that action, but the court rejected the request. While generally "recogniz[ing] that access to protected information for use in another case may be a legitimate reason for modification of a protective order," the court also explained that "a party may not use a motion to intervene . . . so as to circumvent limitations on discovery in the intervening party's own case." *In re Zostavax (Zoster Vaccine Live) Prod. Liab. Litig.*, Civ. No. 16-4686, 2018 WL 5303326, at *2 (E.D. Pa. Oct. 24, 2018) (citing Charles Alan Wright, *et al.*, 8A Fed. Prac. & Proc. Civ. § 2044.1 (3d ed. 1994)) (denying a motion for permissive intervention so that proposed intervenors could

28

obtain discovery for use in other litigation that they had already lost).  The court's

concluding statement in *Zostavax* is equally applicable here:

> This case is clearly distinguishable from *Pansy* where strong public
> interest considerations weighed in favor of modification.  In *Pansy*, a
> newspaper sought access to information protected in a settlement
> agreement discussing alleged civil rights violations of a government
> entity.  By contrast, the [proposed intervenors] seek to gain access to
> protected materials between private parties merely to obtain a second
> bite at the apple for themselves.

*Id.* at *3 (citation omitted); *accord AT&T Corp. v. Sprint Corp.*, 407 F.3d 560,

562 (2d Cir. 2005) (affirming denial of permissive intervention motion,

concluding that "the motion appears to be an attempt to circumvent the close

of discovery in [the proposed intervenor's] State Court Action").

 *Pansy* does not stand for the proposition that a court must grant permissive

intervention requests for the purpose of giving a proposed intervenor open-ended

access to all future and otherwise-inaccessible private discovery materials and

testimony.  The Court does not categorically foreclose permitting Denali to intervene

under *Pansy* in the future for the limited purpose of seeking to modify the discovery

confidentiality order if specific materials or documents potentially relevant to the

state court proceeding come to its attention.  But the Court does not read *Pansy* to

require permitting a non-party unfettered permission, on the front end, to access,

screen, and analyze all discovery exchanged in this case for possible future use in

other litigation.

3.    The Decision in *UBS* is Distinguishable

Finally, as the Court noted above, Denali cites one decision from this Court in support of its request to play an "observatory" role in the discovery process here and obtain copies of discovery exchanged.  *See UBS Fin. Servs. Inc. v. Ohio Nat'l Life Ins. Co.*, Civ. No. 18-17191 (MCA), 2020 WL 5810562 (D.N.J. Sept. 30, 2020).  To be sure, the Court in *UBS* granted a motion for permissive intervention by two entities seeking access to discovery in that case.  But the context of that case is materially different than this one and does not overcome the Court's serious prudential concerns described above.  Most fundamentally, the parties seeking intervention in *UBS* were plaintiffs in another action (*Veritas*) against Ohio National Life Insurance Company, which was also a defendant in *UBS*.  2020 WL 5810562, at *1-2.  That is not the case here:  No party in this case is a party to the state court action, and no party in the state court action is a party to this one.  In addition, in *UBS*, a special master had been appointed to oversee discovery disputes, and the intervenors sought to obtain discovery materials to avoid duplicating the same anticipated discovery disputes in the *Veritas* action.  The Court pointedly noted that "the *Veritas* Suit is so similar to this case that the [plaintiff in *UBS*] saw fit to annex a copy of the initial complaint in the *Veritas* Suit as an exhibit to their complaint."  *Id.*  The Court further noted that both actions "arise out of the same kind of alleged breaches of commission agreements by the Ohio National Insurers."  *Id.*  As noted above, while this case may have some commonalities with the state court action, the ultimate

issues, legal claims, and theories are fundamentally different.  So where permitting intervention in *UBS* would increase efficiency, the Court is convinced that permitting intervention would *decrease* it here.

***

Exercising its considerable discretion under Rule 24(b), the Court denies Denali's motion for permissive intervention.

## III.   CONCLUSION

For the reasons stated, Denali's motion to intervene will be denied.

An appropriate order follows.

Date:  February 1, 2024
       Trenton, New Jersey

J. Brendan Day
United States Magistrate Judge