## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SYMBIONT SCIENCE ENGINEERING AND CONSTRUCTION, INC., ZURICH AMERICAN INSURANCE COMPANY, a/s/o Symbiont Science, Engineering and Construction, Inc., AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a/s/o Symbiont Science, Engineering and Construction, Inc., STEADFAST INSURANCE COMPANY, a/s/o Symbiont Science, Engineering and Construction, Inc., | Civil Action No. 22-4905 (RK) (JBD) **OPINION** |
| Plaintiffs, | |
| v. | |
| GROUND IMPROVEMENT SERVICES, INC., and GEOSTRUCTURES, INC. D/B/A GEOSTRUCTURES OF VIRGINIA, INC., | |
| Defendants/Third-Party Plaintiffs, | |
| v. | |
| GEOPIER FOUNDATION COMPANY, INC., and GZA GEOENVIRONMENTAL, INC., | |
| Third-Party Defendants. | |

### KIRSCH, District Judge

**THIS MATTER** seeks to determine liability and the parties responsible for damages arising from the tumultuous construction of an "anaerobic digestion and biogas production," otherwise known as a food waste recycling and renewable energy facility. Non-party Trenton Biogas, LLC ("Trenton Biogas") sought to construct four large above-ground tanks. It hired

Symbiont Science, Engineering and Construction, Inc. ("Symbiont"), which thereafter subcontracted with additional entities to assist in engineering and soil improvement services necessary for the construction. Following completion of the tanks, excessive soil settlement caused the tanks to be largely unusable, leading to costly repairs. Trenton Biogas and Symbiont ultimately settled their claims in mediation. Thereafter, Symbiont and its insurers sued two subcontractors, bringing, among others, claims for negligence and breach of contract. These subcontractors then impleaded other third parties that they claim were at fault for any of the damage Symbiont alleges. Symbiont thereafter filed a third-party complaint against the newly joined third parties, thus arriving at the current state of affairs.

Pending before the Court are two motions: a Motion filed by Third-Party Defendant GZA GeoEnvironmental, Inc. ("TPD GZA"), (ECF No. 57), to dismiss the Third-Party Complaint filed by Third-Party Plaintiffs Ground Improvement Services, Inc. ("TPP GIS") and GeoStructures, Inc. ("TPP GeoStructures") (together, "Third-Party Plaintiffs"), (ECF No. 31). In this same motion, GZA also moves to dismiss the Federal Rule of Civil Procedure 14(a)(3) Complaint filed by Plaintiff Symbiont Science, Engineering and Construction, Inc. ("Symbiont"), and its insurers Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, "Plaintiffs"), (ECF No. 36). The second pending motion before the Court is a Motion filed by Third-Party Defendant Geopier Foundation Company, Inc. ("TPD Geopier"), (ECF No. 63), to Dismiss the Federal Rule of Civil Procedure 14(a)(3) Complaint filed by Plaintiffs. The case was transferred to the undersigned on May 15, 2023. (ECF No. 82.)

The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons

set forth below, TPD GZA's Motion to Dismiss, (ECF No. 57), is **GRANTED** in part and **DENIED** in part, and TPD Geopier's Motion to Dismiss, (ECF No. 63), is **GRANTED**.

## I.    BACKGROUND[1]

### A.    FACTUAL BACKGROUND

The following facts are derived from Third-Party Plaintiffs' Complaints against TPD GZA, ("TPC-GZA," ECF No. 31), and TPD Geopier ("TPC-Geopier," ECF No. 30), and accepted as true only for purposes of deciding the subject motions. The Court cites to Plaintiffs' Second Amended Complaint, ("SAC," ECF No. 23), only to provide additional background. The Court notes that Plaintiffs are on their third operative complaint, and this litigation has been pending for over eighteen (18) months, with well more than one-hundred (100) entries on the docket sheet thus far, but discovery has not yet commenced.

Symbiont and non-party Trenton Biogas, LLC ("Trenton Biogas") entered into a "Engineering, Procurement and Construction Contract" ("EPC") relating to the construction of an anaerobic digestion and biogas production facility (the "Facility"). (SAC ¶ 15; TPC-GZA ¶¶ 13–14.) The contract called for the construction of four (4) above ground storage tanks: three (3) digester tanks and one (1) buffer tank. (SAC ¶ 18.) TPD GZA "provides geotechnical, environmental, water, ecological and construction management services." (TPC-GZA ¶ 12.) TPD GZA issued two (2) "Geotechnical Engineering Evaluation Reports" to Trenton Biogas concerning construction of the Facility and the land on which it was to be built. (*Id.* ¶ 15; SAC ¶ 20.) TPD GZA provided these reports to Trenton Biogas on June 28, 2013 (the "2013 Report") and January 5, 2018 (the "2018 Report"). (TPC-GZA ¶ 16.) The 2018 Report stated that "the ground [around

---

[1] The factual and procedural histories of this matter are well known to the parties and to the Court. The Honorable Judge J. Brendan Day, U.S.M.J. recently issued a decision outlining the factual background. (*See* ECF No. 121.) As such, the Court therefore recounts only the details necessary to resolve the Motions discussed herein.

the Facility] would need to be stabilized and reinforced" as the existing near-surface fill layer of the soil was "unsuitable" to support the storage tanks. (SAC ¶ 21.)

As such, on February 8, 2018, TPP GIS and Symbiont entered into an agreement (the "Subcontractor Agreement") where TPP GIS agreed to perform soil improvement designed to bolster support for the foundation of the soil on which the tanks were to be constructed. (TPC-GZA ¶ 22; SAC ¶22.) TPP GIS is a Virginia-based contractor that offers "ground improvement construction services." (TPC-GZA ¶¶ 1, 10.) The Agreement provided that TPP GIS would improve the soil foundation such that the tanks would not settle beyond certain levels—in this case two (2) inches, with a maximum differential of one-half (1/2) of an inch. (SAC ¶¶ 23–24.) TPP GIS engaged TPP GeoStructures to assist in the soil improvement designs. (SAC ¶ 25.) TPP GeoStructures, a GIS-subsidiary also based in Virginia, supplies "ground improvement designs to GIS." (TPC-GZA ¶¶ 2, 11.)

The agreement between TPP GIS and Symbiont incorporated a proposal that TPP GIS had previously sent to Symbiont in January 2018. (TPC-GZA ¶¶ 19–22.) This proposal referenced the January 2018 Report by TPD GZA. The 2018 Report was included as a "Bid Document," and the proposal stated that TPP GIS based its assumptions for the work required based on the soil levels "as depicted" in TPD GZA's reports. (*Id.*; *see also* ECF No. 31, Ex. C at 2.) Third-Party Plaintiffs allege that they "relied upon the professional testing and recommendations by GZA in its reports." (TPC-GZA ¶ 26.)

The agreement between TPP GIS and Symbiont also incorporated a sublicensing agreement between TPP GIS and TPD Geopier. (TPC-Geopier ¶¶ 19–23.) TPD Geopier "franchises certain rights pursuant to sublicensing agreements." (*Id.* ¶ 12.) TPP GIS and TPD Geopier entered into a "sublicensing agreement titled 'Impact Pier Sublicensing Agreement'" on

August 17, 2017. (*Id.* ¶ 15.) This sublicensing agreement "granted a license to GIS to install and use Geopier's design methodologies" and required TPP GIS to comply with TPD Geopier's standard equipment mandates. (*Id.* ¶¶ 22–23.) TPP GIS contends that the sublicensing agreement mandates that TPD Geopier indemnify TPP GIS for any damage incurred by TPP GIS arising out of TPD Geopier's failure to adhere to the agreement. (*Id.* ¶¶ 28–29.)

In July and August 2018, TPP GIS performed the soil improvement work. (SAC ¶ 33.) This included a load test, which TPP GIS reported to Symbiont was successful and conformed with the soil settlement requirements of the Subcontractor Agreement. (*Id.* ¶¶ 33–34.) Thereafter, a non-party contractor constructed the concrete floor slabs for the tanks, and an additional third-party assembled the tanks. (*Id.* ¶ 35.)

From March through May 2019, the tanks were tested by filling each with water up to the tank's operating capacity. (*Id.* ¶ 36.) The tests revealed "indications of foundation settlement," about which Symbiont notified TPP GIS. (*Id.* ¶¶ 37–38.) Following subsequent discussions between the parties, TPP GIS believed that the soil settlement would cease once the tanks were filled. (*Id.* ¶ 39.) However, in April 2020, once the tanks reached full capacity after Trenton Biogas began operations, the tanks settled to levels beyond those specified in the Subcontractor Agreement. (*Id.* ¶ 42.) As a result of the settlement, the tanks were prevented from operating at their full capacities and were forced to operate at severely restricted levels. (*Id.* ¶ 44.) The continued settlement caused damage to the tanks, which required additional work, such as releveling, in order for operations to continue. (*Id.* ¶¶ 45–52.) Ultimately, the tanks settled between six (6) and (7) inches, well beyond the two (2) inches allowed under the Subcontractor Agreement. (*Id.* ¶ 52.)

Pursuant to the terms of the EPC, Trenton Biogas placed Symbiont on notice of a dispute based on the settlement levels that had occurred. (*Id.* ¶ 54.) The parties entered into mediation, where they reached a settlement agreement, with Trenton Biogas releasing Symbiont of all claims relating to the settlement of the four tanks in exchange for $11.715 million. (*Id.* ¶ 56.) Symbionts' insurers assumed responsibility for this payment; however, Symbiont claims it has incurred additional expenses of $3.285 million beyond what its insurers paid and faces additional un-released claims from Trenton Biogas totaling over $4 million. (*Id.* ¶ 60.)

### B.    PROCEDURAL HISTORY

On October 5, 2022, Symbiont and its insurers initiated this action, filing suit against Defendants/Third-Party Plaintiffs GIS and GeoStructures. (ECF No. 1.) Plaintiffs subsequently amended the Complaint twice, filing their Second Amended Complaint on October 12, 2022. (ECF Nos. 7, 23.) Plaintiffs assert claims against GIS for negligence and professional malpractice (Count One); breach of contract and contractual indemnification (Count Two); breach of express warranty (Count Three); breach of implied warranty (Count Four); breach of contract, procurement of insurance (Count Five); and common law indemnification (Count Six). Plaintiffs also bring claims against GeoStructures, asserting negligence and professional malpractice (Count Seven) and common law indemnification claims (Count Eight).[2] Plaintiffs seek money damages of at least $15 million. GeoStructures and GIS answered Plaintiffs' Complaint on October 24, 2022 and November 4, 2022, respectively. (ECF Nos. 28, 29.)

---

[2] Plaintiffs also bring claims against "John Does 1–10" for negligence and professional malpractice, and common law indemnification (Counts Nine and Ten).

On November 4, 2022, Defendants/Third-Party Plaintiffs GIS and GeoStructures filed Third-Party Complaints against TPD GZA and TPD Geopier. (ECF Nos. 30, 31.)[3] Against TPD GZA, Third-Party Plaintiffs assert claims of professional negligence (Count One); negligent misrepresentation (Count Two); contribution (Count Three); and indemnification (Count Four). Third-Party Plaintiffs seek monetary payment "for all sums" for which Third-Party Plaintiffs may be liable to Plaintiffs. In Count One, Third-Party Plaintiffs contend that TPD GZA "owed a duty to exercise reasonable care, technical skill, ability, and diligence ordinary exercised by engineers" in providing their services to Trenton Biogas. (TPP ¶¶ 32–33.) However, TPD GZA's report to Trenton Biogas included "material defects and deficiencies," and TPD GZA "breached its duties of care that it owed to all contractors and subconsultants," and as it was "foreseeable" that future contractors would rely on TPD GZA's reports. (*Id.* ¶¶ 34–38.) In Count Two, Third-Party Plaintiffs contend they "reasonably relied" upon TPD GZA's reports "to their detriment," which contained "material misrepresentations of facts and material omissions." (*Id.* ¶¶ 42–49.) In Count Three, Third-Party Plaintiffs argue that any damages Plaintiffs obtain against it "resulted from the acts or omissions of GZA," and, under the Joint Tortfeasors Contribution Law and Comparative Negligence Act, TPD GZA is liable for contribution. (*Id.* ¶¶ 50–53.) Finally, in Count Four, Third-Party Plaintiffs seek TPD GZA to indemnify them from any liability against Plaintiffs. (*Id.* ¶¶ 54–56.)

Against TPD Geopier, Third-Party Plaintiffs bring claims for breach of contract (Count One); contribution (Count Two); and indemnification (Count Three). Third-Party Plaintiffs

---

[3] TPD Geopier filed an Answer to the Third-Party Complaint against it. (ECF No. 53.) As such, the Court focuses on the Third-Party Complaint against TPD GZA.

contend that the sublicensing agreement requires TPD Geopier to indemnify them against any damages asserted by Plaintiffs. (TPC-Geopier ¶¶ 35–45.)

On November 11, 2022, Plaintiffs, pursuant to Rule 14(a)(3), filed a Complaint against Third-Party Defendants Geopier and GZA. ("Pls. TP Compl.," ECF No. 36.) The Rule 14(a)(3) Complaint "assert[ed] direct claims against" TPD Geopier and TPD GZA "[t]o the extent that [Third-Party Plaintiffs GIS and GeoStructures] established [TPD Geopier and TPD GZA's] liability." (*Id.* ¶ 5.) On January 9, 2023, TPD Geopier filed Answers to both the Third-Party Complaint and Plaintiffs' Rule 14(a)(3) Complaint and asserted crossclaims against TPD GZA and Third-Party Plaintiffs GIS and GeoStructures. (ECF Nos. 53, 55.) Thereafter, on January 20, 2023, TPD GZA filed a Motion pursuant to Rule 12(b)(6) to Dismiss both the Third-Party Complaint and the Rule 14(a)(3) Complaint against it. (ECF No. 57.)[4] Third-Party Plaintiffs filed a brief in opposition, ("TPP Opp'n," ECF No. 66), and TPD GZA filed a brief in Reply, ("TPD GZA Reply," ECF No. 70.)[5]

On February 16, 2023, TPD Geopier filed a Motion to Dismiss Plaintiffs' Rule 14(a)(3) Complaint. ("TPD Geopier Mov. Br.," ECF No. 63.) Plaintiffs filed a consolidated brief in opposition to both Third-Party Defendants Geopier and GZA's respective Motions to Dismiss, ("Pls. Opp'n," ECF No. 65), and Geopier filed a brief in Reply, ("TPD Geopier Reply," ECF No. 71). The Court now turns to the subject motions.

---

[4] The Court will refer to TPD GZA's Memorandum of Law in support of its Motion, (ECF No. 57-3), as "TPD GZA Mov. Br."

[5] This brief was also made in reply to Plaintiffs' brief in opposition, (ECF No. 65).

## II.   **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[6] For a complaint to survive dismissal under this rule, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). However, the Court "need not credit bald assertions or legal conclusions" or allegations "involv[ing] fantastic factual scenarios lacking any arguable factual or legal basis" or that "surpass all credulity." *Degrazia v. F.B.I.*, No. 08-1009, 2008 WL 2456489, at *3 (D.N.J. June 13, 2008), *aff'd*, 316 F. App'x 172 (3d Cir. 2009) (citations and quotation marks omitted).

A court must only consider "the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).[7] "Factual

---

[6] As TPD Geopier originally filed an Answer to Plaintiffs' Rule 14(a)(3) Complaint, (ECF No. 55), and then moved to dismiss, the Court construes TPD Geopier's Motion to Dismiss, (ECF No. 57), as a Motion for Judgement on the Pleadings. Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The pleadings are 'closed' after the complaint and answer are filed, along with any reply to additional claims asserted in the answer." *Horizon Healthcare Servs., Inc. v. Allied Nat. Inc.*, No. 03-4098, 2007 WL 1101435, at *3 (D.N.J. Apr. 10, 2007). In reviewing a motion for judgment on the pleadings, courts apply the same standards as when reviewing a motion to dismiss under Rule (12)(b)(6). *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991) (citations omitted); *see also Muhammad v. Sarkos*, No. 12-7206, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014).

[7] While the Court may rely on a document not included with the complaint if the claims are based on that document, the Third Circuit has explained that "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Doe v.*

allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550

U.S. at 555. Furthermore, "[a] pleading that offers labels and conclusions or a formulistic recitation

of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked

assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotation

marks omitted). "Restatements of the elements of a claim are legal conclusions, and therefore, are

not entitled to a presumption of truth." *Valentine v. Unifund CCR, Inc.*, No. 20-5024, 2021 WL

912854, at *1 (D.N.J. Mar. 10, 2021) (citing *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 224

(3d Cir. 2011)).

## III.   <u>DISCUSSION</u>

The Court first turns to TPD GZA's Motion to Dismiss Plaintiffs' Rule 14(a)(3) Complaint.

TPD GZA moves to dismiss the Complaint based on Plaintiffs' alleged failure to comply with Rule

8(c). Next, the Court will address TPD GZA's Motion to Dismiss the Third-Party Complaint in

full filed by Third-Party Defendants, as well as TPD Geopier's Motion to Dismiss the Rule

14(a)(3) Complaint as barred by the economic loss doctrine.

### A.   FAILURE TO STATE A CLAIM

TPD GZA moves to dismiss Plaintiffs' Rule 14(a)(3) Complaint for failure to adhere to the

pleading standards of Rule 8. (*See* GZA Mov. Br. at 24–25.)[8] TPD GZA contends that the Rule

14(a)(3) Complaint fails to put TPD GZA "on notice of facts supporting why Plaintiffs are entitled

---

*Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). As such, the Court only relies on exhibits submitted with the motion to dismiss briefing to the extent the facts in those documents are not explicitly contradicted by the Complaint.

[8] TPD Geopier refers to the Rule 14(a)(3) Complaint as being "under-pled." (*See* TPD Geopier Mov. Br. at 14.) However, because TPD Geopier does not specifically move to dismiss for failure to state a claim, the Court does not consider it to seek dismissal under Rule 8.

to relief from GZA." (*Id.*) Plaintiffs counter that their Complaint adopts by reference the statements and causes of action in Third-Party Plaintiffs' Complaints. (Pls. Opp'n at 9–11.)

Rule 8 sets forth the general rules of pleading. Fed. R. Civ. P. 8. The Rule requires a Complaint to have: "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction;" "a short and plain statement of the claim showing that the pleader is entitled to relief;" and "a demand for the relief sought;" and "allegations [that are] simple, concise, and direct." Fed. R. Civ. P. 8(a),(d).

Plaintiffs' Rule 14(a)(3)[9] Complaint is a terse five (5) paragraphs. (*See generally* Pls. TP Compl.) Plaintiffs state that Third-Party Plaintiffs "allege within their Third Party Complaints that [TPD GZA and TPD Geopier] are liable to the [Third-Party Plaintiffs] for the claims made by Plaintiffs against [Third-Party Plaintiffs]." (*Id.* ¶ 3.) Plaintiffs continue, claiming that "[t]he manner in which [GZA and Geopier] are alleged to have been negligent, culpable or are otherwise responsible in connection with the matter and damages at issue is set forth" in Third-Party Plaintiffs' respective Complaints against Third-Party Defendants. (*Id.* ¶ 4.) Finally, Plaintiffs allege that "[t]o the extent that [Third-Party Plaintiffs] established the liability of [TPD GZA and TPD Geopier] Plaintiffs hereby assert direct claims against [TPD GZA and TPD Geopier] pursuant to Fed. R. Civ. Pro. 14(a)(3)." (*Id.* ¶ 5.)

Pursuant to Rule 10(c), "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. P. 10(c). This Rule is designed to "encourage pleadings that are short, concise, and free of unwarranted repetition as well as to promote convenience in pleading." Adoption by Reference Permitted, 5A Fed. Prac. & Proc.

---

[9] The parties do not dispute the propriety of Plaintiffs asserting a claim under Rule 14(a)(3). Under this Rule, a "plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a)(3).

Civ. § 1326 (4th ed.). While "there is no prescribed procedure for referring to incorporated matter," a party who incorporates another pleading by reference must do so "direct[ly] and explicit[ly], in order to enable the responding party to ascertain the nature and extent of the incorporation." *Id.*; *Gen. Acc. Ins. Co. of Am. v. Fid. & Deposit Co. of Maryland*, 598 F. Supp. 1223, 1229 (E.D. Pa. 1984) ("For all or part of a prior pleading to be incorporated in a later pleading, the later pleading must specifically identify which portions of the prior pleading are adopted therein."). As one district court has explained, there is "scant case law addressing wholesale incorporations by reference." *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 447 n.16 (E.D. Va. 2009), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). However, the court explained "that a district court has broad discretion, based on the factual and procedural history of a particular case, to accept or to reject attempts at wholesale incorporation of . . . pleadings." *Id.* Moreover, "this privilege [of incorporation] is not without limits, as it can easily be abused." *Id.* at 447.

District Courts within the Third Circuit have focused on the clarity of the incorporation and whether a defendant can ascertain the claims against it. *See B & E Dimensional Stoneworks, LLC v. Wicki Wholesale Stone, Inc.*, No. 11-1297, 2012 WL 511519, at *5 (M.D. Pa. Feb. 15, 2012) (finding plaintiff "minimally satisfied the requirements of Rule 8(a)" in part based on a defendant's choice to answer the allegations in the complaint, as opposed to move to dismiss, and the fact that the incorporated document made specific references to the party); *Cooper v. Nationwide Mut. Ins. Co.*, No. 02-2138, 2002 WL 31478874, at *5 (E.D. Pa. Nov. 7, 2002) (A defendant's "well-reasoned and comprehensive motion to dismiss is testimony that [the plaintiff] provided it with sufficient notice of the complaint's scope and factual basis.").

The Court finds that Plaintiffs' Rule 14(a)(3) Complaint fails to adhere to Rule 8, and therefore, must be dismissed without prejudice. As an initial matter, the text of Rule 10 applies to

"*[a] statement* in a pleading." Fed. R. Civ. P. 10(c) (emphasis added). The Rule does not state that pleadings may be adopted wholesale by cross-reference, nor does Plaintiff point to any case or prior examples where courts have accepted such piggy-backing off of another party. While the Court's survey of the caselaw reveals that other district courts have stated that all of a pleading may be adopted, they have made clear that "the later pleading must specifically identify which portions of the pleading are adopted therein." *Fid. & Deposit Co.*, 598 F. Supp. at 1229. As Wright and Miller explain, "the references to prior allegations must be direct and explicit to enable the responding party to ascertain the nature and extent of the incorporation." § 1326 Adoption by Reference Permitted, 5A Fed. Prac. & Proc. Civ. § 1326 (4th ed.). In Plaintiffs' Rule 14(a)(3) Complaint, besides referencing the docket numbers, Plaintiffs fail to make clear what portions of the Third-Party Plaintiffs' Complaints they incorporate, including the claims they allege.

Thus, the Court is compelled to dismiss Plaintiffs' Rule 14(a)(3) Complaint under Rule 8. As discussed above, Third-Party Plaintiffs assert non-identical causes of actions against the respective Third-Party Defendants. Against TPD Geopier, they assert breach of contract, contribution, and indemnification; and against TPD GZA, they assert negligence, negligent misrepresentation, contribution, and indemnification. However, both TPD Geopier and Plaintiffs' briefing discuss a tort claim and the applicability of a tort doctrine, lending further credence to the idea that Plaintiffs' incorporation is unclear.

In its Motion to Dismiss, TPD Geopier contends that "we know that the Plaintiff[s'] intent was to pursue a direct cause of action against [TPD Geopier]. Presumably, that cause of action would sound in negligence since Plaintiff[s] [have] no contract with [TPD Geopier]." (TPD Geopier Mov. Br. at 1.) However, Third-Party Plaintiffs do not assert a negligence claim against

TPD Geopier.[10] Moreover, in its opposition, Plaintiffs argue against the applicability of the economic loss doctrine, a doctrine only applicable to tort claims. Third-Party Plaintiffs allege no tort claim against TPD Geopier, and as will be discussed below, a claim for contribution under the New Jersey Joint Tortfeasors Contribution Law is not a standalone claim. Rather, it depends on the existence of an underlying tort. As such, the Court finds relevant that TPD Geopier cannot ascertain Plaintiffs' claims against it. *See B & E Dimensional Stoneworks*, 2012 WL 511519, at *5; *Cooper*, 2002 WL 31478874, at *5; *see also* Fed. R. Civ. P. 8(a)–(d) (The Rule requires a Complaint, *inter alia* to contain: "a demand for the relief sought;" and "allegations [that are] simple, concise, and direct.").

Therefore, the Court dismisses Plaintiffs' Rule 14(a)(3) claim against TPD GZA and TPD Geopier for failure to state a claim.[11]

---

[10] While there is language discussing tort principles such as duty and foreseeability, Third-Party Plaintiffs do not assert a tort cause of action. As such, the Court will not assert one for it.

[11] TPD Geopier makes general references to the Plaintiffs' Complaint being under-pled. (*See* TPD Geopier Mov. Br. at 14.) However, they do not move to dismiss under Rule 8 or for failure to state a claim. However, a Court may dismiss a complaint under Rule 8 *sua sponte*, though the Third Circuit has cautioned that such dismissal should be done sparingly and only when a complaint is "confused, ambiguous, vague or otherwise unintelligible." *See Tillio v. Northland Grp. Inc.*, 456 F. App'x 78, 79 (3d Cir. 2012). In the case at bar, it is unclear to both the parties and the Court the bases for Plaintiffs' Complaint against TPD Geopier. Much of the discussion in the briefing concerns the economic law doctrine, but there is no tort claim alleged in the Rule 14(a)(3) Complaint. Moreover, a claim for contribution under the Joint Tortfeasors Contribution Law cannot sound in contract. *See Trustees of Princeton Univ. v. Tod Williams Billie Tsien Architects, LLP*, No. 19-21248, 2021 WL 9667971, at *8 (D.N.J. Jan. 29, 2021) (finding no contribution claim where pleading "at most set forth a claim that [third-party defendant] breached its contract" and there were no allegations that third-party defendant "was liable in tort"); *Meyers v. Heffernan*, No. 12-2434, 2014 WL 3343803, at *10 (D.N.J. July 8, 2014) (no contribution claim where "underlying action involved contract-based claims" as the parties were not "joint tortfeasors" (citing *See Longport Ocean Plaza Condo., Inc. v. Robert Cato & Assocs., Inc.,* No. 00–2231, 2002 WL 2013925, at * 2 (E.D. Pa. Aug. 29, 2002)). As such, the Court will dismiss Plaintiffs' claim against TPD Geopier *sua sponte* with leave to file an amended complaint making clear its claims and the factual bases for same against TPD Geopier, in the event they have sufficient bases to do so. Toward that end, the Court refers counsel to the last sentence of the first paragraph under Section 1, Background, Subheading A, Factual Background, set forth at page three (3).

## B.  PROFESSIONAL NEGLIGENCE

Count One of the Third-Party Complaint asserts a claim for professional negligence against TPD GZA. (TPC-GZA ¶¶ 31–41.) TPD GZA moves to dismiss this claim, arguing that it did not owe a duty to Third-Party Plaintiffs. (TPD GZA Mov. Br. at 13–15.) Third-Party Plaintiffs, on the other hand, aver that as professional engineers, TPD GZA owed a duty to Third-Party Defendants, and breached that duty by issuing reports with material errors. (TPP Opp'n at 5–8.)

Under New Jersey law, to assert a claim for negligence, a plaintiff must demonstrate four elements: "(1) a duty of care, (2) that [the defendant] breached that duty, (3) that such breach proximately caused harm, and (4) that [the plaintiff] suffered actual damages." *Lax v. City of Atl. City*, No. 19-7036, 2019 WL 7207472, at *4 (D.N.J. Dec. 27, 2019); *Ehrlich v. McInerney*, No. 17-879, 2019 WL 4745269, at *10 (D.N.J. Sept. 30, 2019). A negligence claim requires a plaintiff to establish that a duty was owed to them. *See Pine Belt Enterprises, Inc. v. SC & E Admin. Servs., Inc.*, No. 04-105, 2005 WL 2469672, at *6 (D.N.J. Oct. 6, 2005) ("Before a party may be held liable for breach of an obligation, 'it must first be established that the party in fact owed a duty to act in a certain manner.'" (quoting *Riggs v. Schappell,* 939 F.Supp. 321, 329 (D.N.J. 1996))). "[A] duty is an obligation imposed by law requiring one party to conform to a particular standard of conduct toward another." *Rezem Fam. Assocs., LP v. Borough of Millstone*, 30 A.3d 1061, 1071 (N.J. Super. Ct. App. Div. 2011) (quoting *Acuna v. Turkish*, 930 A.2d 416 (N.J. 2007)).

The determination of whether a duty exists is generally a matter for the Court. *Id.* "The foreseeability of harm is a significant consideration in the determination of a duty to exercise reasonable care," and while it does not establish a duty in and of itself, "it is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." *Carvalho v. Toll Bros. & Devs.*, 675 A.2d 209, 212 (N.J. 1996) (citations omitted). Once a party satisfies

foreseeability, the Court turns to "considerations of fairness and policy," including "identifying, weighing, and balancing several factors—the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Zielinski v. Pro. Appraisal Assocs.*, 740 A.2d 1131, 1135 (N.J. Super. Ct. App. Div. 1999) (citations and quotation marks omitted).

TPD GZA contends that it does not owe a duty to Third-Party Plaintiffs. (TPD GZA Mov. Br. at 13–14.) TPD GZA argues that it had a contract with Trenton Biogas only, and "GZA owed no duty to third-parties outside of its contractual responsibilities to [Trenton Biogas]." (*Id.* at 15.) As such, TPD GZA avers that there is no "privity" and thus no duty. (*Id.*) Moreover, TPD GZA cites to a limitation clause in both the 2013 and 2018 Reports prepared for Trenton Biogas, in which TPD GZA stated that "reliance by any party not expressly identified in the agreement, for any use, without prior written permission, shall be at that party's own risk, and without any liability to GZA." (*Id.*) Due to the contractual language, Third-Party Plaintiffs, TPD GZA contends, were not "within the zone of danger" and thus not a foreseeable user of TPD GZA's reports. (*Id.*) In opposition, Third-Party Plaintiffs contend that TPD GZA's argument regarding contractual privity is a red herring, as no contract is needed for a tort claim. (TPP Opp'n at 6–8.)

At this juncture, the Court agrees with Third-Party Plaintiffs that they have sufficiently alleged a negligence claim. Third-Party Plaintiffs claim that "GZA owed a duty to exercise reasonable care, technical skill, ability and diligence ordinarily exercised by engineers and engineering firms in similar circumstances" and owed "duties of care . . . with respect to the design, development, and construction of the soil improvement system." (TPC-GZA ¶¶ 33, 38.) At this stage, the Court accepts Third-Party Plaintiffs' allegations as true, and Third-Party Plaintiffs have adequately alleged that TPD GZA owed a duty of care, as professional engineers, to Third-Party

Plaintiffs and others that may have relied on TPD GZA's reports in the future. *See Fawole v. Fed. Home Loan Mortg. Corp.*, No. 20-12514, 2021 WL 1625143, at *3 (D.N.J. Apr. 27, 2021) (accepting facts in the plaintiff's complaint as true and finding sufficient allegations that the defendant owed plaintiff a duty of care); *Mullin v. Balicki*, No. 11-247, 2019 WL 2315044, at *11 (D.N.J. May 31, 2019) (finding the plaintiff's allegations regarding a duty of care "plausible," and thus the negligence claim survived a motion to dismiss).

Third-Party Plaintiffs allege it was "foreseeable" that a subcontractor would be hired by Trenton Biogas and would thereafter rely on the Reports by TPD GZA in subsequent tasks. (TPC-GZA ¶¶ 34–36.) TPD GZA's 2018 Report stated that "the ground [around the Facility] would need to be stabilized and reinforced" due to the fact that the existing near-surface fill layer of the soil was "unsuitable" to support the storage tanks. (SAC ¶ 21.) Accepting these allegations as true, "it requires no leap of imagination" to reason that TPD GZA's reports would be relied upon by subsequent subcontractors in the preparation of the Facility, as the 2018 Report explained that Trenton Biogas would need to hire a subcontractor to improve the soil so the tanks could be built. *See Preferred Real Est. Invs., Inc. v. Edgewood Props., Inc.*, No. 06-4266, 2007 WL 81881, at *3 (D.N.J. Jan. 9, 2007) (concluding the plaintiff sufficiently pled allegations of foreseeability); *see also Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2012 WL 4172133, at *22 (D.N.J. Aug. 31, 2012) (engineer owed duty to third-party not in contractual privity); *Mobile Dredging & Pumping Co. v. City of Gloucester, N.J.*, No. 04-4624, 2005 WL 1876080, at *6 (D.N.J. Aug. 4, 2005) (denying motion to dismiss where plaintiff alleged engineer owed duty of care).

In addition, Third-Party Plaintiffs contend that TPD GZA breached its duty by issuing a report with "material defects and deficiencies," Third-Party Plaintiffs relied on these reports to their detriment, which caused the instant lawsuit and thus possible damages. (TPC-GZA ¶¶ 34–

41.) As such, the Court finds that Third-Party Plaintiffs have adequality alleged a claim for negligence. *See Preferred Real Est. Invs.*, 2007 WL 81881, at *3.[12]

Even if Third-Party Plaintiffs meet the elements for a negligence claim, TPD GZA argues that the economic loss doctrine bars their claim. (TPD GZA Mov. Br. 16–19.) Moreover, TPD Geopier argues that any tort claims by Plaintiffs are barred under this doctrine. (*See generally*, TPD Geopier Mov. Br.)

The Economic Loss Doctrine "defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort" and seeks "to strike an equitable balance between countervailing public policies[] that exist in tort and contracts law." *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (citations omitted). Tort law "protects society's interest in freedom from harm, whereas a contractual duty protects society's interest in the performance of promises." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, No. 15-3103, 2016 WL 1718100, at *4 (D.N.J. Apr. 29, 2016).

The doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Chatham Asset Mgmt., LLC v. Adviser Compliance*

---

[12] In its moving brief, TPD GZA first contends that TPD GZA owed no duty to any third-party outside of the privity of its contract with Trenton Biogas. (TPD GZA Mov. Br. at 15.) However, as discussed above, whether a duty exists concerns foreseeability of harm, fairness, and policy, rather than privity of contract. *See Zielinski*, 740 A.2d at 1131 (explaining that a duty of care "is defined not by the contractual relationship between the parties but, rather, by consideration of foreseeability and fairness"). Moreover, the fact that TPD GZA's reports contained a limitation of risk clause, at this stage of the proceedings, does not alter the Court's Opinion. Otherwise, a party could contract out of a duty of harm, which would unfairly hamper the goals of tort law. TPD GZA offers no law in support of its contention that this clause limits the duty it owed to third-parties, and courts within this district have held a duty may exist even in the face of such contractual limitations. *See Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, LLC*, No. 03-4317, 2006 WL 1982882, at *9 (D.N.J. July 13, 2006). Finally, on reply, TPD GZA contends that the cases cited by Third-Party Plaintiffs are instances where "summary judgment, and not dismissal, [was] in play," thus arguing that they are not applicable here. (TPD GZA Reply at 8–9.) However, the Court notes that at the pleading stage, a party's burden is "less onerous at the motion to dismiss stage than it is at motion for summary judgment." *Aetna, Inc. v. Health Diagnostic Lab'y Inc.*, No. 15-1868, 2016 WL 6070542, at *3 (E.D. Pa. Oct. 17, 2016).

*Assocs., LLC*, No. 23-2677, 2023 WL 8295248, at *4 (D.N.J. Dec. 1, 2023) (quoting *Namerow v. PediatriCare Associates, LLC*, 218 A.3d 839, 846 (N.J. Super. Ct. Ch. Div. 2018)); *Durr Mech. Constr., Inc. v. PSEG Fossil, LLC*, 516 F. Supp. 3d 407, 418 (D.N.J. 2021) (explaining that the doctrine bars tort claims that are "intrinsic to the contract—*i.e.*, where the alleged tort consists of the breach of a contractual promise" (citation omitted)). The doctrine "operates to bar tort claims where a 'plaintiff simply [seeks] to enhance the benefit of the bargain she contracted for.'" *SRC Const. Corp. of Monroe v. Atl. City Hous. Auth.*, 935 F. Supp. 2d 796, 798 (D.N.J. 2013) (quoting *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002)).

However, the economic loss doctrine does not bar a tort claim "when a defendant 'owe[s] a duty of care separate and apart from the contract between the parties.'" *Chatham Asset Mgmt.*, 2023 WL 8295248, at *4 (quoting *Wilson v. RoundPoint Mortgage Servicing Corp.*, No. 21-19072, 2022 WL 3913318, at *3 (D.N.J. Aug. 31, 2022)). As such, the "critical issue" in analyzing whether the economic loss doctrine applies concerns whether the tort claim arises from conduct "extraneous to the contract." *Heyman v. Citimortgage, Inc.*, No. 14-1680, 2019 WL 2642655, at *29 (D.N.J. June 27, 2019) (quoting *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 563 (D.N.J. 2002)).

Courts typically look to whether a party has contractual privity and merely seeks to assert a "contract claim in tort clothing." *SRC Const. Corp.*, 935 F. Supp. 2d at 801. However, where there is no contract between the parties, such as here, "there can be no contract claim at all, and therefore any tort claim asserted cannot possibly be a contract claim in tort clothing." *Id.*; *Bedwell Co. v. Camden Cnty. Improvement Auth.*, No. 14-1531, 2014 WL 3499581, at *3 (D.N.J. July 14, 2014) (holding that in the absence of a contract, "the obligations of the parties are defined by tort law, unaffected by third-party agreements" and thus the plaintiff's claims were not precluded by

the economic loss doctrine); *Scalercio-Isenberg v. Select Portfolio Servicing, Inc.*, No. 22-2705, 2024 WL 378652, at *13 (D.N.J. Jan. 31, 2024) ("Because the Duane Morris Defendants were not party to the contract between Plaintiff and LMAT, they cannot invoke the economic loss doctrine.").[13]

In the case at bar, Third-Party Plaintiffs argue that that as professional engineers, TPD GZA owed an independent duty to Third-Party Plaintiffs, and breached that duty by issuing reports with material errors. (TPP Opp'n at 6–8.) In addition, Third-Party Plaintiffs argue that their negligence claim is not duplicative of, or subsumed by, any contract claims. (*Id.* at 8–13.) As such, the economic loss doctrine does not preclude their negligence claim. (*Id.*)

TPD GZA contends that Third-Party Plaintiffs have "other available channels of redress" and can recover any damages from Symbiont, with whom Third-Party Plaintiffs are parties to a contract. (GZA Mov. Br. at 17.) Moreover, TPD GZA relies heavily on the recent District of New Jersey case *MJF Elec. Contracting, Inc. v. Toms River Bd. of Educ.*, No. 20-7336, 2021 WL 1168962 (D.N.J. Mar. 26, 2021) to argue that Third-Party Plaintiffs' negligence claim is barred by the economic loss doctrine even where there is no privity of contract. (TPD GZA Mov. Br. at 17–19.) In that case, the court held that a plaintiff's negligent misrepresentation claim against a consultant was barred under the economic loss doctrine, notwithstanding the fact that the parties had no privity of contract. *MJF Elec.*, 2021 WL 1168962, at *6. The defendant had contracted with a third-party, the Toms River Board of Education ("TRBOE"). *Id.* at *1. The plaintiff, in submitting a bid to TRBOE, had relied upon work previously done by a consultant, which plaintiff contended contained negligent misrepresentations. *Id.* at *1–3. As a result of the consultant's

---

[13] As the Court will discuss below, and as others in this district have found, "[c]ourts in New Jersey have differed over whether the economic loss doctrine applies to non-parties of a contract." *Blessed Day Care Ctr., Inc. v. Fed. Deposit Ins. Corp.*, No. 20-9910, 2023 WL 6130967, at *4 n.7 (D.N.J. Aug. 21, 2023).

negligence, the plaintiff had to incur additional and unexpected work. *Id.* The court explained, however, that the plaintiff "has pursued change orders and other contractual remedies from TRBOE in order to receive compensation" for the additional work it had to perform based on the consultant's alleged negligence. *Id.* at *6. Therefore, the court reasoned, the plaintiff had contractual remedies against TRBOE and could recover any losses incurred by asserting a breach of contract claim against TRBOE. *Id.* As such, the economic loss doctrine applied, as the plaintiff merely attempted to dress up its contractual claims against TRBOE as negligence claims against the consultant. *Id.*

The Court finds *MJF Electrical* inapplicable to the case at bar. The decision in that case hinged on the fact that the plaintiff had contractual remedies against TRBOE for the damages incurred, and had been pursing same. The contract at issue stated that any additional work provided by plaintiff to TRBOE was an obligation of TRBOE, and thus, the plaintiff had a contractual basis to pursue a claim against TRBOE. *Id.* at *6. As such, the plaintiff was attempting to gain duplicative recovery for its work. Here, the damage incurred by Third-Party Plaintiffs is not duplicative of any contract claims; rather it stems from alleged negligence by TPD GZA based on an independent duty owed by TPD GZA to Third-Party Plaintiffs. Moreover, *MJF Electrical* explained that "the New Jersey Supreme Court has held that claims against certain professionals who are not in privity with third-party plaintiffs are excepted from the economic loss rule." *Id.* at *5. Third-Party Plaintiffs claims here stem from the alleged breach of a duty by a professional engineer.

GZA further claims that Third-Party Plaintiffs seek economic damages only. (TPD GZA Mov. Br. at 17.) However, TPD GZA ignores that Third-Party Plaintiffs' tort claim arises from TPD GZA's alleged breach of a duty that it owed in rendering its services. (*See* TPC-GZA ¶¶ 39–

41.) As such, Third-Party Plaintiffs allege that the harm they suffered is not economic harm, but rather harm arising out of the negligence of TPD GZA. Third-Party Plaintiffs allege that due to TPD GZA's breach of an independent duty that it owed as a professional engineer, Third-Party Plaintiffs have suffered damage. *See Ford Motor Co.*, 2012 WL 4172133, at *23 (holding that economic loss doctrine did not bar negligence claim where "recovery would flow from the 'independent duty' imposed by law"). As discussed above, at this stage of the litigation, the Court finds that Third-Party Plaintiffs have adequately alleged that the engineers owed a duty in performing their work.  As such, the Court denies TPD GZA's Motion to Dismiss Third-Party Plaintiff's professional negligence claim.[14]

### C. NEGLIGENT MISREPRESENTATION

In Count Two, Third-Party Plaintiffs assert a negligent misrepresentation claim against TPD GZA. (TPC-GZA ¶¶ 42–49.) TPD GZA moves to dismiss this claim, contending that Third-Party Plaintiffs fail to allege the misrepresentations made by TPD GZA or that Third-Party Plaintiffs relied on any misrepresentations. (TPD GZA Mov. Br. at 19–20.) In addition, TPD GZA argues that any reliance by Third-Party Plaintiffs was not reasonable, as TPD GZA's reports

---

[14] The Court briefly turns to TPD Geopier's argument that the New Jersey Supreme Court's decision in *Saltiel* bars Plaintiffs claims against it under the economic loss doctrine. (TPD Geopier Mov. Br. at 4–7.) The Court agrees. In that case, the court held that the plaintiff's claims sounded in contract, and thus, the plaintiff could not assert tort claims. *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002). The court explained that "a tort remedy does not arise from a contractual remedy unless the breaching party owes an independent duty imposed by law." *Id.* The court was "unable to discern any duty owed to the plaintiff that is independent of the duties that arose under the contract." *Id.* Here, Third-Party Plaintiffs bring a claim for breach of contract against TPD Geopier. (*See* TPC-Geopier ¶¶ 35–45.) Thus, the claims against TPD Geopier arise from contract. At most, Third-Party Plaintiffs' Complaint against TPD Geopier alleges "a duty to use reasonable skill, care and diligence." (TPC-Geopier ¶ 55.) However, this is not the duty a professional engineer, such as the one alleged above against TPD GZA. It is not clear whether Plaintiffs allege that duty arises out of contract or based on an independent duty as professionals. The Court finds no basis to infer a duty, where it is not alleged with a negligence claim and the complaint arises out of a contractual dispute.

explicitly stated that "any reliance [was] at [any third-party's] own risk," as the reports were prepared solely for Trenton Biogas. (*Id.* at 20–21.)

To state a claim for negligent misrepresentation, a plaintiff must allege "[a]n incorrect statement, negligently made and justifiably relied upon, [and] . . . economic loss or injury sustained as a consequence of that reliance." *Chatham Asset Mgmt*, 2023 WL 8295248, at *5 (quoting *Green v. Morgan Properties*, 73 A.3d 478, 493–94 (N.J. 2013)); *Cadre v. Proassurance Cas. Co.*, 257 A.3d 1175, 1192 (N.J. Super. Ct. App. Div. 2021). A plaintiff must also "allege that the defendant owed him a duty of care" and was harmed by the statements of the defendant. *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 316 (D.N.J. 2013) (citations omitted). This cause of action "imposes on professionals and other business people a duty to avoid negligently providing false information . . . ." *MJF Elec. Contracting, Inc. v. Toms River Bd. of Educ.*, No. 20-7336, 2021 WL 1168962, at *3 (D.N.J. Mar. 26, 2021) (quoting *Shtutman v. Carr*, No. A-1093-15T1, 2017 WL 4402045, at *8 (N.J. Super. Ct. App. Div. Oct. 4, 2017)).

The Court finds Third-Party Plaintiffs adequately allege, albeit on a thin reed, a negligent misrepresentation claim against TPD GZA. Third-Party Plaintiffs contend that their proposal to Symbiont relied on the "Geotechnical Engineering Report, prepared by TPD GZA, dated January 5, 2018" and based assumptions for their work on the soil "as depicted in the Geotechnical Engineering Report . . ." (TPC-GZA ¶ 21.)[15] Moreover, the proposal stated that "post-construction settlements will be designed in accordance with the contract drawings, specifications and addendums." (*Id.*) Third-Party Plaintiffs further allege that the January 2018 Report contained "material misrepresentations of fact and material omissions" which Third-Party Plaintiffs relied

---

[15] As Third-Party Plaintiffs allege that they relied on and incorporated the January 2018 Report, the Court will allow this claim to proceed with respect only to the January 2018 Report. Plaintiffs fail to allege reliance on the June 2013 Report.

upon to complete their soil improvement services (*Id.* ¶¶ 45–47.) As discussed above, the Court found Third-Party Plaintiffs pled a duty and damages. Therefore, the Court finds that Third-Party Plaintiffs have adequately alleged a negligent misrepresentation claim. *See Bedwell Co.*, 2014 WL 3499581, at *5 (plaintiff sufficiently pled negligent misrepresentation claim where it alleged it relied on representations in design documents that were incorrect).

TPD GZA contends that Third-Party Plaintiffs' claim fails because they do not allege "what was misrepresented or omitted." (TPD GZA Mov. Br. at 19–20.) TPD GZA further argues that Third-Party Plaintiffs recognize the deficiency of their pleading, submitting a declaration from the CEO of TPP GIS with their opposition brief describing the misstatements of TPD GZA. (TPD GZA Reply at 11–12.) The Court notes that a Complaint cannot be amended in briefing in response to a motion to dismiss. *See Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) ("[I]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" (quoting *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988))). As such, the Court will not credit this declaration. Nevertheless, the Court finds Third-Party Plaintiffs sufficiently pled their claim. As the Third Circuit has explained, "the complaint must only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Thomas v. Indep. Twp.*, 463 F.3d 285, 295 (3d Cir. 2006) (citations and quotation marks omitted). In the case at bar, Third-Party Plaintiffs have alleged that they relied on TPD GZA's 2018 report, which they alleged contained material misrepresentations that caused errors in designing the soil foundation. TPD GZA has notice of the claim against it, and discovery can shed light on whether or not Third-Party Plaintiffs were correct or justified in relying on the reports.

TPD GZA attaches its own declaration, which it contends demonstrates that the January 2018 Report did not contain any misrepresentations and belies Third-Party Plaintiffs' assertions

that the sulfate levels described in the January 2018 Report could have caused their injury. (TPD GZA Reply at 12.) However, these factual determinations are not proper for the Court to resolve at this stage and can best be decided following discovery. *See Chatham Asset Mgmt.*, 2023 WL 8295248, at *5 ("factual disputes are not properly adjudicated at the pleading stage").

Finally, TPD GZA argues that the limitation language in the reports refutes any alleged reasonable reliance by Third-Party Plaintiffs. (TPD GZA Mov. Br. at 20.) TPD GZA points to *DeAngelo v. Exxon Corp.*, for the proposition that a non-reliance clause defeats a plaintiff's reasonable reliance. No. A-791-98T3, 1999 WL 34014043, at *5 (N.J. Super. Ct. App. Div. Oct. 15, 1999). In that case, the court held that "the express disclaimers" contained in the relevant documents and signed by plaintiff "preclude[d] a finding that plaintiffs might have justifiability relied on [the defendant's] representations." *Id.*

At this stage of the proceeding, however, the Court disagrees with TPD GZA's arguments. First, *DeAngelo* arrived at the court on appeal following the lower court's judgment in favor of the defendants, notwithstanding a jury verdict for the plaintiff. *Id.* at *1. Second, the court in *DeAngelo* focused on the fact that the documents the plaintiff signed, such as the property deed and sale contract, contained the relevant disclaimers. *Id.* at *5. In the case at bar, on the other hand, the disclaimers were only referenced by title in the contracts that Third-Party Plaintiffs signed with Symbiont. Moreover, whether the disclaimer precludes reasonable reliance turns on "considerations of foreseeability and fairness," an analysis not suited for the pleading stage. *Zielinski*, 740 A.2d at 1135 (deciding reasonable reliance inquiry at summary judgment stage); *AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 181 (3d Cir. 2003) (explaining that "non-reliance clauses are . . . among the circumstances to be considered in determining the reasonableness of any reliance" but such determination is "often [an] appropriate candidate[] for resolution at the

summary judgment stage"); *White v. Kolinsky*, No. 10-2252, 2011 WL 1899307, at *8 (D.N.J. May 18, 2011) (denying motion to dismiss despite existence of non-reliance clause, noting that such clauses "should be taken into consideration in determining" reliance but did not justify dismissal at pleading stage). Therefore, the Court finds that, at this juncture, the limitation language in the reports does not deem Third-Party Plaintiffs' reliance unjustified. The Court denies TPD GZA's Motion to Dismiss Third-Party Plaintiff's negligent misrepresentation claim.

### D. CONTRIBUTION

In Count Three, Third-Party Plaintiffs assert a claim for contribution. (TPC-GZA ¶¶ 50–53.) TPD GZA moves to dismiss, contending that Third-Party Plaintiffs and TPD GZA are not joint tortfeasors, as the parties' actions were successive, and no judgment has been entered, thus barring a claim for contribution. (TPD GZA Mov. Br. at 21–22.)

"Under New Jersey law, the right of contribution exists among joint tortfeasors." *Walsh Sec., Inc. v. Cristo Prop. Mgmt.*, No. 97-3496, 2009 WL 5064757 (D.N.J. Dec. 16, 2009).  Under the New Jersey Joint Tortfeasor Contribution Law, "the right of contribution exists among joint tortfeasors," defined under the law as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J. Stat. Ann. § 2A:53A-1–2. The law provides a "cause of action for contribution . . . when two or more persons become liable in tort to the same person for the same harm." *Lukacs v. Purvi Padia Design LLC*, No. 21-19599, 2023 WL 6439877, at *3–4 (D.N.J. Oct. 2, 2023). Further, "New Jersey's Comparative Negligence Act provides a tortfeasor defendant with a contribution claim when she is compelled to pay more than her percentage share of the damages owed." *Fireman's Fund Ins. Co. v. 360 Steel Erectors, Inc.*, No. 16-02782, 2018 WL 1069417, at *3 (D.N.J. Feb. 26, 2018).

"The test's core proposition may be stated succinctly: It is common liability at the time of the accrual of plaintiff's cause of action which is the Sine qua non of defendant's contribution right." *Id.* (quoting *Cherry Hill Manor Assocs. v. Faugno*, 861 A.2d 123, 128 (N.J. 2004)); *City Select Auto Sales, Inc. v. David/Radall Assocs., Inc.*, No. 11-2658, 2015 WL 4507995, at *3 (D.N.J. July 23, 2015) (noting that a contribution can be explained as "If I am liable to plaintiff, then my liability is only technical or secondary or partial, and the third party defendant is derivatively liable and must reimburse me for all or part . . . of anything I must pay plaintiff." (citations and quotation marks omitted)).[16] A claim for contribution requires a party to assert a claim in tort; the Joint Tortfeasor Contribution Law and Comparative Negligence Act only "comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm." *Ernest Bock & Sons, Inc. v. Dean Enterprises, Inc.*, No. 22-4739, 2023 WL 4268250, at *4 (D.N.J. June 29, 2023) (citations omitted); *City Select*, 2015 WL 4507995, at *3 (noting that a claim for contribution requires that "a third-party plaintiff's right to relief must be cognizable under the substantive law.").

Third-Party Plaintiffs have alleged tort claims against TPD GZA in Counts One and Two. In Count Three, Third-Party Plaintiffs contend that "if damages are awarded against Third-Party Plaintiffs, the damages allegedly sustained by the Plaintiffs resulted from the acts or omissions of GZA." (TPC-GZA ¶ 52.) Put differently, Third-Party Plaintiffs contend that if they are found liable for any claims brought by Plaintiffs, TPD GZA is liable. As discussed above, Third-Party Plaintiffs have sufficiently alleged that any damage resulting from its conduct was due to their reliance on GZA's reports. At this stage of the pleading, the Court finds Third-Party Plaintiffs adequately

---

[16] It does not matter if the conduct is successive; rather the key is whether there is common liability. *See Fireman's Fund Ins. Co.*, 2018 WL 1069417, at *3.

allege a claim for contribution. *See Gonzalez v. New Jersey*, No. 14-7932, 2019 WL 291162, at *3 (D.N.J. Jan. 23, 2019) (finding third-parties alleged claim for contribution where they adequately alleged negligence claim and asserted any fault was due to tort of third-party defendant); *Lukacs*, 2023 WL 6439877, at *3–4 (denying motion to dismiss on contribution claim where plaintiff alleged claim); *Fireman's Fund Ins. Co.*, 2018 WL 1069417, at *3–4 (denying motion to dismiss crossclaim where allegations established that the plaintiff is "jointly liable" for property damage).

Moreover, the Court disagrees with TPD GZA's claim that the claim for contribution can only be brought following a judgment against the party. As a court in this district explained, "[i]t is not the case that [a contribution claim] cannot be brought in connection with the underlying action. While a judgment may be relevant for statute of limitations purposes, there is no requirement that there must be an entry of final judgment and a recovery of that judgment before a party can file a third-party claim . . . ." *Gonzalez*, 2019 WL 291162, at *4 n.7 (emphasis in original). For these reasons, the Court denies TPD GZA's motion to dismiss Third-Party Plaintiffs' contribution claim.

### E. INDEMNIFICATION

Third-Party Plaintiffs assert a claim for indemnification in Count Four. (TPC-GZA ¶¶54–56.) TPD GZA moves to dismiss this claim. TPD GZA argues that any liability to Plaintiffs will be due to Third-Party Plaintiffs' own actions, rather than TPD GZA's. (TPD GZA Mov. Br. at 23–24.)

"New Jersey recognizes a common law right to indemnity." *Lukacs*, 2023 WL 6439877, at *3. This is an "equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." *Id.* (citations and quotation marks omitted). In New Jersey, a claim for indemnification arises in two

circumstances: "when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification." *Borough of Edgewater v. Waterside Constr., LLC*, No. 14-5060, 2021 WL 4059850, at *11 (D.N.J. Sept. 3, 2021) (citing *Fireman's Fund Ins. Co.*, 2018 WL 1069417 at *4). These "special legal relationships" include "principal-agent, employer-employee, lessor-lessee, and bailor-bailee." *SGS U.S. Testing Co. v. Takata Corp.*, No. 09-6007, 2012 WL 3018262, at *4 (D.N.J. July 24, 2012), *aff'd*, 547 F. App'x 147 (3d Cir. 2013) (citations and quotation marks omitted).

As has been discussed, TPD GZA and Third-Party Plaintiffs are not parties to a contract. Nor do Plaintiffs allege any special legal relationship, and the Court does not find that the relationship between the parties is analogous to the above-mentioned special categories. As such, the Court finds Third-Party Plaintiffs have not properly pled a claim for indemnification.[17] Therefore, the Court grants TPD GZA's Motion to Dismiss Third-Party Plaintiffs' Count Four without prejudice.

---

[17] The New Jersey Supreme Court has, in at least one instance, found an implied right to identification despite the existence of a contract or special relationship. *See Adler's Quality Bakery, Inc. v. Gaseteria, Inc.*, 159 A.2d 97, 110 (N.J. 1960). That case, however, dealt with strict liability and one party who alleged they were free from fault. *Id.* Courts have not applied *Adler* broadly; indeed, courts have rejected finding an implied indemnification claim where there are no "allegations premised on absolute or strict liability." *Takata Corp.*, 2012 WL 3018262, at *6.

**IV.**     **CONCLUSION**

For the foregoing reasons, TPD GZA's Motion to Dismiss is **GRANTED** in part, and

**DENIED** in part, and TPD Geopier's Motion to Dismiss is **GRANTED**. An appropriate Order

will accompany this Opinion.

_____

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: March 13, 2024

30